UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION<br><br>Plaintiff,<br><br>vs.<br><br>STEFAN QIN, VIRGIL TECHNOLOGIES LLC, MONTGOMERY TECHNOLOGIES LLC, VIRGIL QUANTITATIVE RESEARCH, LLC, VIRGIL CAPITAL LLC, and VQR PARTNERS LLC,<br><br>Defendants. | Civil Action No. |

# COMPLAINT

Plaintiff United States Securities and Exchange Commission (the "Commission"), alleges as follows:

1. Defendant Stefan Qin has been engaged in a deceptive course of conduct, using materially false and misleading statements to investors and others, causing serious harm and the threat of further harm to two funds he controls, the Virgil Sigma Fund LP (the "Sigma Fund") and the VQR Multistrategy Fund LP (the "VQR Fund").

2. Using his control and ownership of five entities, Virgil Technologies LLC, Montgomery Technologies LLC, Virgil Quantitative Research, LLC, Virgil Capital LLC, and VQR Partners LLC (collectively the "Entity Defendants"). Qin has perpetrated a scheme to lure investors into the two Funds, which are marketed as using algorithmic trading strategies involving cryptocurrencies, using false promises and assurances. Qin, who at 19 founded the Sigma Fund and its managing entity, Defendant Virgil Capital, has consistently claimed since

2016 that his proprietary, market-neutral arbitrage trading strategy in cryptocurrencies uses more than 40 digital asset trading platforms around the world, and has achieved positive returns in every month except one.

3. Qin and Defendant Virgil Capital prepared and provided to investors documentation for the Sigma Fund in 2019 that claimed the Fund held millions of dollars worth of digital assets at 39 trading platforms, including three of the largest U.S.-based platforms.  In reality, the Sigma Fund held no assets at any of those U.S.-based platforms, and the purported platform account balances were fabricated.

4. Despite the successful trading returns Qin describes for the Sigma Fund, beginning in mid-2020, investors in the Sigma Fund were thwarted in their attempts to redeem their investments.  Through a series of false and misleading devices, Qin convinced at least nine investors, whose interests totaled approximately $3.5 million, to "transfer" their investments from the Sigma Fund into the VQR Fund.  However, the transfers never materialized and Qin has used excuses and falsehoods directed at investors, and the separate personnel who operate the VQR Fund, to evade any explanation for where the investors' assets are.

5. Qin has most recently asserted his control over each of the Entity Defendants to attempt to further dissipate investor assets.  In December 2020, Qin sought the aid of his colleagues who manage the VQR Fund in Qin's attempt to withdraw $1.7 million that he claimed he urgently needed to pay back loans to lenders he feared in China.  When VQR Fund employees refused his efforts to withdraw investor assets, Qin made numerous admissions about his conduct, including having told "white lies" to investors to placate them.  At the same time, Qin has not relented from his attempts to withdraw assets from the VQR Fund which belong to investors.

6. By engaging in the conduct, Qin and the Entity Defendants have violated, and unless restrained and enjoined will continue to violate, the antifraud provisions of the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act"). The Entity Defendants also aided and abetted Qin's violations of the same provisions.

## NATURE OF PROCEEDING AND RELIEF SOUGHT

7. The Commission brings this action against Defendants pursuant to Section 20(d) of the Securities Act [*15 U.S.C. § 77t(d)*] and Section 21(d) of the Exchange Act [*15 U.S.C. § 78u(d)*] to seek an order enjoining the transactions, acts, practices, and courses of business alleged in this Complaint, civil penalties, and such further relief that the Court may deem appropriate.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act [*15 U.S.C. §§ 77t(b), 77t(d) and 77v(a)*] and Sections 21(d), 21(e), and 27 of the Exchange Act [*15 U.S.C. §§ 78u(d), 78u(e), and 78aa*].

9. Venue in this District is proper pursuant to Section 22(a) of the Securities Act [*15 U.S.C. § 77v(a)*] and Section 27 of the Exchange Act [*15 U.S.C. § 78aa*]. Defendants transact business in this District, and certain of the acts, practices, transactions, and courses of business constituting the violations alleged in this Complaint occurred within this District, and were effected, directly or indirectly, by making use of the means, instruments, or instrumentalities of transportation or communication in interstate commerce, or of the mails, or the facilities of national securities exchanges.

## DEFENDANTS

10. **Stefan Qin**, age 23, is a citizen and resident of Australia and a part-time resident

3

of New York, NY. He is currently believed to be in Seoul, South Korea. Qin is the sole owner of, and controls, each of the Entity Defendants, either directly or through parent company Defendant Virgil Technologies LLC.

11.   **Virgil Technologies LLC** is a limited liability company domiciled in the Cayman Islands and headquartered in New York, NY. Qin is the sole owner of, and controls, Virgil Technologies.

12.   **Montgomery Technologies LLC** is a limited liability company domiciled in Delaware and headquartered in New York, NY. Montgomery Technologies is a wholly-owned subsidiary of Virgil Technologies, and Qin controls Montgomery Technologies.

13.   **Virgil Quantitative Research LLC**, f/k/a Decibel18 LLC, is a limited liability company domiciled in Delaware and headquartered in New York, NY. Virgil Quantitative Research is a wholly-owned subsidiary of Virgil Technologies, and Qin controls Virgil Quantitative Research.

14.   **Virgil Capital LLC** is a limited liability company domiciled in Delaware with its principal place of business in New York, NY. Virgil Capital is a wholly-owned subsidiary of Montgomery Technologies, and Qin controls, and is the Managing Member of, Virgil Capital. Virgil Capital is the General Partner of and exercises investment authority over the Sigma Fund.

15.   **VQR Partners LLC** is a limited liability company domiciled in the Cayman Islands with its principal place of business in New York, NY. VQR Partners is a wholly-owned subsidiary of Virgil Quantitative Research, and Qin controls, and is the Managing Member of, VQR Partners. VQR Partners is the General Partner of and exercises investment authority over the VQR Fund.

## FUNDS HOLDING INVESTOR ASSETS

16.     **Virgil Sigma Fund LP** (the "Sigma Fund") is a limited partnership pooled investment fund with its principal place of business in New York, NY.  Virgil Capital is the General Partner of and, with its parent company, Defendant Montgomery Technologies, exercises investment authority over the Sigma Fund.  The offering materials for the Sigma Fund state that it will use a proprietary arbitrage trading strategy to trade cryptocurrencies or digital assets on liquid platforms around the world, primarily using a market-neutral strategy.  It has filed a Form D with the Commission, and Montgomery Technologies, the parent company of Virgil Capital, filed a Form ADV in March 2020 stating that $92.4 million was held in the Sigma Fund.  As of May 2020, the Sigma Fund's records reflect that there were approximately 110 investors in the Sigma Fund, including approximately 50 from the U.S., with account balances ranging from $100,000 to $16 million.  These records also reflect that the Sigma Fund has received new investments since January 2019 totaling approximately $19 million.

17.     **VQR Multistrategy Fund LP** (the "VQR Fund") is a limited partnership pooled investment fund registered in the Cayman Islands, with its principal place of business in New York, NY.  VQR Partners is the General Partner of and, with its parent company, Defendant Virgil Quantitative Research, exercises investment authority over the VQR Fund.  The offering materials for the VQR Fund state that it invests in cryptocurrencies and other digital assets, and recently held digital assets valued at approximately $25 million.  It has filed a Form D with the Commission.  There are approximately 40 investors in the VQR Fund, including approximately 20 from the U.S.

## FACTUAL ALLEGATIONS

**Qin Claims to Use a Proprietary Trading Algorithm for the Sigma Fund to Generate Better Returns Than an Investment in Bitcoin**

18. In marketing materials prepared for the Sigma Fund, and created and disseminated by Defendants Qin, Montgomery Technologies and Virgil Capital, Qin claims to trade for the Sigma Fund by taking a market-neutral "arbitrage approach to the cryptocurrency market," utilizing "a proprietary algorithmic trading system that continually scans for price differences between cryptocurrency markets."

19. A Virgil Capital marketing brochure for the Sigma Fund from approximately September 2019 lists monthly performance figures from August 2016 through August 2019. The brochure shows positive monthly returns for 36 of the 37 months since inception, including one monthly return of 48.7%. It also shows an average monthly return of 10% over that period compared to 11% for bitcoin during the same period, but claims that bitcoin was far more volatile and had 16 negative monthly returns compared to just one for the Sigma Fund. It states that bitcoin's cumulative returns over the same period were about 1500%, compared to 2811% for the Sigma Fund.

**Qin Maintains Sole Control of the Sigma Fund and It Has No Other Traders**

20. Defendants Virgil Capital and Montgomery Technologies, which manage the Sigma Fund's investments, has no traders other than Defendant Qin and no financial personnel. The Sigma Fund has one investor relations employee and one operations employee. Although Virgil Capital's marketing brochure for the Sigma Fund lists a fund administrator, in reality, Qin himself prepares the account statements that are provided to investors.

21. The account statements that Qin and Virgil Capital prepare for Sigma Fund investors contain only a top-level "capital account balance," with a "monthly performance"

amount and an ending balance net of fees. The statements do not include any information about specific asset holdings. The statements contain a signed affirmation from Qin, as the "Fund Manager & Director," that "the information contained in this statement is accurate and complete."

22. The Entity Defendants do not maintain financial books and records on behalf of the Sigma Fund. All tax reporting documentation for investors is created by Qin. Although the private placement memorandum ("PPM") for the Sigma Fund states that "investors will receive annual audited financial statements," Virgil Capital has not been able to obtain audited financial statements for the Sigma Fund for at least two years.

23. The second investor fund under Qin's ultimate control, the VQR Fund, is described as a multi-strategy quantitative digital asset trading fund. Approximately 17 employees of Defendant Virgil Quantitative Research, the parent company of the VQR Fund's General Partner, Defendant VQR Partners, perform services for the VQR Fund, including several traders. The VQR Fund is operationally separate from the Sigma Fund, with different systems, books, and employees. The VQR Fund uses a traditional, third-party fund administrator to calculate net asset values daily, and to issue investor statements, and the VQR Fund's financial statements are audited annually. The VQR Fund has approximately $25 million in assets under management.

**Qin Conceals the Sigma Fund's Financial Condition**

24. In or about July 2020, Qin began to use a series of artifices and deceptions when investors in the Sigma Fund attempted to redeem their shares. First, Qin told certain investors who wanted to redeem investments from the Sigma Fund that, in lieu of a redemption, he would directly transfer their investments to the VQR Fund. These were described by Qin as "in-kind" transfers.

25. However, the in-kind transfers never materialized. The investors began contacting an investor relations employee from the VQR Fund to confirm their investments in the VQR Fund. But no funds were received by the VQR Fund for these purported transfers. Qin then told investors and the investor relations employee that the transfers would occur as bank transfers of fiat currency, but the redemptions still have not been satisfied. In total, nine such investor transfers, totaling approximately $3.5 million, remain outstanding and unaccounted for.

26. Qin sent certain of these investors wire transfer records from a foreign bank purporting to show that he had requested the wire transfers for the investments, and claimed that a bank error had delayed the arrival of funds. In reality, the wire transfers were rejected because there were not sufficient funds in the Sigma Fund's account to complete the wire transfers.

**Qin Asserts His Control to Gain Access to Investor Funds**

27. Beginning in August 2020, Qin arranged for Virgil Quantitative Research to lend him money. The first loan, made to him in August 2020 for $275,000, was due to be paid in full on November 1, 2020. The second, made in October 2020 for $75,000, was due to be paid in full by December 1, 2020. To date, Qin has not repaid either loan.

28. On or about December 9, 2020, Qin sought the aid of an employee of Virgil Quantitative Research to withdraw $1.7 million from the VQR Fund. Qin claimed he had a "liquidity issue" and needed to repay a loan that Qin had taken out, he said, from lenders he feared in China. The employee informed Qin that Qin could not use the investors' capital in the VQR Fund.

29. On or around December 10, 2020, Qin continued to insist on receiving $1.7 million from the VQR Fund. Qin asserted that as the sole owner of Virgil Quantitative Research and Managing Member of VQR Partners, the General Partner of the VQR Fund, he was prepared to seize control of the VQR Fund. Qin claimed he would fire everyone if necessary to enable

Qin to make the full withdrawal of the $1.7 million he claimed he needed immediately. Qin further suggested that the withdrawal of the funds from investor capital would be a loan that he would later disclose to VQR Fund investors, but only after he withdrew the money.

30. In further attempts to withdraw investor capital, and finding no aid from the Virgil Quantitative Research employee, Qin contacted digital asset trading platforms at which the VQR Fund holds assets, where he also made withdrawal requests.

**Qin and Virgil Capital Are Actively Attempting Soliciting New Investments in the Sigma Fund**

31. Qin has successfully recruited multiple new Sigma Fund investors in 2020 and recently hired an individual to promote the Sigma Fund and try to raise additional capital.

32. A December 15, 2020 article for which Qin was interviewed stated that the Sigma Fund has $112 million in assets under management and quotes Qin as saying "I think we're the biggest, or one of the biggest crypto quant funds." The article reiterated the Sigma Fund's market-neutral arbitrage trading strategy and highlighted the Sigma Fund's history of impressive investment returns.

33. Bank records show that several large wire transfers totaling approximately $2.5 million have been received by the Sigma Fund since June 2020. Approximately $1.3 million of the $2.5 million was transferred by Qin first to a foreign bank account in the Sigma Fund's name and then transferred immediately to a U.S. bank account in Qin's name. The remainder appears to have been wired to other investors for account redemptions.

**Qin Used Sigma Fund Capital for Improper Purposes and Fabricated Listings of Digital Asset Holdings**

34. Qin has admitted to an employee of Virgil Quantitative Research that Qin significantly departed from the Sigma Fund's stated investment strategy in the past. Specifically, Qin stated that he invested Sigma Fund assets in a number of initial coin offerings (ICOs) in 2018. According to Qin, the ICO investments were successful.

35. Qin also stated that he invested Sigma Fund assets in several "circular" investments by which the Sigma Fund invested in a third-party fund and the third-party fund invested in the Sigma Fund. These investments into the Sigma Fund appear to operate like loans because the Sigma Fund guarantees a set rate of return on the third party's investment. Qin stated that he cannot withdraw capital from these investments because they are illiquid.

36. As part of the process for preparing tax reporting documentation for Sigma Fund investors, Qin prepared a spreadsheet titled "Exchange Balances 1 Jan – 31 Dec 2019." It lists 39 digital asset trading platforms, including three large platforms in the United States, with a balance given as of the 1st of each month in 2019 for each trading platform. The spreadsheet was the basis for disclosures made to the investors regarding their limited partnership interests.

37. The spreadsheet is false. For the three large U.S.-based digital asset trading platforms listed on the "Exchange Balances" spreadsheet, the monthly balances shown on the spreadsheet range from several hundred thousand dollars to several million, averaging approximately $2 million per month over the course of 2019. In contrast, records produced by those trading platforms show that no assets were held or traded in accounts belonging to the Sigma Fund in 2019.

## CLAIMS FOR RELIEF

**Violations of Section 17(a) of the Securities Act by All Defendants**

38. The Commission realleges and incorporates by reference paragraphs 1 through 37.

39. By engaging in the acts and conduct alleged above, Qin and the Entity Defendants each directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, , employed devices, schemes, or artifices to defraud with scienter;  obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading; and engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers.

40. By reason of the foregoing, Defendants have violated and, unless restrained and enjoined, will continue to violate Section 17(a) of the Securities Act [*15 U.S.C. § 77q(a)*].

41. Defendants Virgil Technologies, Montgomery Technologies, Virgil Quantitative Research, Virgil Capital, and VQR Partners each knowingly provided substantial assistance to Qin, and to the other Entity Defendants in their violations of Section 17(a) of the Securities Act [*15 U.S.C. § 77q(a)*].

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder
by All Defendants**

42. The Commission realleges and incorporates by reference paragraphs 1 through 41.

43. By engaging in the acts and conduct alleged above, Defendants directly or indirectly, in connection with the purchase or sale of securities, by the use of means or

11

instrumentalities of interstate commerce, or of the mails, or of a facility of a national security exchange, with scienter, employed devices, schemes, or artifices to defraud; made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

44. By reason of the foregoing, Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [*15 U.S.C. § 78j(b)*] and Rule 10b-5 thereunder [*17 C.F.R. § 240.10b-5*].

45. Defendants Virgil Technologies, Montgomery Technologies, Virgil Quantitative Research, Virgil Capital, and VQR Partners each knowingly provided substantial assistance to Qin, and to the other Entity Defendants in their violations of Section 10(b) of the Exchange Act [*15 U.S.C. § 78j(b)*] and Rule 10b-5 thereunder [*17 C.F.R. § 240.10b-5*].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court enter a judgment:

### I.

Permanently restraining and enjoining Defendants from, directly or indirectly, violating Section 17(a) of the Securities Act [*15 U.S.C. § 77q(a)*], Section 10(b) of the Exchange Act [*15 U.S.C. § 78j(b)*] and Rule 10b-5 thereunder [*17 C.F.R. § 240.10b-5*];

## II.

Permanently restraining and enjoining Defendants from, directly or indirectly, participating in the issuance, purchase, offer, or sale of any security, including, but not limited to, through any entity owned or controlled by Defendants, provided, however, that such injunction shall not prevent Defendant Qin from purchasing or selling securities listed on a national securities exchange for his own personal account;

## III.

Ordering Defendants to disgorge their ill-gotten gains according to proof, plus prejudgment interest thereon;

## IV.

Ordering Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act [*15 U.S.C. § 77t(d)*] and Section 21(d) of the Exchange Act [*15 U.S.C. § 78u(d)*]; and

## V.

Granting such other and further relief as this Court may deem just, equitable, or necessary.

Dated: December 22, 2020                    Respectfully submitted,

By:   /s/ *Fitzann R. Reid*
       Fitzann R. Reid

U.S. Securities and Exchange Commission
44 Montgomery Street, Suite 2800
San Francisco, CA 94104
(415) 705-2458
fitzr@sec.gov

Of counsel:

A. Kristina Littman
Monique Winkler
Susan LaMarca
Steven Buchholz
Amanda Straub