# EXHIBIT 9

# DECLARATION OF ANTONIO HALLAK

May 2020 letter

May _, 2020

Virgil Quantitative Research, LLC
199 Water Street
New York NY 10034
34th Floor
Attn: Stefan Qin

Re: Investment in ▮▮▮▮▮ , ▮▮▮▮▮

Dear Stefan:

This letter agreement ("Agreement") is made and entered into between Virgil Quantitative Research, LLC ("Virgil") and ▮▮▮▮▮ in connection with your proposed follow-on investment into ▮▮ to be invested exclusively into a cryptocurrency trading account opened up in the name of ▮▮▮▮ to be managed by ▮▮▮▮▮ who will have discretionary trading authority over the Account (subject to the below limitations) and shall use proprietary algorithmic and quantitative trading strategies (the "Strategy") to manage the ▮▮. The ▮▮ shall be established with such platform provider as mutually agreed upon by ▮▮ and Manager.

The parties acknowledge that Virgil will purchase limited partnership interests in ▮▮ pursuant to ▮▮ Confidential Private Placement Memorandum updated as of July 30, 2018 (the "Memorandum"), ▮▮ First Amended and Restated Limited Partnership Agreement, as amended, dated as of ▮▮ (the "Partnership Agreement") and a Subscription Agreement to be entered into between Virgil and ▮▮ (the "Subscription Agreement," and together with the Memorandum and Partnership Agreement, the "Fund Documents"). This Agreement supplements the Fund Documents and any other prior agreements or understandings solely with respect to the specific investment terms referenced in this Agreement, provided that nothing herein shall replace, amend or supersede the Fund Documents, which are hereby ratified and agreed to remain in full force and effect. Capitalized terms used herein but not otherwise defined, shall have the meaning ascribed to such terms in the Partnership Agreement.

Notwithstanding anything to the contrary contained in the Fund Documents, the parties to this Agreement agree as follows:

1. Virgil shall, within ▮ days of the date of this Agreement, execute the Subscription Agreement pursuant to which it agrees to make a capital contribution to ▮ in the amount of Ninety Thousand Dollars ($90,000.00) (the "Initial Capital Contribution") provided that Manager simultaneously contributes Ten Thousand Dollars ($10,000.00) (the "First Loss Capital Amount") on behalf of Virgil, such First Loss Capital Amount deemed part of Virgil's Capital Account. The First



Loss Capital Amount shall be a non-recourse non-interest bearing loan from Manager to Virgil and may not be withdrawn by Manager without Virgil's consent. Virgil acknowledges and agrees that the Initial Capital Contribution and the First Loss Capital Amount shall be used exclusively by ▮ to deposit into the SMA and segregated into a separate capital account for the benefit of Virgil (a "Side Pocket Account") from which Virgil shall be entitled to receive, to the exclusion of any other limited partners of ▮, any and all distributions and shall be allocated any and all profits and losses, subject to such performance fees to which the General Partner of ▮ may be entitled to receive under the Partnership Agreement. The parties agree that, unless otherwise specified by Virgil, any additional capital contributions made by Virgil to ▮ shall be deposited into the Side Pocket Account. Notwithstanding the Manager's contribution of the First Loss Capital Amount, Virgil shall be entitled to all income, capital appreciation and proceeds from the Side Pocket Account, including as a result of any additional Virgil capital contributions or additional First Loss Capital Amount contributions by Manager. Unless otherwise stated to the contrary herein, all references to the SMA herein shall include the First Loss Capital Amount. The parties acknowledge that Virgil, at its sole discretion, may make additional contributions to the Side Pocket Account of up to Five Million Dollars ($5,000,000) with ▮ consent (any and all such deposits referred to herein as "Side Pocket Investments").

2. In the event of a Liquidation (as defined below), notwithstanding the actual proceeds from such Liquidation, Virgil shall be entitled to receive an amount equal to (1) the aggregate of its contributions to the Side Pocket Account and (2) any accumulated return in the SMA. If the final net Liquidation proceeds received by ▮ are less than the sum of (1) and (2) above, any such shortfall shall be satisfied with the First Loss Capital Amount to be taken from the account by ▮ within three (3) days of the Liquidation, with no further authorization or communication required. ▮ shall have no further financial obligation to Virgil on the Side Pocket Account.

3. Virgil agrees and acknowledges that the Manager will seek to allocate capital across a variety of digital assets in accordance with Manager's proprietary trading algorithms. Virgil agrees and acknowledges that the Side Pocket Investments shall not be invested in the Underlying Funds described in the Memorandum and that the Strategy and the risks attendant with its use are substantially different than the strategy set forth in "Investment Program" and the risk factors set forth in "Risk Factors – Investments by the Underlying Funds" in the Memorandum. Virgil agrees and acknowledges that it is not relying on the disclosures in the Memorandum regarding the Investment Program and the risks of the Investment Program in making the Side Pocket Investment, and that it has not received any disclosure document from Manager describing the Strategy.

4. Virgil further acknowledges that: (i) it has significant experience and expertise in the use of algorithmic and quantitative cryptocurrency trading strategies; (ii) it has performed its own due diligence on the Manager and the Strategy, and is not



relying on any statements or other representations made by ▇, either orally or in the Memorandum in connection with its Side Pocket Investments; and (iii) ▇ makes no representations, warranties or other statements regarding the future performance of the SMA, the liquidity of the investments in the SMA, the relative long and short positions of the assets held in the SMA, the Strategy or the performance or background of the Manager or the Strategy, or the platform provider or exchanges on which Manager will trade the SMA, or any other aspect of the SMA, the Strategy or the Manager.

5. ▇ agrees to instruct Manager to grant Virgil with (i) 24/7 application programming interface ("API") access to the SMA in order that Virgil can use its proprietary portfolio management system ("PMS") to oversee the risk levels resulting from the trading in the SMA, and (ii) the authority and power to liquidate positions in the SMA (a "Liquidation") if there is, in Virgil's reasonable opinion, a decrease of ten percent (10%) or more in the SMA, from the cumulative value of all capital contributions directed into the SMA, by Virgil. Notwithstanding anything to the contrary herein or in any Fund Documents, Virgil shall indemnify ▇ and all its affiliates, including, but not limited to, ▇ from any damages, losses or other claims relating to the SMA. Virgil acknowledges that ▇ makes no assurances that the access and trading power and authority referenced in this Paragraph 3 will be exercised in a manner sufficient to avoid losses in the SMA, and that ▇ makes no warranty with respect to the manner in which Manager grants this access and trading authority. **Virgil acknowledges that the Side Pocket Investment is a high-risk investment and it may lose its entire investment in the Side Pocket Account.**

6. Virgil agrees that if ▇ establishes other accounts with Manager ("Other Accounts"), Virgil will provide the same oversight (including, but not limited to, the use of its PMS) with respect to the Other Accounts as it does with respect to the ▇. Virgil and ▇ agree to work together to establish a reasonable amount and method of compensation for the oversight of the Other Accounts.

7. The parties hereto agree that the terms of this Agreement shall be deemed confidential and shall not be disclosed to any third parties, other than to the parties' respective accountants, legal advisors or other necessary advisors, or to ▇ investors in connection with an investment in ▇, or as may be required by law or requested by any government or other regulator, without the written consent of the other party.

8. For a period of twenty four (24) months from the date of this Agreement or until such time as ▇ no longer has an account with or uses the services of Manager, which is earlier, Virgil shall not open an account with Manager, use Manager's proprietary trading strategies or Manager's cryptocurrency trading except through ▇ or other entity set up by ▇, unless otherwise agreed to by ▇. Virgil shall at all times treat the identity of any ▇ investor as confidential and shall not disclose or disseminate the identity of



any ▆ investor to Manager or to any persons associated with, employed by or providing services to, Manager.

9. Except as specifically provided herein, this Agreement shall not otherwise affect any rights or obligations that Virgil may have as an owner of interests in ▆ or the rights and obligations of the General Partner of ▆ as set forth in the Fund Documents. Any variation to the terms of this Agreement will be effective only when made in writing and signed, either by the parties hereto or by the party against whom such variation is sought to be enforced.

This Agreement, together with the Fund Documents, constitute the entire agreement among the parties hereto relating to the Side Pocket Investment. While Virgil acknowledges that the Investment Program as described in the Memorandum is substantially different in nature and risk profile than the Strategy, Virgil acknowledges the other risk factors set forth in the Memorandum as they may related to its investment in ▆. In the event of any conflict between the terms of the Fund Documents and this Agreement, the terms of this Agreement shall govern.

If the foregoing is in accordance with your understanding of the Agreement among us, please indicate your approval by signing and returning a copy of this letter to us.

Sincerely,



By:_____
Name: ▆
Title: President

U&B Draft 5.8.20

CONFIRMED AND AGREED TO BY:

**VIRGIL QUANTITATIVE RESEARCH, LLC**

By: [Virgil Capital LLC], its Manager

By: _____
Name: Stefan He Qin
Title: _____

CONFIRMED AND AGREED TO BY:

_____   Date _____
███████, individually

_____   Date _____
Stefan Qin, individually