UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION** | : |
| Plaintiff, | : |
| vs. | : |
| STEFAN QIN, VIRGIL TECHNOLOGIES LLC, MONTGOMERY TECHNOLOGIES LLC, VIRGIL QUANTITATIVE RESEARCH, LLC, VIRGIL CAPITAL LLC, and VQR PARTNERS LLC, | : |
| Defendants. | : |

## DECLARATION OF CAREY HARROLD

I, Carey Harrold, do hereby declare under penalty of perjury, in accordance with 28 U.S.C. §1745, that the following is true and correct, and that I am over 18 years of age and I am competent to testify to the matters stated herein:

1. I reside in Elmhurst, Illinois and I am 56 years old.

2. I am the Director of Finance for Virgil Quantitative Research LLC ("VQR") (which was previously Decibel18 LLC (d/b/a Virgil Quantitative Research)), the investment manager to VQR Multistrategy Fund LP ("VQR Fund"). VQR Fund is a New York-based investment fund that pools investments, including U.S. investors, and then invests in cryptocurrencies and other digital assets. I joined VQR in May 2020, I manage the VQR Fund's financial reporting and accounting.

3. I have over thirty years of experience in accounting and finance in the financial industry.

1

4. I make this Declaration based upon my personal knowledge, the books and records of the VQR Fund and other entities described below, and based on information provided to me from Stefan Qin ("Qin"), the sole owner of Virgil Technologies LLC which is a limited liability company headquartered in New York City. Virgil Technologies LLC is the parent company of two investment funds that pool investor money and then invest in cryptocurrencies or other digital assets: Virgil Sigma Fund, LP ("Sigma Fund") and VQR Fund.

5. Because I am submitting this Declaration for the limited purpose of supporting the U.S. Securities and Exchange Commission's emergency *ex parte* application, I have not set forth each and every fact that I know about this matter.

6. The Sigma Fund and VQR Fund operate as separate entities. Each Fund has its own employees, trading strategies, and fund administrator, as well as separate books and records.

7. On or around June 2020, Qin asked me to help with an audit of the Sigma Fund. Qin told me that the Sigma Fund had not completed an audit for 2018 and 2019. He further told me that he was getting pressure from Sigma Fund investors for audited statements. I initially agreed to assist with the audit.

8. Upon agreeing to help with the audit of the Sigma Fund, Qin gave me access to books and records for the Sigma Fund, including financial information contained on the accounting software QuickBooks. In June 2020, when I accessed the Sigma Fund's QuickBooks, I observed that there appeared to be limited third party supporting documentation for Sigma Fund's financial statements. Specifically, my observation of Sigma Fund's general ledger is that it lacked monthly trade detail by exchange. It is possible that trade detail was tracked outside of the general ledger but I had not found that support. Also, when I asked Sigma Fund's Operations Manager, Andrew Leahy, in an email on or around June 29, 2020 who was responsible for creating and maintaining accounting and tax information, he told me Qin. A true and correct copy of the email is attached hereto as Exhibit 1. In my experience, the Operations Manager's

statement that the owner was responsible for all of the accounting and tax records appeared very unusual for any trading firm. In summary, Sigma Fund seemed to be lacking separation of duties, basic accounting internal controls and current books and records.

9. Further, in reviewing the Sigma Fund's financial books and records, I obtained a spreadsheet from the Sigma Fund's operations manager who copied Qin stating, "Stefan asked me to pass along the attached files that were all put together as part of the K-1 process for our investors". Schedule K-1 is an Internal Revenue Service tax form issued annually for investors. A true and correct copy of the e-mail is attached hereto as Exhibit 2. The spreadsheet described the Sigma Fund's asset balances on thirty-nine cryptocurrency exchanges from December 2018 through December 2019. The spreadsheet reflects a total market value of $91,666,270.94 in assets across the various exchanges as of December 31, 2019. A true and correct copy of the spreadsheet labeled "Exchange Balances 1 Jan – 31 Dec 2019" is attached hereto as Exhibit 3.

10. After speaking with the VQR's Chief Operating Officer, Antonio Hallak, we decided that my role at VQR did not allow for the time necessary to assist in the Sigma Fund audit. In late June, 2020, Hallak and I informed Qin that I could not assist him and that he should hire full time employees or outside consultants to help prepare for Sigma Fund's audit.

Executed on 12/22/20.

Elmhurst, Illinois

_Carey Harrold_ (signature)
Carey Harrold

## INDEX OF EXHIBITS TO DECLARATION OF CAREY HARROLD

1. Email dated on or around June 29, 2020

2. Email dated on or around July 17, 2020 attaching files

3. Spreadsheet labeled "Exchange Balances 1 Jan – 31 Dec 2019"