# Exhibit B



IN THE GRAND COURT OF THE CAYMAN ISLANDS

FINANCIAL SERVICES DIVISION

January 26, 2021

FSD CAUSE NO. 22 OF 2021 (MRHJ)

IN THE MATTER OF SECTION 92(d) and (e) COMPANIES ACT (2021 REVISION)

AND IN THE MATTER OF VQR MULTISTRATEGY CAYMAN FEEDER FUND, LTD.

## WINDING UP PETITION

**To the Grand Court of the Cayman Islands**

The humble petition of Yellow River Delta Fund, Ltd whose registered office is at Mourant Corporate Services, 94 Solaris Avenue, Camana Bay, Grand Cayman KY1-1108, Cayman Islands (the **Petitioner**) shows that:

**A.   Introduction**

1.  The Petitioner seeks the winding up of VQR Multistrategy Cayman Feeder Fund (the **Feeder Fund**) on the grounds that it is unable to pay its debts, pursuant to section 92(d) of the Companies Act (2021 Revision) (**Companies Act**), and / or on the basis that it is just and equitable for the Feeder Fund to be wound up in all the circumstances pursuant to section 92(e) of the Companies Act.

**B.   The Petitioner**

2.  The Petitioner is a fund of funds, and was duly incorporated on 26 January 2018 as a company with limited liability under the laws of the Cayman Islands, bearing registration number 332242.

**C.   The Feeder Fund**

3.  The Feeder Fund was registered in the Cayman Islands on 29 April 2019 as an exempted company with limited liability and registration number 350640 pursuant to the Companies Act. The registered office of the Feeder Fund is Harneys Fiduciary Cayman Limited, 4th Floor, Harbour Place, 103 South Church Street, PO Box 10240, Grand Cayman KY1-1002, Cayman Islands.

4.  The Feeder Fund invested substantially all of its assets through a master-feeder structure into VQR Multistrategy Master Fund, LP (**VQR Master**) a limited partnership which was registered on 13 May 2019 bearing registration 101735, and acting by its general partner VQR Partners LLC (**VQR GP**, together with VQR Master and Feeder Fund the **VQR Entities**) a Cayman Islands limited liability company registered on 8 May 2019 with number 2173.

5. The appointed administrator of the Feeder Fund is MG Stover & Co (**VQR Administrator**) and the limited partners of the VQR Master are the VQR GP and Feeder Fund along with a US-based feeder fund, VQR Multistrategy Fund US Feeder LP (**US Feeder**).

6. While the VQR GP retained an investment manager (see paragraph 8 below) to provide certain investment services to the Master Fund, the management, control and conduct of activities of the Master Fund remained the responsibility of the VQR GP.

7. The Feeder Fund, VQR Master and the VQR GP were each founded by Mr Stefan Qin, an Australian national who resides part-time in New York and is understood to be in Seoul, South Korea at present.

8. The VQR Entities and US Feeder are under the indirect ownership of Mr Qin through Virgil Technologies LLC (**Virgil Tech**), being a company incorporated under the laws of Delaware. Mr Qin is the sole owner and controller of Virgil Tech. Virgil Tech wholly-owns Virgil Quantitative Research (also known as Decibel118 LLC), a Delaware limited liability company which is the Investment Manager of the Feeder Fund (**Investment Manager**).

9. Mr Qin has control over the VQR Entities and the US Feeder on account of his being the Managing Member of the VQR GP, the Investment Manager and the US Feeder, and being one of two registered directors of the Feeder Fund.

10. Through the Virgil Tech structure (outlined in paragraphs 8 and 9 above), Mr Qin also controls and indirectly owns Virgil Sigma Fund LP (**Sigma Fund**). Sigma Fund is an exempted limited partnership registered in the Cayman Islands and is operated by its general partner Virgil Capital LLC, a limited liability company registered in the Cayman Islands, with registration number 979 (**Sigma GP**). Mr Qin is the Managing Member of Sigma GP, which is a wholly-owned subsidiary of Montgomery Technologies Limited (**Montgomery Tech**), a limited company domiciled and headquartered in the State of Delaware. In turn, Montgomery Tech is a wholly-owned subsidiary of Virgil Tech.

11. On 22 December 2020, the SEC filed a complaint against Mr Qin and certain entities under his control, including the Investment Manager, Virgil Tech and VQR GP (**SEC Complaint**). At the same time, the SEC obtained a temporary restraining order (**TRO**) over the monies and assets of Mr Qin and all entities named in the SEC Complaint, including all digital assets and cryptocurrencies. As a consequence, all the assets of the Feeder Fund managed by the VQR GP are currently subject to a TRO.

D.     **The Debt**

12.    The debt due to the Petitioner comprises unpaid redemption proceeds due from the Feeder Fund in the amount of **US$804,376.00**.

13.    The Petitioner invested as a Class A shareholder of the Feeder Fund by way of subscription dated 20 December 2019 in the amount of US$250,000.

14.    Subsequently, on 27 November 2020, the Petitioner made a further subscription to the Feeder Fund in the amount of US$500,000. This subscription took effect on 1 December 2020 (**December Subscription**). The December Subscription was funded by a cash payment of US$500,000 from the Petitioner, paid on 30 November 2020. However, the Feeder Fund did not issue any confirmation that the December Subscription had taken affect.

15.    The Petitioner's investment in the VQR Fund was subject to the terms of a Confidential Private Placement Memorandum dated January 2020 (**PPM**).

*Payment of Redemptions under the PPM*

16.    The terms of the PPM provide that the Petitioner, being a shareholder of the Feeder Fund, may redeem its capital on giving 30 days' written notice. A redemption would become effective on the last Business Day (as defined in the PPM) of the calendar quarter in which the redemption request was made, subject to the Board of Directors' discretion to waive such notice and permit redemptions at other times (**Redemption Date**) (Section 9, PPM).

17.    The investment made in the Feeder Fund by the Petitioner was subject to a one year Lock-Up Period which ran from the date of the initial investment of the Petitioner, being 20 December 2019. A redemption requested within the Lock-Up Period, would be subject to a fee of 6% of the capital being withdrawn (**Redemption Fee**), unless waived by the Board of Directors (Section 9, PPM).

18.    In accepting a redemption request, the Board of Directors could also exercise a discretion to waive a withholding fee of 5% of the net asset value of the capital account from which funds were redeemed. In the normal course that hold-back could be retained for a period of up to 30 days after the completion of the year-end audit of the Feeder Fund (Section 9, PPM).

19.    Payments of redemption requests would normally be made in US dollars within 30 calendar days after the Redemption Date, provided that the Feeder Fund had received all documents necessary.

*Petitioner's Redemption*

20.    On 11 December 2020, the Petitioner issued a request to the Administrator to redeem its full shareholding in the Feeder Fund with a value of US$304,376 (**Redemption**), and to cancel the December Subscription in the amount of

US$500,000 (**Cancellation**), which had not at that point been confirmed as effective by the Feeder Fund.

21. By an email timed at 12.56 AM on 18 December 2020, Mr Qin acknowledged and approved the Redemption and Cancellation. This approval affirmed that:

   a. the Redemption was to take effect from 1 December 2020;
   b. the Redemption payable to the Petitioner would be subject to a 5% audit withholding in accordance with the Feeder Fund offering documents; and
   c. the Cancellation was effective as of 1 December 2020.

22. Accordingly, as of 1 December 2020, the Petitioner was a redemption creditor of the Feeder Fund in respect of the Petition Debt which was immediately due and payable.

23. As at the date of this Petition, the Fund has failed to pay the Petitioner the Petition Debt.

### E. SEC Investigation

24. On 23 December 2020, the Petitioner received notice that the SEC had filed the SEC Complaint and obtained a TRO against Mr Qin and certain entities within the Virgil Tech group, including the VQR GP and Investment Manager (**Virgil Defendants**) in respect of alleged securities fraud.

25. On the basis of the findings set out in the SEC Complaint and application for the TRO there are serious concerns regarding the management of the Feeder Fund given its common ownership and control by Mr Qin, who is alleged to have directed the fraud.

### F. Grounds for Winding Up

26. In the premises, the Feeder Fund is unable to pay its debts and should be wound up pursuant to section 92(d) of the Companies Act.

27. Further, and in the alternative, the Feeder Fund is just and equitable in all the circumstances for the Feeder Fund to be wound up pursuant to section 92(e) of the Companies Act.

### G. Nomination of Joint Official Liquidators

28. The Petitioner nominates David Griffin and Andrew Morrison of FTI Consulting (Cayman) Limited, Suite 3212, 53 Market Street, Camana Bay, Grand Cayman KY1-1203, Cayman Islands to act as joint official liquidators (**JOLs**) of the Feeder Fund.

**Your Petitioner therefore humbly prays that:**

(1) The Feeder Fund be wound up in accordance with the Companies Act.

(2) David Griffin and Andrew Morrison be appointed as JOLs of the Feeder Fund.

(3) The JOLs be authorised to act jointly and severally in their capacity as liquidators of the Feeder Fund.

(4) The JOLs shall not be required to give security for their appointment.

(5) The JOLs be authorised to exercise any of the powers listed in Parts I and II of Schedule 3 to the Companies Act and section 110(2) thereof, without further sanction or intervention of the Court.

(6) The JOLs be authorised to carry out any act or exercise any power considered by them to be necessary or desirable in connection with the liquidation of the Feeder Fund and the winding-up of its affairs and to prevent the dissipation of the assets of the Feeder Fund and its subsidiaries in any jurisdiction.

(7) The JOLs be authorised to take any such action as may be necessary or desirable to obtain recognition of the JOLs and/or their appointment in any other relevant jurisdiction and to make applications to the Courts of such purpose, including but not limited to the United States of America pursuant to Chapter 15 of the United States Bankruptcy Code.

(8) The JOLs have the power to appoint agents in the Cayman Islands, the United States of America and elsewhere to do any business contemplated by this Order which they are unable to do themselves or which can more conveniently be done by an agent.

(9) The JOLs be at liberty to appoint counsel, attorneys, and/or any other professional advisors, whether in the Cayman Islands or elsewhere as they may consider necessary to advise and assist them in the performance of their duties and on such terms as they may think fit and to remunerate them out of the assets of the Feeder Fund.

(10) The JOLs have authority and are directed to take all necessary steps to take control of the Feeder Fund's subsidiaries, if any, including by exercising voting or other rights attached to the shares in the Feeder Fund's subsidiaries and/or by causing themselves to be registered as holders of the Feeder Fund's shares in their subsidiaries in place of the Feeder Fund.

(11) No disposition of the Feeder Fund's property by or with the authority of the JOLs in carrying out their duties and functions and exercise of their powers under this Order shall be voided by virtue of section 99 of the Companies Act.

(12) The JOLs' remuneration and expenses be paid out of the assets of the Feeder Fund in accordance with the Companies Winding Up Rules 2020 and Part III of the Insolvency Practitioners' Regulations 2018.

(13) The Petitioners' costs of and incidental to this Petition be paid out of the assets of the Feeder Fund as an expense of the liquidation, such costs to be taxed on an indemnity basis is not agreed with the JOLs.

(14) Such further orders or directions as the Court deems appropriate.

Dated this 22nd day of January 2021

*Collas Crill*

**COLLAS CRILL**
Attorneys-at-law for the Petitioner

**Note:** This petition is intended to be served on the Feeder Fund.

## NOTICE OF HEARING

This Petition having been presented to the Court on 26th Jan. 2021 will be heard at the Law Courts, George Town, Grand Cayman on 3 March 2021 at 9.30 a.m./p.m. or as soon thereafter as the Petition can be heard.

This **Petition** was presented by Collas Crill, attorneys-at law for the Petitioner, Yellow River Delta Fund Ltd, whose address for service is Floor 2, Willow House, Cricket Square, PO Box 709, Grand Cayman KY1-1107, Cayman Islands.