**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>STEFAN QIN, VIRGIL TECHNOLOGIES LLC, MONTGOMERY TECHNOLOGIES LLC, VIRGIL QUANTITATIVE RESEARCH, LLC, VIRGIL CAPITAL LLC, and VQR PARTNERS LLC,<br><br>　　　　　　　Defendants. | Case No.: 20-cv-10849 (LGS) |

## RECEIVER'S INITIAL STATUS REPORT

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Receiver Robert A. Musiala, Jr.*

Robert A. Musiala Jr., Esq., Court-appointed Receiver for the assets of Virgil Capital LLC, Montgomery Technologies, LLC, Virgil Technologies, LLC, Virgil Quantitative Research, LLC and VQR Partners, LLC (collectively, the "Receivership Entities"), submits this Status Report (the "Report") in accordance with the Order of this Court entered on January 21, 2021 ("Receiver Order"), and for the purpose of providing a status report on the Receiver's work and findings to date (the "Investigation").[1] The facts presented in this report are preliminary and may be amended and changed as the Investigation continues. This Report includes the preliminary assessment of the Receiver's counsel as well as the consultants and advisers retained by the Receiver's counsel (the "Receiver Team").

## I. INTRODUCTION

The Receivership Entities are a group of interrelated entities, all of which were either controlled or owned directly by Defendant Stefan Qin. Using his control and ownership of the Receivership Entities, Qin perpetrated a scheme to lure investors into two funds ("Funds"), the Virgil Sigma Fund LP (the "Sigma Fund") and the VQR Multistrategy Fund LP (the "VQR Fund") that were marketed as using algorithmic trading strategies involving cryptocurrencies. Through this scheme Qin used the Funds to steal investor proceeds to fund personal expenses and investments, as well as pay investor redemptions using funds from new investors to pay earlier investors. On December 22, 2020, the Securities and Exchange Commission ("SEC") commenced an enforcement action (the "Enforcement Action") against Qin and the Receivership Entities. On

---

[1] Order Appointing Receiver ¶ 45, *United States Securities and Exchange Commission vs. Stefan Qin, et al.*, No. 20-cv-10849 (LGS) (S.D.N.Y. Jan. 21, 2021), ECF No. 31. Unless otherwise indicated, documents referenced herein by ECF No. are in connection with the above-captioned matter, *United States Securities and Exchange Commission vs. Stefan Qin, et al.*, No. 20-cv-10849 (LGS) (S.D.N.Y.).

February 4, 2021, Qin pleaded guilty to one count of securities fraud in connection with this scheme.[2]

Simultaneous with the filing of its complaint, the SEC sought emergency relief, including a preliminary injunction, in the form of an order freezing the assets of the Receivership Defendants.[3] The SEC also sought the appointment of a receiver over those assets.[4] On January 21, 2021, the Court appointed as Receiver Robert A. Musiala Jr., Esq., for the estates of the Receivership Entities.[5]

## II.   PROCEDURAL BACKGROUND

The Receiver Order directs the Receiver to: (a) use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Entities and all other Recoverable Assets, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property"); (b) take custody, control and possession of all Receivership Property and records relevant thereto; (c) manage, control, operate and maintain the Receivership Estate and hold in his possession, custody and control all Receivership Property; (d) use Receivership Property for the benefit of the Receivership Estate, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver; (e) take any action which, prior to the entry of the Receiver Order, could have been taken by the officers, directors, partners, managers, trustees and agents of the Receivership Entities; (f) engage and employ persons in his

---

[2] Press Release 21-022, Department of Justice, U.S. Attorney's Office, Southern District of New York, *Founder Of $90 Million Cryptocurrency Hedge Fund Charged With Securities Fraud And Pleads Guilty In Federal Court* (Feb. 4, 2021), *available at* https://www.justice.gov/usao-sdny/pr/founder-90-million-cryptocurrency-hedge-fund-charged-securities-fraud-and-pleads-guilty.
[3] Plaintiff Securities and Exchange Commission's *Ex Parte* Emergency Motion for an Asset Freeze and Other Relief, ECF No. 4.
[4] Stipulation to the Entry of Order Appointing Receiver, ECF No. 29.
[5] Receiver Order ¶¶ 2-3.

discretion to assist him in carrying out his duties and responsibilities; (g) take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property; (h) issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure; (i) bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver; (j) pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estate; and (k) take such other action as may be approved by the Court.[6]

### III.    DESCRIPTION OF RECEIVERSHIP ENTITIES

**Virgil Technologies LLC** is a limited liability company domiciled in the Cayman Islands and headquartered in New York, NY.

**Montgomery Technologies LLC** is a limited liability company domiciled in Delaware and headquartered in New York, NY. Montgomery Technologies is a wholly-owned subsidiary of Virgil Technologies.

**Virgil Quantitative Research LLC**, f/k/a Decibel18 LLC, is a limited liability company domiciled in Delaware and headquartered in New York, NY. Virgil Quantitative Research is a wholly-owned subsidiary of Virgil Technologies.

**Virgil Capital LLC** is a limited liability company domiciled in Delaware with its principal place of business in New York, NY. Virgil Capital is a wholly-owned subsidiary of Montgomery Technologies. Virgil Capital is the General Partner of and exercised investment authority over the Sigma Fund.

---

[6] *Id.* ¶ 7.

**VQR Partners LLC** is a limited liability company domiciled in the Cayman Islands with its principal place of business in New York, NY. VQR Partners is a wholly-owned subsidiary of Virgil Quantitative Research. VQR Partners is the General Partner of and exercised investment authority over the VQR Fund.

## IV. SUMMARY OF RECEIVERSHIP ACTIVITIES AND FINDINGS TO DATE

As described above, the Receiver Order directs the Receiver to identify, locate, recover and preserve all assets of the Receivership Estate for liquidation and distribution to the appropriate parties. Accordingly, the Receiver Team has been primarily focused on the following activities: (1) establishing and operating the Receivership Estate; (2) investigating the Receivership Entities; and (3) identifying and securing Receivership Property. This section of the Report summarizes the actions taken to date by the Receiver Team within each of these broad categories.

### A. Establishing and Operating the Receivership Estate

1. Service Providers

After the Court entered the Receiver Order, the Receiver directed BakerHostetler to retain the forensic accounting firm of Ankura Consulting Group, LLC ("Ankura") as consultants to assist with the analysis of the financial condition and activities of the Receivership Entities. The Court approved the retention of Ankura on February 4, 2021.[7] Because certain of the Receivership Entities, including Virgil Technologies LLC, VQR Partners LLC, and VQR Multistrategy Cayman Feeder Fund LTD are organized pursuant to Cayman Islands law, the Receiver has retained the Cayman Islands law firm of Nelsons to provide legal advice with respect to Cayman Islands law

---

[7] Order Authorizing Receiver to Retain Ankura Consulting Group, LLC, ECF No. 37.

and winding up petitions filed for the Sigma Fund and VQR Fund. The Court approved the retention of Nelsons on February 17, 2021.[8]

2. Communications with Investors and Creditors

The Receiver Team has received calls and correspondence from purported investors and creditors and is communicating with those parties. To facilitate communications with investors, the Receiver Team has set up a website (https://www.bakerlaw.com/qin-receivership) through which investors and claimants may access information relating to the status of the Enforcement Action and the Receivership. The Receiver Team has also set up an email address for investor inquiries (Qin-Receivership@bakerlaw.com).

3. Human Resources Administration for VQR Employees

The Receiver Team has been interviewing the former employees of the Receivership Entities, including the employees of the VQR Fund, for the purposes of gathering relevant information, identifying Receivership Property and winding down any remaining activities. The Receiver Team has been working with the payroll and benefits administrator of the VQR Fund to handle outstanding employment and benefits issues in accordance with the contractual and legal obligations of the VQR Fund. The Receiver Team will continue to work to resolve any and all human resources issues related to the Receivership Entities.

B. **Investigating the Receivership Entities**

1. Witness Interviews

The Receiver Team has been in contact with numerous witnesses and has conducted interviews with those witnesses and their counsel. These include interviews with former employees, officers, and directors of the various Receivership Entities as well as business vendors

---

[8] Order Authorizing Receiver to Retain Nelsons Attorneys-at-Law, Ltd, ECF No. 43.

and other business contacts of the various Receivership Entities. Through these interviews the Receiver Team has gained valuable information about the Receivership Entities' business operations, including electronic and hard copy recordkeeping systems and accounting procedures, and certain information about the existence and location of Receivership Property. The Receiver Team will continue to conduct interviews with witnesses and their counsel to assist in the Receiver's investigation.

2. Interviews of Stephan Qin

The Receiver Team has interviewed Stephan Qin, in coordination with Qin's counsel, to gain information about the Receivership Entities' business operations, including electronic and hard copy recordkeeping systems and accounting procedures, and also about the existence and location of potential Receivership Property. The Receiver Team has made and will continue to make requests for Qin to provide certain information to assist the Receiver in fulfilling his responsibilities.

3. Forensic Data Capture and Analysis

The Receiver Team has been working with Ankura and coordinating with the SEC to obtain various records related to the Receivership Entities and to perform forensic investigation and analysis of the records. These records include hundreds of thousands of pages of records from various U.S. and foreign based financial institutions. The records obtained to date also include documents from the Sigma Fund and VQR Fund, as well as documents pertaining to the Sigma Fund and VQR Fund obtained from administrators, accountants, employees and other vendors that worked with the Sigma Fund and VQR Fund. Additionally, the Receiver Team has obtained Qin's laptop and cell phone used during Qin's time operating the Sigma Fund and has access to the email system used by the Virgil entities. The Receiver Team is working with Ankura to analyze these

records and data to inform the Receiver's investigation. The Receiver Team intends to conduct further efforts to obtain and analyze relevant data and documentation, pursuant to both voluntary requests and subpoenas, to assist the Receiver in fulfilling his responsibilities.

### C. Identifying and Securing Receivership Property

1. Notice Letters to Financial Institutions

The Receiver Team has identified dozens of U.S. and foreign based financial institutions that may be in possession of Receivership Property. As noted below in Section VI, this includes entities holding funds located in certain bank accounts and cryptocurrency exchange accounts that were subject to the SEC's asset freeze and that have since been secured by certain financial institutions in the name of the Receiver. The Receiver Team has also been in contact with dozens of additional U.S. and foreign based financial institutions, and has served these entities with Notice Letters and Receiver Orders to freeze any Receivership Property in their possession and to serve on the Receiver a certification or statement setting forth a description of any assets traceable to a Receivership Entity in their possession as of the date of the receipt of the Receiver Order. The Receiver Team will seek to obtain additional information from these entities, pursuant to voluntary requests and subpoenas, to assist in the Receiver's investigation. In furtherance of these requests, the Receiver Team has filed with the Court a stipulation and Proposed Protective Order governing the production and exchange of any confidential information subject to these requests in order to appropriately protect such confidential information.

2. Receivership Bank Account and Cryptocurrency Custody Account

The Receiver Team is in the process of opening a bank account in the name of the Receiver that will be used for consolidation and custody of Receivership Property in the form of U.S. dollars. The Receiver Team is also in the process of establishing an account with a cryptocurrency custody

provider to be used for the consolidation and secure custody of Receivership Property in the form of cryptocurrencies.

    3.  Blockchain Analytics Vendors

The Receiver Team is in the process of selecting a blockchain analytics vendor to assist in investigations targeted at identifying the location of certain cryptocurrency assets that are believed to be Receivership Property, including through analytics of blockchain transactional data associated with certain cryptocurrency public keys that the Receiver has obtained and expects to obtain.

**V.    ANALYZING CLAIMS AGAINST THIRD PARTIES**

The Receiver Team has identified certain transfers for the benefit of others involving Receivership Property. The Receiver's investigation of these and other claims against third parties are in the preliminary stages. The Receiver is not in a position at this time to report on such claims or predict the likelihood or extent of any recovery. Before making a determination on whether to pursue such claims, the Receiver will continue to investigate and assess potential claims against third parties.

**VI.    ASSETS AND LIABILITIES**

The Receiver Team is investigating and identifying all available asset sources with an immediate priority focused on liquid assets held as fiat-currency cash and cryptocurrency at various banks and cryptocurrency exchanges. To date, the Receiver Team has identified over 30 relevant bank accounts. These accounts include a range of transactions from 2016 through 2020. The Receiver team is working to assemble the data from these bank accounts into a workable database that will be used to assess the sources and uses of funds into and out of the various Receivership Entities and provide a basis for potential actions for the recovery of Receivership

Property. Preliminary analyses indicate that investor monies were commingled and used by Qin for personal and other expenses not consistent with fiduciary protocol.

The Receiver Team is also in the process of identifying all cryptocurrency assets and working with various cryptocurrency exchanges to understand asset availability and transaction flow. To date the Receiver Team has identified certain cryptocurrency exchanges that may have had dealings with Qin and/or the Receivership Entities. The Receiver has been notified of assets available that were apparently consolidated into certain exchanges prior to the appointment of the Receiver. These exchanges have cryptocurrency assets primarily consisting of stablecoins with values consistent with the U.S. dollar, and cryptocurrency assets with values consistent with the value of Bitcoin.

The Receiver Team is assembling and analyzing investor data for both the Sigma and VQR Funds. The Sigma Fund and VQR Fund had limited books and records at the time the Receiver was appointed. Neither Fund had ever been audited and neither had any level of third-party accounting verification in the months leading up to the appointment of the Receiver. Investor data indicates that the Sigma Fund commenced in 2017 and the VQR Fund commenced in 2019 with both Funds having outstanding investor balances at the time the Receiver was appointed.

According to the information received by the Receiver Team to date, the Sigma Fund appears to have had over 120 investors and there are approximately 80 investors with outstanding balances. The VQR Fund appears to have approximately 40 current investors, some of whom overlap with the Sigma Fund. It appears that the last accounting by the VQR Fund's administrator was in June 2020. It appears that additional investment contributions were added in the second half of 2020. The Receiver Team has had preliminary discussions with the VQR Fund administrator and has outstanding requests for documents and data that may help to evaluate

investor and investment activity. This information will require further evaluation to determine its accuracy and legitimacy.

In addition to amounts owed to investors, the Receiver Team is investigating and identifying amounts that may be due to former employees, vendors, lenders, and other third parties. The Receiver Team will need to undertake extensive investigation to determine the use of funds from 2017 through 2020 and if any funds are recoverable for the Receivership Entities.

## VII. ADMINISTRATIVE EXPENSES

The Receiver has incurred expenses for legal counsel from BakerHostetler and forensic accounting and consulting from Ankura. The Receiver has not yet made any disbursements but notes that both BakerHostetler and Ankura have incurred fees and expenses in connection with these efforts, and compensation will be sought in due course in accordance with the provisions of the Receiver Order. In accordance with the Receiver Order, the Receiver's fees, including all fees and costs for the Receiver and all Retained Personnel, shall not exceed $125,000 during the initial thirty (30) days of the receivership.

## VIII. PROPOSED PLAN FOR ADMINISTERING THE RECEIVERSHIP

The reporting period covers only 30 days since the Receiver's appointment. The Receiver is still in the early stages of identifying and securing Receivership Property on behalf of the Receivership Estate. The Receiver believes that there is additional Receivership Property that may be recoverable for the Receivership Estate. However, further investigation is needed to identify any additional Receivership Property, and litigation may be necessary to recover certain Receivership Property.

The Receiver is still in the early stages of validating the contributions and investments made to the Receivership Entities based upon information collected to date, including information

provided by persons who have contacted the Receiver. Based on the information identified to date and the apparent commingling of funds and assets, the Receiver believes that it will take substantial effort to validate the contributions and investments and accurately determine what is owed to whom. The Receiver is cooperating with the SEC and the U.S. Attorney's Office for the Southern District of New York as part of these efforts.

### IX. PROPOSED PLAN FOR LIQUIDATING THE RECEIVERSHIP

The Receiver recommends that he be allowed to continue his investigation to locate and secure additional Receivership Property and validate the contributions and investments made to the Receivership Entities. Based on the Receiver Team's preliminary assessment, Receivership Property was transferred across a wide range of locations and jurisdictions as part of Qin's fraud scheme. The Receiver recommends that he be allowed to continue his investigation to identify, secure and marshal Receivership Property and set a fair claims and liquidation process.

The Receiver will seek to gain a clear understanding of any and all distinctions between the activities of the Sigma Fund and the VQR Fund. The Receiver intends to work closely with SEC staff to validate any analysis and conclusions made in this regard.

The work of identifying additional assets and recovering them through negotiation or litigation must necessarily be completed before the Receiver can prepare a definitive liquidation plan. Accordingly, the Receiver estimates that he will be able to submit a proposed liquidation plan in the first or second quarter of 2022.

## X. FUTURE STATUS REPORTS

In accordance with the Receiver Order, the Receiver will submit another status update within thirty days after the end of the first calendar quarter.[9]

Dated:  February 22, 2021

Respectfully submitted,

/s/ *Bari R. Nadworny*
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111-0100
Tel.: (212) 589-4200
Facsimile: (212) 589-4201
Marco Molina
mmolina@bakerlaw.com
Bari R. Nadworny
bnadworny@bakerlaw.com

*Attorneys for Receiver Robert A. Musiala, Jr.*

---

[9] Receiver Order ¶ 46.