**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>     Plaintiff,<br><br>  vs.<br><br>STEFAN QIN, VIRGIL TECHNOLOGIES LLC, MONTGOMERY TECHNOLOGIES LLC, VIRGIL QUANTITATIVE RESEARCH, LLC, VIRGIL CAPITAL LLC, and VQR PARTNERS LLC,<br><br>     Defendants. | Case No.: 20-cv-10849 (LGS) |

### RECEIVER'S SECOND STATUS REPORT

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Receiver Robert A. Musiala, Jr.*

Robert A. Musiala Jr., Esq., Court-appointed Receiver for the assets of Virgil Capital LLC, Montgomery Technologies, LLC, Virgil Technologies, LLC, Virgil Quantitative Research, LLC and VQR Partners, LLC (collectively, the "Receivership Entities"), submits this Status Report (the "Report") in accordance with the Order of this Court entered on January 21, 2021 ("Receiver Order"), and for the purpose of providing a status report on the Receiver's work and findings to date (the "Investigation").[1] The facts presented in this Report are preliminary and may be amended and changed as the Investigation continues. This Report includes the assessment of the Receiver's counsel as well as the consultants and advisers retained by the Receiver's counsel (the "Receiver Team").

## I. INTRODUCTION

The Receivership Entities are a group of interrelated entities, all of which were either controlled or owned directly by Defendant Stefan Qin. Using his control and ownership of the Receivership Entities, Qin perpetrated a scheme to lure investors into two funds (the "Funds"), the Virgil Sigma Fund LP (the "Sigma Fund") and the VQR Multistrategy Fund LP (the "VQR Fund") that were marketed as using algorithmic trading strategies involving cryptocurrencies. Through this scheme Qin used the Funds to steal investor proceeds to fund personal expenses and investments, as well as pay investor redemptions using funds from new investors to pay earlier investors. On December 22, 2020, the Securities and Exchange Commission (the "SEC") commenced an enforcement action (the "Enforcement Action") against Qin and the Receivership

---

[1] Order Appointing Receiver ¶ 46, *United States Securities and Exchange Commission vs. Stefan Qin, et al.*, No. 20-cv-10849 (LGS) (S.D.N.Y. Jan. 21, 2021), ECF No. 31. Unless otherwise indicated, documents referenced herein by ECF No. are in connection with the above-captioned matter, *United States Securities and Exchange Commission vs. Stefan Qin, et al.*, No. 20-cv-10849 (LGS) (S.D.N.Y.).

Entities. On February 4, 2021, Qin pleaded guilty to one count of securities fraud in connection with this scheme.[2]

Simultaneous with the filing of its complaint, the SEC sought emergency relief, including a preliminary injunction, in the form of an order freezing the assets of the Receivership Defendants.[3] The SEC also sought the appointment of a receiver over those assets.[4] On January 21, 2021, the Court appointed Robert A. Musiala Jr., Esq. as the receiver (the "Receiver") for the estates of the Receivership Entities.[5] The Receiver Order requires that the Receiver file an initial status report to the Court within 30 days of the Receiver Order. In satisfaction of this requirement, the Receiver submitted the initial status report on February 22, 2021.[6] In addition, the Receiver Order requires that the Receiver file a status report within thirty days after the end of each calendar quarter. In satisfaction of this requirement, the Receiver submits this second status report.

## II.   SUMMARY OF RECEIVERSHIP ACTIVITIES AND FINDINGS TO DATE

### A. Operating the Receivership Estate

#### 1. Service Providers

As noted in the initial status report, the Receiver directed BakerHostetler to retain the forensic accounting firm of Ankura Consulting Group, LLC ("Ankura") as consultants to assist with the analysis of the financial condition and activities of the Receivership Entities. The Court approved the retention of Ankura on February 4, 2021.[7] The Receiver has also retained the Cayman

---

[2] Press Release 21-022, Department of Justice, U.S. Attorney's Office, Southern District of New York, *Founder Of $90 Million Cryptocurrency Hedge Fund Charged With Securities Fraud And Pleads Guilty In Federal Court* (Feb. 4, 2021), *available at* https://www.justice.gov/usao-sdny/pr/founder-90-million-cryptocurrency-hedge-fund-charged-securities-fraud-and-pleads-guilty.
[3] Plaintiff Securities and Exchange Commission's *Ex Parte* Emergency Motion for an Asset Freeze and Other Relief, ECF No. 4.
[4] Stipulation to the Entry of Order Appointing Receiver, ECF No. 29.
[5] Receiver Order ¶¶ 2-3.
[6] Receiver's Initial Status Report, ECF No. 46.
[7] Order Authorizing Receiver to Retain Ankura Consulting Group, LLC, ECF No. 37.

Islands law firm of Nelsons to provide legal advice with respect to Cayman Islands law and winding up petitions filed for the Sigma Fund and VQR Fund. The Court approved the retention of Nelsons on February 17, 2021.[8]

As discussed further below, the Receiver Team has identified and taken custody of certain cryptocurrency assets, some of which trade in inefficient or illiquid markets. The Receiver is currently in the process of identifying an appropriate vendor to assist in the orderly liquidation of these assets. Additionally, the Receiver Team is currently evaluating multiple proposals it has received to engage the services of a blockchain analytics vendor to assist in identifying additional Receivership Property in the form of cryptocurrencies. The Receiver expects to make selection decisions and move for Court approval of these vendors as appropriate.

2. Communications with Investors and Creditors

The Receiver Team continues to receive correspondence from purported investors and creditors and is communicating with those parties. The Receiver Team continues to maintain a website (https://www.bakerlaw.com/qin-receivership) through which investors and claimants may access information relating to the status of the Enforcement Action and the Receivership. The Receiver Team also continues to maintain an email address for investor inquiries (Qin-Receivership@bakerlaw.com).

3. Human Resources Administration for VQR Employees

The Receiver Team has conducted interviews of all former employees of the Receivership Entities and has gathered relevant information to identify Receivership Property and wind down activities of the Receivership Entities. The Receiver Team has resolved most benefits and immigration issues regarding employees. The Receiver Team will continue to work with the

---

[8] Order Authorizing Receiver to Retain Nelsons Attorneys-at-Law, Ltd, ECF No. 43.

payroll and benefits administrator of the VQR Fund to handle any remaining employment and benefits issues in accordance with the contractual and legal obligations of the VQR Fund.

    4.   Employee Claims

The Receiver is reviewing claims by former employees who believe they are owed certain amounts pursuant to their employment agreements with the Receivership Entities. The Receiver Team is working diligently to verify and quantify these employee claims.

    5.   Creditor Claims

The Receiver Team is in the process of evaluating the investor contributions made to the Receivership Entities based on information received from third parties, internal records obtained from the Receivership Entities, and information received from persons that have contacted the Receiver. The Receiver has not yet determined the exact number of investor claims.

The Receiver Team is working on formulating a creditor claims process. The Receiver expects for this process to include procedures for providing notice to potential claimants, receiving and reviewing claims, recommending to the Court payment or denial of claims, and disposing of claims. The Receiver has not disbursed any funds to any claimants. The Receiver expects to pay certain creditor expenses approved by the Court after delays in disbursing funds from the Receivership's bank account, due to the Covid-19 pandemic, have been resolved.

**B. Investigations**

    1.   Witness Interviews

The Receiver Team has to date conducted approximately 37 interviews in total, and has interviewed approximately 31 witnesses, some of whom have retained legal counsel, in connection with the Receiver's Investigation. These include interviews with former employees, officers, and directors of the various Receivership Entities as well as business vendors and other business

contacts of the various Receivership Entities. The Receiver Team will continue to conduct interviews with witnesses and their counsel (if applicable) to assist in the Receiver's Investigation.

2. Interviews of Stephan Qin

The Receiver Team has conducted multiple interviews with Stephan Qin, in coordination with Qin's counsel, and will continue to conduct these interviews, to gain information about the Receivership Entities' business operations and the existence and location of potential Receivership Property.

3. Forensic Data Capture and Analysis

The Receiver Team continues to coordinate with certain third parties, as well as the SEC and the U.S. Attorney's Office for the Southern District of New York, to obtain various records related to the Receivership Entities and to perform forensic investigation and analysis of the records. Among other data sources, including those described in the initial status report, the Receiver Team has obtained certain hardware devices previously used by Qin. To date the Receiver Team has obtained and processed approximately 451 GB of data. The Receiver Team is working to analyze these records and data to inform the Receiver's Investigation and asset recovery efforts. The Receiver Team intends to continue to locate, obtain, and analyze relevant data and documentation, pursuant to both voluntary requests and subpoenas, to assist the Receiver in identifying and recovering assets.

**C. Identifying and Securing Receivership Property**

1. Notice Letters and Voluntary Information Requests

The Receiver Team has been in contact with over 100 U.S. and foreign based financial institutions, and has served these entities with Notice Letters and Receiver Orders to freeze any Receivership Property in their possession and to serve on the Receiver a certification or statement

setting forth a description of any assets traceable to a Receivership Entity in their possession as of the date of the receipt of the Receiver Order. The Receiver Team has obtained and continues to seek additional information from these entities, pursuant to voluntary information requests and subpoenas, to assist in the Receiver's Investigation. In many circumstances, the Receiver Team has supplemented the initial Notice Letters with new information gained during the ongoing Investigation. In furtherance of these requests, the Receiver Team has filed and the Court ordered a Stipulation and Order governing the production and exchange of any confidential information subject to these requests to appropriately protect such confidential information and facilitate the provision of information.[9]

2. Subpoenas

The Receiver Team has served approximately 18 subpoenas on various third parties to obtain additional information to assist in identifying and recovering Receivership Property. The Receiver Team will continue to issue subpoenas, as appropriate, to third parties that may be in possession of information relevant to the Receiver's Investigation.

3. Receivership Bank Account and Cryptocurrency Custody Account

The Receiver has opened a bank account in the name of the Receivership for consolidation and custody of Receivership Property in the form of U.S. dollars. Due to the Covid-19 pandemic, the Receiver's ability to make disbursements from this account has been delayed. After the delays are resolved the Receiver will use the funds in this account to pay certain Receivership expenses. The Receiver has also established an insured institutional cryptocurrency custody account with a U.S. based firm for the consolidation and secure custody of Receivership Property in the form of cryptocurrencies.

---

[9] Stipulation and Order Governing the Production and Exchange of Confidential Information, ECF No. 48.

4. Blockchain Analytics Vendors

The Receiver Team has met with seven different providers of proprietary blockchain analytics tools and has received competitive proposals from these vendors to assist in investigations targeted at identifying the location of certain cryptocurrency assets that are believed to be Receivership Property. The Receiver expects to make a selection decision and seek Court approval of one of these vendors, as appropriate. The assistance of a blockchain analytics vendor will allow the Receiver Team to begin a more thorough analysis of blockchain transactional data associated with certain cryptocurrency public keys that the Receiver has obtained and expects to obtain through his Investigation.

5. Physical Assets

The Receiver Team has conducted a review and inventory of personal assets that were in Qin's custody and has taken physical custody of certain assets and created an accounting of Qin's assets. The Receiver Team is continuing its investigation to locate any additional personal property owned by Qin.

## III. CLAIMS AGAINST THIRD PARTIES

The Receiver Team continues to investigate potential claims held by the Receiver against third parties. The Receiver Team has been in contact with over 100 third parties located in the U.S. and various foreign jurisdictions to identify potential claims for the recovery of Receivership Property. The Receiver Team is currently engaged in discussions with certain third parties related to potential claims involving assets of substantial value that the Receiver believes are Receivership Property. The Receiver continues his Investigation to quantify these claims, evaluate the legal basis for recovery, and assess the likelihood of recovery. Wherever possible the Receiver will seek to recover against these third parties for the value of the claims without initiating litigation.

However, the Receiver is prepared to initiate litigation to resolve claims against third parties if necessary. Before initiating any litigation the Receiver will seek the Court's approval.

The Receiver Team continues its Investigation to identify additional third parties that may be in possession of Receivership Property. The Receiver believes there is a reasonable likelihood that additional claims for the recovery of Receivership Property with substantial value may be identified through the ongoing Investigation efforts.

## IV. ASSETS AND LIABILITIES

The Receiver has established a bank account to secure assets in the form of U.S. dollars, and has established an insured institutional cryptocurrency custody account with a U.S.-based firm to provide safe custody of certain cryptocurrency assets. The Receiver also has established a multi-signature cryptocurrency wallet to custody certain cryptocurrency assets which are not supported by the Receiver's institutional custody account. The market value of the cryptocurrency assets in the possession of the Receiver is likely to fluctuate because cryptocurrency prices are highly volatile, and certain cryptocurrency markets are inefficient and illiquid.

The Receiver Team is investigating to identify all available asset sources. The Receiver Team continues to assemble data from dozens of bank accounts into a workable database that will be used to assess the sources and uses of funds into and out of the various Receivership Entities and provide a basis for potential actions for the recovery of Receivership Property. The Receiver Team is also in the process of identifying additional cryptocurrency assets and is working to obtain relevant information from certain third parties that may have had dealings with Qin and/or the Receivership Entities. Additionally, the Receiver Team has taken a physical inventory of items in Qin's personal residence and has taken custody of certain items that are believed to be of value for eventual liquidation.

The Receiver Team continues to analyze investor data for both the Sigma and VQR Funds, which had limited books and records. Neither Fund had been audited since 2016 and neither had any level of third-party accounting verification in the months leading up to the appointment of the Receiver. The Receiver Team continues to analyze voluminous documents and data obtained to evaluate investor and investment activity, investigate the use of funds from 2017 through 2020, and determine if any funds are recoverable for the Receivership Entities.

## V. ADMINISTRATIVE EXPENSES

The Receiver has incurred expenses for legal services from BakerHostetler, forensic accounting and consulting services from Ankura, and legal services from Nelsons, the Receiver's Cayman Islands counsel. The Receiver has not yet made any disbursements to BakerHostetler, Ankura, or Nelsons. The Receiver will provide details about the fees for BakerHostetler, Ankura, and Nelsons in his first Quarterly Fee Application.

The Receiver has incurred expenses related to winding down the relationships with certain vendors used by the Receivership Entities. The Receiver expects to pay these expenses using funds from the Receiver's bank account in due course. The Receiver has also incurred a minimal amount of standard transaction fees (sometimes referred to as "gas fees") associated with transferring cryptocurrency from Receivership Entity wallets to wallets controlled by the Receiver. These fees are mandatory payments to the owners of the computers that devote computer processing power, and incur associated electricity and other costs, to perform the computational work to validate transactions on a public blockchain. These fees are automatically collected from the cryptocurrency transferred at the time of the transaction.

The Receiver Order grants the Receiver authority to dispose of Receivership Property in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to

the Receivership Estate.[10] Pursuant to this authority, the Receiver has taken action to liquidate certain cryptocurrency "stablecoins" (i.e., cryptocurrency units with values tied to the U.S. dollar) held at a cryptocurrency exchange, and arranged to transfer those funds into the Receivership bank account. As part of this liquidation, the Receiver also liquidated a certain amount of ether and bitcoin that were held in the same account at the exchange. Additionally, the Receiver has worked with a foreign cryptocurrency exchange to obtain certain Receivership Property in the form of cryptocurrencies. To take custody of this Receivership Property, the Receiver worked with the exchange to convert certain cryptocurrencies into stablecoins that could be transferred into the Receivership account held at a U.S. cryptocurrency custody provider.

The Receiver Team is currently investigating options for the orderly liquidation of the cryptocurrencies currently in possession of the Receivership Estate in a manner deemed most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property. The Receiver intends to seek authority from the Court where necessary related to these activities.

## VI.  PROPOSED PLAN FOR ADMINISTERING THE RECEIVERSHIP

The Receiver is still in the early stages of identifying and securing Receivership Property on behalf of the Receivership Estate. The Receiver believes that there is additional Receivership Property that may be recoverable for the Receivership Estate. However, further investigation is needed to identify any additional Receivership Property, and litigation may be necessary to recover certain Receivership Property.

The Receiver Team continues its work to validate the contributions and investments made to the Receivership Entities. Based on the information identified to date, the Receiver believes that

---

[10] Receiver Order ¶ 30.

substantial effort is still required to validate the contributions and investments and accurately determine what is owed to whom. The Receiver is cooperating with the SEC and the U.S. Attorney's Office for the Southern District of New York as part of these efforts.

The Receiver recommends that he be allowed to continue his Investigation to locate and secure additional Receivership Property and validate the contributions and investments made to the Receivership Entities. In accordance with the Receiver Order, the Receiver will submit another status update within thirty days after the end of the second calendar quarter.[11]

Dated:  April 30, 2021                    Respectfully submitted,

*/s/ Teresa Goody Guillén*
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 1100
Washington, D.C. 20036
Tel.: (202) 861-1500
Facsimile: (202) 861-1783
Teresa Goody Guillén
tgoodyguillen@bakerlaw.com

45 Rockefeller Plaza
New York, NY 10111
Tel.: (212) 589-4200
Facsimile: (212) 589-4201
Marco Molina
mmolina@bakerlaw.com
Bari R. Nadworny
bnadworny@bakerlaw.com

*Attorneys for Receiver Robert A. Musiala, Jr.*

---

[11] Receiver Order ¶ 46.