45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

**BakerHostetler**

By **July 19, 2021**, the Receiver shall file a proposed Unopposed Motion for Permission to Return Funds to CBLB.

SO ORDERED

Dated: July 15, 2021
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

July 14, 2021

**By ECF**

The Honorable Lorna G. Schofield
U.S. District Court Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    <u>SEC v. Qin, et al</u>., No. 20 Civ. 10849 (LGS) (S.D.N.Y.)

Dear Judge Schofield:

We are counsel to the Receiver, Robert A. Musiala, Jr., in the above-referenced action. We write to request permission from the Court to return funds to CACEIS Bank Luxembourg Branch ("CBLB"), or, alternatively, leave to file, or a pre-motion conference to seek leave to file, a Motion for Permission to Return Funds to CBLB.[1]

As set forth below, CBLB is seeking the return of approximately $2.5 million that it mistakenly transferred to a bank account for one of the Receivership Entities on behalf of a CBLB client. The Receiver has evaluated CBLB's request and determined that the funds at issue were transferred in error and should be returned to CBLB (less the cost of fees expended by the Receiver's forensic and legal teams in investigating and resolving this matter).

The Receiver's determination is based, among other things, on his investigation, a forensic analysis conducted by Ankura Consulting Group, LLC ("Ankura"), an expert consulting firm that the Receiver has retained in connection with this matter, as well as documents and information provided to the Receiver by CBLB. The Receiver has conferred with the U.S. Securities and Exchange Commission ("SEC") and defendant Stefan Qin ("Qin"). The SEC and Qin have advised us that they do not oppose the proposed motion or the return of the funds to CBLB.

*Procedural Background*

This case involves charges by the SEC under the federal securities laws against defendant Qin and five entities under Qin's alleged ownership and control: Virgil Technologies LLC, Montgomery Technologies LLC, Virgil Quantitative Research LLC, Virgil Capital LLC and VQR Partners LLC (collectively the "Entity Defendants"). As alleged in the SEC's complaint, Qin perpetrated a fraudulent scheme to lure investors into two funds he controls, the Virgil Sigma Fund LP (the "Sigma Fund") and the VQR Multistrategy Fund LP (the "VQR Fund").[2] Per the complaint, Qin and Virgil Capital LLC, Sigma Fund's managing entity, prepared and provided to investors fraudulent documentation that the Fund held millions of dollars worth of digital assets,

---

[1] This request is made pursuant to Rule III.A.1 of Your Honor's Individual Rules and Procedures for Civil Cases.
[2] Compl., *SEC v. Qin, et al.*, No. 20 Civ. 10849 (LGS) (S.D.N.Y. Dec. 22, 2020), ECF No. 1, ¶¶ 1-2.

Atlanta   Chicago   Cincinnati   Cleveland   Columbus   Costa Mesa   Dallas   Denver   Houston
Los Angeles   New York   Orlando   Philadelphia   San Francisco   Seattle   Washington, DC   Wilmington

made false representations to investors as to the whereabouts of their investments in the Fund, and sought to dissipate the Fund's assets.[3]

On December 23, 2020, the Court granted the SEC's Motion for a Temporary Restraining Order freezing assets held by, or for the benefit of, the Entity Defendants, the Sigma Fund, or the VQR Fund.[4] On January 6, 2021, on the SEC's Order to Show Cause, the Court entered a Preliminary Injunction continuing the freeze.[5] By Order dated January 21, 2021, the Court appointed Mr. Musiala as Receiver for the estates of the foregoing entities.[6]

### *CBLB's Inadvertent Transfer and Attempts to Recover the Funds*

The facts set forth below are based on (1) the accompanying Declaration of Jean-Francois Abadie; (2) the Receiver's independent investigation, including review by two members of the Receiver's legal and accounting teams of the relevant documents provided by CBLB; (3) the findings of a forensic analysis conducted by Ankura on behalf of the Receiver, which the Receiver has reviewed and with which he concurs; and (4) several meetings and email communications between counsel for the Receiver and counsel for CBLB from March 6, 2021 through the present.

CBLB is a depositary bank that acts on behalf of clients. On December 29, 2020, one of CBLB's clients, an investor in the Sigma Fund, sent CBLB an order for the redemption of all of its remaining shares in the Fund, in the amount of $2,500,421.63.[7] Based on the client's redemption order, CBLB sent a redemption instruction to the Sigma Fund and its administrator for the client's "entire remaining holding" in the Fund.[8] This redemption request was sent six days after the SEC had commenced this action and the Court had issued the asset freeze.

On the same day, the client also sent CBLB a series of orders to transfer funds among its other accounts internally at CBLB. These internal orders did not relate to the client's position in the Sigma Fund and were not intended to effect any transactions with counterparties outside of CBLB.[9] However, a CBLB employee, mistakenly combined the internal and external orders and booked them together in CBLB's system.[10]

When the employee became aware of the error, he attempted to undo it by entering an internal offsetting order intended to correct CBLB's accounting for these transactions.[11] The offsetting order was not intended to effect a transaction with a counterparty outside the bank, which would have contradicted the client's express instruction to redeem its shares in the Sigma Fund.[12] However, the employee's order automatically, and inadvertently, generated an external payment

---

[3] Id., at ¶¶ 3-5.
[4] T.R.O. Freezing Assets and Order to Show Cause, *SEC v. Qin, et al.*, No. 20 Civ. 10849 (LGS) (S.D.N.Y. Dec. 24, 2020), ECF No. 19.
[5] Prelim. Inj. Freezing Assets and Providing Related Relief, *SEC v. Qin, et al.*, No. 20 Civ. 10849 (LGS) (S.D.N.Y. Jan. 6, 2021), ECF No. 27.
[6] Order Appointing Receiver, *SEC v. Qin, et al.*, No. 20 Civ. 10849 (LGS) (S.D.N.Y. Jan. 21, 2021), ECF No. 31.
[7] Decl. of Jean-Francois Abadie In Supp. of Receiver's Mot. For Permission to Return Funds to CBLB, ¶ 3.
[8] Id., at ¶ 4.
[9] Id., at ¶ 6.
[10] Id., at ¶ 7.
[11] Id., at ¶ 8.
[12] Id., at ¶ 12.

instruction that resulted in the transfer of $2,500,421.63 (*i.e.*, the exact amount of the client's redemption order) to the Silvergate Bank account in the name of Virgil Sigma Fund LP (via JPMorgan Chase and Pacific Coast Bankers Bank).[13] This account was, and remains, frozen in accordance with the Court's asset freeze.[14]

Upon learning of the error, CBLB took immediate steps to recover the funds, including sending a SWIFT to JPMorgan requesting reversal of the payment, and numerous emails to the Sigma Fund, its administrator, Qin's counsel, and the Receiver.[15] These steps are more fully set forth in the Declaration of Jean-Francois Abadie. The funds remain frozen at Silvergate Bank.

### *Return of Funds to CBLB Is Authorized by the Court's Order Appointing Receiver*

The requested return of funds to CBLB is authorized pursuant to the Order Appointing Receiver, filed on January 21, 2021 (the "Order") in this matter. Specifically, the Order provides that the Receiver has the general power and duty to (i) "use Receivership Property for the benefit of the Receivership Estates, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;" (ii) "take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, managing members, trustees, and agents of the Receivership Entities;" and (iii) "take such other action as may be approved by this Court."[16]

These standards are satisfied in this case given (1) the Receiver's determination, based on its own investigation, a forensic analysis, a review of the Declaration of Jean-Francois Abadie, and information provided in numerous communications with CBLB's counsel over the past four months that the funds at issue were transferred to the Sigma Fund in error and are not connected to the fraudulent scheme, and (2) that the SEC and Qin consent to the return of the funds to CBLB. With respect to the first factor, the fact that the funds were transmitted several days after the SEC filed its complaint and the Court entered the asset freeze lends further support to the premise that these funds were sent in error and are not connected to the fraud.

In order to limit expenses in connection with this matter, we respectfully request that the Court grant the requested permission to return the funds to CBLB without a conference or additional briefing. However, should the Court deem a conference or further briefing appropriate, we respectfully request leave to file, or a pre-motion conference in order for the Receiver to seek leave to file, an Unopposed Motion for Permission to Return Funds to CBLB.

Respectfully submitted,

*/s/ Marco Molina*
Marco Molina

Attachments

---

[13] Id., at ¶ 10-11.
[14] Id., at ¶ 16.
[15] Id., at ¶¶ 14-16.
[16] Order Appointing Receiver, *supra* note 6, at ¶¶ 7(D), (E) & (K).