UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>STEFAN QIN, VIRGIL TECHNOLOGIES LLC, MONTGOMERY TECHNOLOGIES LLC, VIRGIL QUANTITATIVE RESEARCH, LLC, VIRGIL CAPITAL LLC, and VQR PARTNERS LLC,<br><br>Defendants. | Case No.: 20-cv-10849 (LGS) |

### RECEIVER'S CERTIFIED INITIAL FEE APPLICATION

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Receiver Robert A. Musiala, Jr.*
*Court-appointed Receiver for Receivership Entities*

Pursuant to paragraphs 1-3 of this Court's Order Appointing Receiver in this case (ECF No. 31) (the "Receiver Order"), Robert A. Musiala Jr., Esq., the Court-appointed Receiver over Defendants Virgil Capital LLC, Montgomery Technologies, LLC, Virgil Technologies, LLC, Virgil Quantitative Research, LLC, and VQR Partners, LLC, including without limitation the assets of Virgil Sigma Fund, LP and VQR Multistrategy Fund, LP (collectively, "Receivership Entities"), files this certified initial fee application.

## SUMMARY OF FEE REQUEST

1. This initial fee application covers January 21, 2021 to March 31, 2021 (the "Application Period"), has been reviewed and approved by the U.S. Securities and Exchange Commission ("SEC"), and is submitted in accordance with the Receiver Order, the local rules of this Court, and the Billing Instructions for Receivers in Civil Actions Commenced by the United States Securities and Exchange Commission (the "Billing Instructions").

2. The Receiver respectfully requests that this Court enter an order approving and authorizing, on an interim basis, the payment of fees and expenses for the first thirty days of the Application Period totaling $98,680 to the Receiver's legal counsel, Baker & Hostetler LLP ("BakerHostetler"), $25,000 to Ankura Consulting Group, LLC ("Ankura"), and $1,320 to the Receiver's Cayman Islands counsel, Nelsons Attorneys-at-Law, Ltd ("Nelsons"). These amounts reflect the application of the fee cap of $125,000.00 (of which $98,680 is allocated to BakerHostetler, $25,000 to Ankura, and $1,320 to Nelsons) for the first thirty days of the Receivership. The Receiver's counsel as well as the consultants and advisers retained by the Receiver's counsel are collectively referred to as the "Receiver Team."

3. The Receiver also respectfully requests that this Court enter an order approving and authorizing, on an interim basis, the payment of fees and expenses for the remainder of the Application Period totaling $647,957.44 to BakerHostetler, $458,647.00 to Ankura, and $5,044.80

to Nelsons. These amounts reflect fees and expenses incurred after the first thirty days of the Receivership, and through March 31, 2021.

4. The Receiver recognizes that pursuant to paragraph 54 of the Receiver Order (ECF No. 31), Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

## CASE STATUS

5. <u>Cash on Hand</u>. As of the date of the filing of this report, the amount of cash on hand in the Receiver's bank account consists of (a) amounts received from Defendants' bank accounts; (b) amounts received from the liquidation of certain investments identified by the Receiver Team as Receivership Property[1]; (c) amounts received from Defendants' U.S. dollar accounts at a U.S.-based cryptocurrency exchange; (d) amounts received from the Defendants' U.S. dollar account at a foreign-based cryptocurrency OTC desk and identified by the Receiver Team as Receivership Property; (e) amounts received from the liquidation of Defendants' cryptocurrency account at a foreign-based cryptocurrency OTC desk and identified by the Receiver Team as Receivership Property; and (f) amounts received from cash collected during a physical site inspection.

6. <u>Cryptocurrency Assets</u>. In addition to the cash on hand listed above, as of the date this report was filed with the Court, the Receiver has also taken possession of cryptocurrency assets consisting of Bitcoin (BTC), Ether (ETH), ERC20 Wrapped Bitcoin tokens (WBTC), ERC20 Ren

---

[1] "Receivership Property" is defined as all property interests of the Receivership Entities and all other Recoverable Assets, including, but not limited to, monies, funds, securities, digital assets, credits, effects, goods, chattels, lands, premises, leases, claims, rights, and other assets, together with all rents, profits, dividends, interest, or other income attributable thereto, of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly. Receiver Order ¶ 7.

tokens (REN), ERC20 U.S. Dollar Coin tokens (USDC), ERC20 AirSwap tokens (AST), ERC20 Tether tokens (USDT), ERC20 GRAIN tokens (GRAIN), ERC20 Curve tokens (Curve), ERC20 Cool Cousin tokens (CUZ), ERC20 Sparrow tokens (SPO), ERC20 Hive tokens (HVN), and ERC20 Caih tokens (CAIH). The Receiver has established an insured institutional cryptocurrency custody account with a U.S.-based firm to provide safe custody of cryptocurrency assets as well as a multi-signature cryptocurrency wallet to custody certain cryptocurrency assets that are not supported by the Receiver's institutional custody account. The value of these cryptocurrency assets is likely to fluctuate because cryptocurrency prices are highly volatile, and certain cryptocurrency markets are inefficient and illiquid.

7. <u>Personal Property</u>. The Receiver has conducted a review and inventory of personal property in Qin's custody and has taken custody of certain property, including certain collectibles that the Receiver believes may be of value.

8. <u>Expenses</u>. The Receiver has incurred expenses related to winding down the relationships with certain vendors used by the Receivership Entities. The Receiver expects to pay these expenses using funds from the Receiver's bank account in due course. The Receiver has also incurred a minimal amount of standard transaction fees (sometimes referred to as "gas fees") associated with transferring cryptocurrency from Receivership Entities' wallets to wallets controlled by the Receiver. These fees are mandatory payments to the owners of the computers that devote computer processing power, and incur associated electricity and other costs, to perform the computational work to validate transactions on a public blockchain. These fees are automatically collected from the cryptocurrency transferred at the time of the transaction. The Receiver has paid these fees out of assets of the Receivership, and the Receiver is not seeking reimbursement for these fees. Additionally, the Receiver expects to incur expenses related to re-establishing certain email accounts and document management systems of the Receivership

Entities for the purposes of accessing information. The Receiver expects to pay these expenses using funds from the Receiver's bank account.

9. <u>Employee Claims</u>. The Receiver is reviewing claims by former employees who believe they are owed certain amounts pursuant to their employment agreements with the Receivership Entities. The Receiver Team is working diligently to verify and quantify these employee claims.

10. <u>Creditor Claims</u>. The Receiver Team is in the process of evaluating the investor contributions made to the Receivership Entities based on information received from third parties, internal records obtained from the Receivership Entities, and information received from persons who have contacted the Receiver. The Receiver has not yet determined the exact number of investor claims.

11. The Receiver Team is formulating a creditor claims process. The Receiver expects for this process to include procedures for providing notice to potential claimants, receiving and reviewing claims, recommending to the Court payment or denial of claims, and disposing of claims. The Receiver has not disbursed any funds to any claimants. The Receiver expects to pay certain creditor expenses approved by the Court after delays in disbursing funds from the Receivership's bank account, due to the Covid-19 pandemic, have been resolved.

12. <u>Claims Held by Receiver</u>. The Receiver Team continues to investigate potential claims held by the Receiver against third parties. The Receiver Team has been in contact with over 100 third parties located in the U.S. and various foreign jurisdictions to identify potential claims for the recovery of Receivership Property. The Receiver Team is currently engaged in discussions with certain third parties related to potential claims involving assets of substantial value that the Receiver believes are Receivership Property. The Receiver continues his investigation to quantify

these claims, evaluate the legal basis for recovery, and assess the likelihood of recovery. When possible the Receiver will seek to recover against these third parties for the value of the claims without initiating litigation. However, the Receiver is prepared to initiate litigation to resolve claims against third parties if necessary. Before initiating any litigation the Receiver will seek the Court's approval.

13. The Receiver Team continues its investigation to identify additional third parties who may be in possession of Receivership Property. The Receiver believes there is a reasonable likelihood that additional claims for the recovery of Receivership Property with substantial value may be identified through the ongoing investigation efforts.

## **FEE APPLICATION**

14. On December 22, 2020, the SEC filed a complaint against Stefan Qin and the Receivership Entities.

15. On January 21, 2021, the Court appointed Robert A. Musiala Jr. as Receiver over the Receivership Entities, and approved BakerHostetler as legal counsel to the Receiver (ECF No. 31). The Receiver and BakerHostetler began working on this matter on January 21, 2021.

16. On February 4, 2021, the Court entered an order approving the Receiver's motion to employ Ankura as a forensic accounting, data forensics, and investigative consultant (ECF No. 37). Ankura began working on this matter on February 4, 2021.

17. On February 17, 2021, the Court entered an order approving the Receiver's motion to employ the Cayman Islands law firm of Nelsons to provide legal advice with respect to Cayman Islands law and winding up petitions filed for the Virgil Sigma Fund LP and VQR Multistrategy Cayman Feeder Fund, Ltd. (ECF No. 43). Nelsons began working on this matter on February 17, 2021.

18. The names, hours worked, hourly billing rates, and total fees of all BakerHostetler professionals (including legal staff, in-house data forensics staff, and non-attorney support staff) who have billed time to this matter, including the Receiver, are listed in BakerHostetler's invoice, which has been submitted to and approved by the SEC.[2] The hourly billing rates for BakerHostetler legal staff are the same as those listed in BakerHostetler's proposal, which is attached to the Stipulation to the Entry of Order Appointing Receiver filed on January 20, 2021 (ECF No. 29-1). The Receiver's hourly rate is $580. BakerHostetler partner Marco Molina's hourly rate is $590. All other BakerHostetler partners are billed at an hourly rate of $695, and all BakerHostetler associates are billed at an hourly rate of $260. The billing rates of BakerHostetler in-house data forensics staff, and non-attorney support staff, are their standard rates. BakerHostetler has not incurred any travel costs. In total, BakerHostetler has agreed to discounts consisting of the fee cap for the first 30 days, and significantly discounted hourly rates, resulting in a combined total discount and fee write-off of $675,026.50 for the Application Period, which is equivalent to a 47.5% total discount from BakerHostetler's standard hourly rates.

19. The names, hours worked, hourly billing rates, and total fees of all Ankura professionals who have billed time to this matter are listed in Ankura's invoice, which has been submitted to and approved by the SEC. Ankura has incurred travel costs associated with taking custody of certain of Qin's devices and other assets. In total, Ankura has agreed to discounts consisting of the fee cap for the first 30 days and significantly reduced hourly rates, resulting in a combined total discount and fee/expense write-off of $479,555.50 for the Application Period, which is equivalent to a 49.8% total discount from Ankura's standard hourly rates.

---

[2] The invoices detailing the work of the Receiver and BakerHostetler, Ankura, and Nelsons were submitted to the SEC. Because the invoices contain highly confidential information and the public disclosure of that information would thwart the Receiver's efforts to recover Receivership Property from third parties, the invoices are not publicly submitted to the Court herewith. The Receiver, through his counsel, stands ready to respond to any inquiries the Court may have regarding the invoices and/or submit the invoices under seal to the Court.

20. The names, hours worked, hourly billing rates, and total fees of all Nelsons professionals who have billed time to this matter are listed in Nelsons' invoice, which has been submitted to and approved by the SEC. Nelsons has not incurred any travel costs.

21. The fees and expenses for the first thirty days of the Application Period are capped at $125,000 pursuant to paragraph 45 of the Receiver Order (ECF No. 31). The Receiver requests approval to allocate this cap between BakerHostetler, Ankura, and Nelsons as follows: $98,680 to BakerHostetler, $25,000 to Ankura, and $1,320 to Nelsons. The total actual fees and expenses, after application of the agreed hourly rate discounts, incurred for the first thirty days of the Application Period (January 21, 2021 through February 19, 2021) are summarized as follows:

**Receiver and Receiver's Counsel, BakerHostetler – Fees and Expenses for First Thirty Days**

| Hours | Fees at Standard Rates | Rate Discount | Total Fees | Expenses | Total Fees and Expenses | Discount / Fee Write-Off | Fee Application Amount |
|---|---|---|---|---|---|---|---|
| 844 | $527,732.50 | $123,312.11 | $404,420.39 | $67.11 | $404,487.50 | $305,807.50 | $98,680.00 |

**Receiver's Consultant, Ankura – Fees and Expenses for First Thirty Days**

| Hours | Fees at Standard Rates | Rate Discount | Total Fees | Expenses | Total Fees and Expenses | Discount / Fee Write-Off | Fee Application Amount |
|---|---|---|---|---|---|---|---|
| 476.2 | $298,681.00 | $93,266.00 | $205,415.00 | $1,097.00 | $206,512.00 | $181,512.00 | $25,000.00 |

**Receiver's Cayman Islands Counsel, Nelsons – Fees and Expenses for First Thirty Days**

| Hours | Total Fees | Expenses | Total Fees and Expenses | Discount / Fee Write-Off | Fee Application Amount |
|---|---|---|---|---|---|

7

Case 1:20-cv-10849-LGS   Document 66   Filed 07/15/21   Page 9 of 18

| | | | | | |
|---|---|---|---|---|---|
| 2 | $1,320.00 | 0 | $1,320.00 | 0 | $1,320.00 |

22. The total fees and expenses, after application of the agreed hourly rate discounts, incurred for the remainder of the Application Period (February 20, 2021 through March 31, 2021) are summarized as follows:

**Receiver and Receiver's Counsel, BakerHostetler – Fees and Expenses for the Remainder of Application Period**

| Hours | Fees at Standard Rates | Rate Discount | Total Fees | Expenses | Total Fees and Expenses | Fee Application Amount |
|---|---|---|---|---|---|---|
| 1,436 | $892,387.50 | $245,906.89 | $646,480.61 | $1,476.83 | $647,957.44 | $647,957.44 |

**Receiver's Consultant, Ankura – Fees and Expenses for the Remainder of Application Period**

| Hours | Fees at Standard Rates | Rate Discount | Total Fees | Expenses | Total Fees and Expenses | Fee Application Amount |
|---|---|---|---|---|---|---|
| 1,073.2 | $662,402.50 | $204,777.50 | $457,625.00 | $1,022.00 | $458,647.00 | $458,647.00 |

**Receiver's Cayman Islands Counsel, Nelsons – Fees and Expenses for Remainder of Application Period**

| Hours | Total Fees | Expenses | Total Fees and Expenses | Fee Application Amount |
|---|---|---|---|---|
| 7.2 | $4,800.00 | $244.80 | $5,044.80 | $5,044.80 |

8

23.     The Receiver asks the Court to approve payment to BakerHostetler, on an interim basis, in the amount of $98,680.00 for the first thirty days and $647,957.44 for the period of February 20, 2021 through March 31, 2021, for a total of $746,637.44. The Receiver further asks the Court to approve payment to Ankura, on an interim basis, in the amount of $25,000 for the first thirty days and $458,647.00 for the period February 20, 2021 through March 31, 2021, for a total of $483,647.00. The Receiver asks the Court to approve payment to Nelsons, on an interim basis, in the amount of $1,320.00 for the first thirty days and $5,044.80 for the period of February 20, 2021 through March 31, 2021, for a total of $6,364.80. The SEC has reviewed and approved this fee application and the invoices for BakerHostetler, Ankura, and Nelsons.

24.     The Receiver recognizes that the Court may exercise its discretion under the Receiver Order to holdback 20% of the fees and expenses for this initial fee application, with the total amounts held back during the course of the receivership to be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership. In the event the Court chooses to exercise this discretion, the Receiver asks the Court to approve payment to BakerHostetler totaling $597,309.95, payment to Ankura totaling $386,917.60, and payment to Nelsons totaling $5,091.84. In this event the amounts held back will be included in the final fee application submitted at the close of the receivership, consisting of BakerHostetler fees totaling $149,327.49, Ankura fees totaling $96,729.40, and Nelsons fees totaling $1,272.96.

25.     In accordance with the Billing Instructions, the Receiver and Receiver Team have separately categorized their services by task. The following table summarizes the respective number of hours incurred relative to each task category during the first thirty days:

**Receiver and Receiver's Counsel, BakerHostetler**

| Task Description | Hours Worked | Total Fees |
|---|---|---|
|  |  |  |

| Asset Analysis and Recovery | 744.8 | $357,128.39 |
| --- | --- | --- |
| Asset Disposition | 0 | 0 |
| Business Operations | 0 | 0 |
| Case Administration | 46.9 | $22,258.50 |
| Claims Administration | 0 | 0 |
| Employee Benefits/Pensions | 11.6 | $7,844.50 |
| Data Analysis | 40.7 | $17,189.00 |

**Receiver's Consultant, Ankura**

| Task Description | Hours Worked | Total Fees |
| --- | --- | --- |
| Forensic Accounting | 306.0 | $136,580.00 |
| Data Analysis | 153.9 | $59,917.50 |
| Status Reports | 10.1 | $5,352.50 |
| Case Administration | 6.2 | $3,565.00 |

**Receiver's Cayman Islands Counsel, Nelsons**

| Task Description | Hours Worked | Total Fees |
| --- | --- | --- |
| Asset Analysis and Recovery | 0 | 0 |
| Asset Disposition | 0 | 0 |
| Business Operations | 0 | 0 |
| Case Administration | 0 | 0 |
| Claims Administration | 2 | $1,320.00 |

10

| Employee Benefits/Pensions | 0 | 0 |

26.     The following table summarizes the respective number of hours incurred relative to each task category for the period of February 20, 2021 through March 31, 2021:

### Receiver and Receiver's Counsel, BakerHostetler

| Task Description | Hours Worked | Total Fees |
| --- | --- | --- |
| Asset Analysis and Recovery | 1,240.4 | $558,188.61 |
| Asset Disposition | 0 | 0 |
| Business Operations | 0 | 0 |
| Case Administration | 31.3 | $11,918.00 |
| Claims Administration | 0 | 0 |
| Employee Benefits/Pensions | 48.1 | $26,194.50 |
| Data Analysis | 116.2 | $50,179.50 |

### Receiver's Consultant, Ankura

| Task Description | Hours Worked | Total Fees |
| --- | --- | --- |
| Forensic Accounting | 750.2 | $328,455.00 |
| Data Analysis | 320.8 | $127,905.00 |
| Status Reports | 0 | $0 |
| Case Administration | 2.2 | $1,265.00 |

11

**Receiver's Cayman Islands Counsel, Nelsons**

| Task Description | Hours Worked | Total Fees |
| --- | --- | --- |
| Asset Analysis and Recovery | 0 | 0 |
| Asset Disposition | 0 | 0 |
| Business Operations | 0 | 0 |
| Case Administration | 0 | 0 |
| Claims Administration | 7.2 | $5,044.80 |
| Employee Benefits/Pensions | 0 | 0 |

27. This interim fee application is the first fee application that the Receiver has made. Accordingly, no prior orders have been entered as to any interim applications, no amounts have been allowed or disallowed, and no payments have been made.

**ARGUMENTS AND AUTHORITIES IN SUPPORT OF FEE APPLICATION**

28. This Court may award compensation for services rendered and costs expended in furtherance of the Receivership. *SEC v. Amerindo Inv. Advisors Inc.*, No. 05-cv-5231 (RJS), 2015 WL 13678841, at *1 (S.D.N.Y. Sept. 14, 2015) (quoting *SEC v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008)) ("A receiver appointed by a court who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred."); *see also SEC v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992) (if a receiver reasonably discharges his duties, the receiver is entitled to compensation; the circumstances surrounding the receivership, including the results, are relevant). "Like fee awards in other contexts, the reasonableness of a receiver's fee application is determined in the court's discretion, and is judged by, among other things, the reasonableness of the hourly rate charged and the reasonableness of the number of hours billed."

12

*Amerindo Inv. Advisors Inc.*, 2015 WL 13678841, at *1 (citations omitted). When determining the amount of professional fees to award, the Court should use the lodestar method, which multiplies the number of hours reasonably expended by the reasonable hourly rate. *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'").

29. When determining fees under the lodestar approach, courts apply the forum rule, according to which "courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017). A district court may adjust the lodestar when it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Millea*, 658 F.3d at 167 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010)). However, such adjustments occur only in "rare circumstances" as the lodestar figure already includes most, if not all, of the relevant factors constituting a reasonable fee. *Id.* (quoting *Perdue*, 559 U.S. at 553-54). The SEC's full approval of the Receiver's application "is a significant factor in determining the reasonableness of the compensation and reimbursement sought." *Amerindo Inv. Advisors Inc.*, 2015 WL 13678841, at *1. In support of this application, BakerHostetler submits the Certification of Teresa Goody Guillén addressing the reasonableness of the rates charged and hours billed by professionals at BakerHostetler.

30. BakerHostetler and Ankura have charged fees that are at or below the standard billing rates for the professionals working on this matter, and those fees are at or below customary fees charged by similar professionals in their respective markets. The BakerHostetler professionals working on this matter limited their fees and expenses to $98,680.00 for the first thirty days of the

13

Receivership, a discount of 75.6% against their combined fees and expenses for that period. Similarly, the Ankura professionals working on this matter limited their fees and expenses to $25,000 for the first thirty days of the Receivership, a discount of 87.9% against their combined fees and expenses for that period.

31. BakerHostetler and Ankura have billed all expenses at actual costs with no mark-up added, and they are not seeking overhead charges. The fees and expenses sought in this application are reasonable and were necessary for the proper administration of the duties of the Receiver.

32. As explained in the Initial Status Report and in the Second Status Report, the Receiver and his Receiver Team have performed tasks that have added value to the Receivership. Actions the Receiver and Receiver Team have taken include, but are not limited to, the following:

   a. Establishing a Receiver website (https://www.bakerlaw.com/qin-receivership) and email address for inquiries (Qin-Receivership@bakerlaw.com);

   b. Communicating with investors and other interested parties by telephone and email;

   c. Taking custody of various hardware devices and other data sources, and processing and analyzing approximately 451 GB of the data obtained;

   d. Obtaining hundreds of thousands of records from third parties, and processing and analyzing these documents, including approximately 15,000 lines of bank transactions;

   e. Conducting dozens of witness interviews;

   f. Identifying dozens of third parties through investigative procedures and sending Notice Letters to over 100 entities seeking information concerning potential claims to Receivership Property;

   g. Establishing a Receivership bank account;

     h.     Transferring funds from the Defendants' bank accounts to the Receivership bank account;

     i.     Liquidating certain cryptocurrency and transferring this value to the Receivership bank account;

     j.     Establishing a secure, insured cryptocurrency custody account for the Receivership and transferring certain cryptocurrencies to the account;

     k.     Establishing a secure, multi-signatory cryptocurrency wallet for the Receivership to custody cryptocurrency unsupported by the cryptocurrency custody account and transferring certain cryptocurrencies to the wallet;

     l.     Identifying certain Receivership property in the form of private investments, liquidating the investments and transferring this value to the Receivership bank account;

     m.     Claiming as Receivership Property and taking custody of certain cryptocurrencies obtained from various third parties identified through investigative procedures; and

     n.     Identifying significant additional Receivership Property claims through investigative procedures and engaging in negotiations with certain third parties for the recovery of this Receivership Property.

33. Each of these tasks was reasonably necessary to secure assets of the Receivership and to evaluate potential sources of other assets. Further, each task was performed efficiently by the Receiver or his Receiver Team at BakerHostetler, Ankura, and Nelsons. The SEC has reviewed and approved this fee application and the related invoices.

## **CONCLUSION**

34. For the reasons stated, the Receiver respectfully requests that this Court enter an order approving and authorizing, on an interim basis, the payment of fees and expenses totaling $746,637.44 to BakerHostetler, $483,647.00 to Ankura, and $6,364.80 to Nelsons. In the event the Court chooses to exercise its discretion to hold back 20% of these amounts, the Receiver asks the Court to approve payment to BakerHostetler totaling $597,309.95, payment to Ankura totaling

$386,917.60, and payment to Nelsons totaling $5,091.84, with the amounts held back to be included in the final fee application submitted at the close of the receivership.

**RECEIVER'S CERTIFICATION IN SUPPORT OF INITIAL FEE APPLICATION**

I, Teresa Goody Guillén, counsel to the Court-appointed Receiver in the above-captioned matter and in connection with the Initial Fee Application therein do hereby certify that:

(a) I have read the application;

(b) to the best of my knowledge, information, and belief formed after reasonable inquiry, the application and all fees and expenses in it are true and accurate and comply with the Billing Instructions;

(c) all fees contained in the application are reasonable, necessary, and commensurate with the skill and experience required for the activity performed;

(d) the amount for which reimbursement is sought does not include the amortization of the cost of any investment, equipment, or capital outlay; and

(e) the requests for reimbursement of services that were justifiably purchased or contracted for from third parties (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), include only the amount billed to BakerHostetler by the third-party vendor and paid by BakerHostetler to such vendor.

Dated: July 15, 2021

<div style="text-align: right;">*/s/ Teresa Goody Guillén*</div>

BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 1100
Washington, D.C. 20036
Tel.: (202) 861-1500
Facsimile: (202) 861-1783
Teresa Goody Guillén
tgoodyguillen@bakerlaw.com

45 Rockefeller Plaza
New York, NY 10111
Tel.: (212) 589-4200
Facsimile: (212) 589-4201
Marco Molina
mmolina@bakerlaw.com
Bari R. Nadworny
bnadworny@bakerlaw.com

*Attorneys for Receiver Robert A. Musiala, Jr., Court-appointed Receiver for Receivership Entities*