**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>                  Plaintiff,<br><br>        vs.<br><br>STEFAN QIN, VIRGIL TECHNOLOGIES LLC, MONTGOMERY TECHNOLOGIES LLC, VIRGIL QUANTITATIVE RESEARCH, LLC, VIRGIL CAPITAL LLC, and VQR PARTNERS LLC,<br><br>                  Defendants. | Case No.: 20-cv-10849 (LGS) |

# RECEIVER'S FIFTH STATUS REPORT

                              **BAKER & HOSTETLER LLP**
                              45 Rockefeller Plaza
                              New York, New York 10111
                              Telephone: (212) 589-4200
                              Facsimile: (212) 589-4201

                              *Attorneys for Receiver Robert A. Musiala, Jr.*

Future status reports shall clearly distinguish between the receivership activities performed to date and the activities performed during the relevant status period.

SO ORDERED.

Dated: February 3, 2022
       New York, New York

                              _____
                              **LORNA G. SCHOFIELD**
                              **UNITED STATES DISTRICT JUDGE**

Robert A. Musiala Jr., Esq., Court-appointed Receiver for the assets of Virgil Capital LLC, Montgomery Technologies, LLC, Virgil Technologies, LLC, Virgil Quantitative Research, LLC, and VQR Partners, LLC (collectively, the "**Receivership Entities**"), submits this Status Report (the "**Report**") in accordance with the Order of this Court entered on January 21, 2021 (the "**Receiver Order**"), and for the purpose of providing a status report on the Receiver's work and findings to date (the "**Investigation**").[1] The facts presented in this Report are preliminary and may be amended and changed as the Investigation continues. This Report includes the assessment of the Receiver's counsel as well as the consultants and advisers retained by the Receiver's counsel (the "**Receiver Team**").

I. INTRODUCTION

The Receivership Entities are a group of interrelated entities, all of which were either controlled or owned directly by Defendant Stefan Qin. Using his control and ownership of the Receivership Entities, Qin perpetrated a scheme to lure investors into two funds (the "**Funds**"), the Virgil Sigma Fund LP (the "**Sigma Fund**") and the VQR Multistrategy Fund LP (the "**VQR Fund**") that were marketed as using algorithmic trading strategies involving cryptocurrencies. Through this scheme, Qin exerted his control, particularly over the Sigma Fund, to steal investor proceeds to fund personal expenses and investments and paid investor redemptions by using funds from new investors to pay earlier investors. On December 22, 2020, the Securities and Exchange Commission (the "**SEC**") commenced an enforcement action (the "**Enforcement Action**") against Qin and the Receivership Entities. On February 4, 2021, Qin pleaded guilty to one count of

---

[1] Order Appointing Receiver ¶ 46, *SEC v. Qin*, No. 20-cv-10849 (LGS) (S.D.N.Y. Jan. 21, 2021), ECF No. 31. Unless otherwise indicated, documents referenced herein by ECF No. are in connection with the above-captioned matter.

securities fraud in connection with this scheme.[2] On September 15, 2021, Qin was sentenced to 90 months in prison.[3]

Simultaneous with the filing of its complaint, the SEC sought emergency relief, including a preliminary injunction, in the form of an order freezing the assets of the Receivership Defendants.[4] The SEC also sought the appointment of a receiver over those assets.[5] On January 21, 2021, the Court appointed Robert A. Musiala Jr., Esq. as the receiver (the "**Receiver**") for the estates of the Receivership Entities.[6] The Receiver Order requires that the Receiver file an initial status report to the Court within 30 days of the Receiver Order. In satisfaction of this requirement, the Receiver submitted the initial status report on February 22, 2021.[7] In addition, the Receiver Order requires that the Receiver file a status report within thirty days after the end of each calendar quarter. In satisfaction of this requirement, the Receiver submits this fifth status report.

## II.   SUMMARY OF RECEIVERSHIP ACTIVITIES AND FINDINGS TO DATE

### A.  Operating the Receivership Estate

1. Service Providers

As noted in the initial status report, the Receiver directed BakerHostetler to retain the forensic accounting firm of Ankura Consulting Group, LLC ("**Ankura**") as consultants to assist with the analysis of the financial condition and activities of the Receivership Entities. The Court

---

[2] Press Release 21-022, Department of Justice, U.S. Attorney's Office, Southern District of New York, *Founder Of $90 Million Cryptocurrency Hedge Fund Charged With Securities Fraud And Pleads Guilty In Federal Court* (Feb. 4, 2021), *available at* https://www.justice.gov/usao-sdny/pr/founder-90-million-cryptocurrency-hedge-fund-charged-securities-fraud-and-pleads-guilty.
[3] Press Release 21-239, Department of Justice, U.S. Attorney's Office, Southern District of New York, *Founder Of $90 Million Cryptocurrency Hedge Fund Sentenced To More Than Seven Years In Prison* (Sept. 15, 2021), *available at* https://www.justice.gov/usao-sdny/pr/founder-90-million-cryptocurrency-hedge-fund-sentenced-more-seven-years-prison.
[4] Plaintiff Securities and Exchange Commission's *Ex Parte* Emergency Motion for an Asset Freeze and Other Relief, ECF No. 4.
[5] Stipulation to the Entry of Order Appointing Receiver, ECF No. 29.
[6] Receiver Order ¶¶ 2-3.
[7] Receiver's Initial Status Report, ECF No. 46.

approved the retention of Ankura on February 4, 2021.[8] The Receiver has also retained the Cayman Islands law firm of Nelsons to provide legal advice with respect to Cayman Islands law and winding up petitions filed for the Sigma Fund and VQR Fund. The Court approved the retention of Nelsons on February 17, 2021.[9]

As discussed further below, the Receiver Team has identified and taken custody of certain cryptocurrency assets, some of which trade in inefficient or illiquid markets. The Receiver is currently in the process of identifying an appropriate vendor to assist in the orderly liquidation of these assets. Additionally, the Receiver Team has completed a competitive procurement process and has selected two blockchain analytics vendors to assist in identifying additional Receivership Property in the form of cryptocurrencies. The Receiver expects to move for Court approval of these vendors as appropriate.

2. Communications with Investors and Creditors

The Receiver Team continues to receive correspondence from purported investors and creditors and is communicating with those parties. The Receiver Team continues to maintain a website (https://www.bakerlaw.com/qin-receivership) through which investors and claimants may access information relating to the status of the Enforcement Action and the Receivership. The Receiver Team also continues to maintain an email address for investor inquiries (Qin-Receivership@bakerlaw.com).

3. Human Resources Administration for VQR Employees

The Receiver Team has conducted interviews of former employees of the Receivership Entities and has gathered relevant information to identify Receivership Property and wind down activities of the Receivership Entities. The Receiver Team has resolved all known benefits and

---

[8] Order Authorizing Receiver to Retain Ankura Consulting Group, LLC, ECF No. 37.
[9] Order Authorizing Receiver to Retain Nelsons Attorneys-at-Law, Ltd, ECF No. 43.

immigration issues regarding employees. The Receiver Team will continue to work with the payroll and benefits administrator of the VQR Fund to handle any remaining employment and compensation issues and other employment-related issues that may arise in accordance with the contractual and legal obligations of the VQR Fund.

4. Employee Claims

The Receiver is reviewing claims by former employees who believe they are owed certain amounts pursuant to their employment agreements with the Receivership Entities. The Receiver Team is working diligently to verify and quantify these employee claims.

5. Creditor Claims

The Receiver Team is in the process of evaluating the investor contributions made to the Receivership Entities based on information received from third parties, internal records obtained from the Receivership Entities, and information received from persons who have contacted the Receiver. The Receiver has not yet determined the exact number of investor claims.

The Receiver Team is working on formulating a creditor claims process. The Receiver expects for this process to include procedures for providing notice to potential claimants, receiving and reviewing claims, recommending to the Court payment or denial of claims, and disposing of claims. The Receiver Team is drafting a motion that it anticipates filing soon for the Court's consideration to begin the claims process, to include setting a bar date for claims against the Receivership Estate and for approval of a claim form and notice procedures for claimants. The Receiver has not disbursed any funds to any claimants. The Receiver has paid certain creditor expenses approved by the Court.

### B. Investigations

1. Witness Interviews

The Receiver Team has to date conducted approximately 70 interviews in total, and has interviewed approximately 39 witnesses, some of whom have retained legal counsel, in connection with the Receiver's Investigation. These include interviews with former employees, officers, and directors of the various Receivership Entities as well as business vendors and other business contacts of the various Receivership Entities. The Receiver Team will continue to conduct interviews with witnesses and their counsel (if applicable) to assist in the Receiver's Investigation.

2. Interviews of Stefan Qin

The Receiver Team has conducted 22 interviews with Stefan Qin, in coordination with Qin's counsel, and has completed its scheduled interviews with Stefan Qin. The Receiver may arrange additional interviews with Stefan Qin as needed to gain information about the Receivership Entities' business operations and the existence and location of potential Receivership Property.

3. Forensic Data Capture and Analysis

The Receiver Team continues to coordinate with certain third parties, as well as the SEC and the U.S. Attorney's Office for the Southern District of New York, to obtain various records related to the Receivership Entities and to perform forensic investigation and analysis of the records. To date the Receiver Team has obtained and processed approximately 1.85 TB of data. The Receiver Team is working to analyze these records and data to inform the Receiver's Investigation and asset recovery efforts. Through obtaining and analyzing these records and data, the Receiver Team has to date identified over 1,000 cryptocurrency public keys and over 200 cryptocurrency exchange accounts relevant to the Investigation and has located and retrieved significant Receivership Property. The Receiver Team intends to continue to locate, obtain, and

analyze relevant data and documentation, pursuant to both voluntary requests and subpoenas, to assist the Receiver in identifying and recovering assets.

### C. Identifying and Securing Receivership Property

1. Notice Letters and Voluntary Information Requests

The Receiver Team has been in contact with over 250 U.S. and foreign based financial institutions, and has served these entities with Notice Letters and Receiver Orders to freeze any Receivership Property in their possession and to serve on the Receiver a certification or statement setting forth a description of any assets traceable to a Receivership Entity in their possession as of the date of the receipt of the Receiver Order. The Receiver Team has obtained and continues to seek additional information from these entities, pursuant to voluntary information requests and subpoenas, to assist in the Receiver's Investigation. In many circumstances, the Receiver Team has supplemented the initial Notice Letters with new information gained during the ongoing Investigation. In furtherance of these requests, the Receiver Team filed and the Court ordered a Stipulation and Order governing the production and exchange of any confidential information subject to these requests to appropriately protect such confidential information and facilitate the provision of information.[10]

2. Subpoenas

The Receiver Team has served approximately 56 subpoenas on various third parties to obtain additional information to assist in identifying and recovering Receivership Property. The Receiver Team will continue to issue subpoenas, as appropriate, to third parties that may be in possession of information relevant to the Receiver's Investigation.

---

[10] Stipulation and Order Governing the Production and Exchange of Confidential Information, ECF No. 48.

3. Receivership Bank Account and Cryptocurrency Custody Account

The Receiver has opened a bank account in the name of the Receivership for consolidation and custody of Receivership Property in the form of U.S. dollars. The Receiver has used the funds in this account to pay certain Receivership expenses. The Receiver has also established an insured institutional cryptocurrency custody account with a U.S. based firm for the consolidation and secure custody of Receivership Property in the form of cryptocurrencies.

4. Blockchain Analytics Vendors

The Receiver Team met with seven different providers of proprietary blockchain analytics tools and received competitive proposals from these vendors to assist in investigations targeted at identifying the location of certain cryptocurrency assets that are believed to be Receivership Property. The Receiver has selected two vendors and expects to seek Court approval of these vendors. The assistance of blockchain analytics vendors will allow the Receiver Team to begin a more thorough analysis of blockchain transactional data associated with certain cryptocurrency public keys that the Receiver has obtained and expects to obtain through his Investigation.

5. Physical Assets

The Receiver Team has conducted a review and inventory of personal assets that were in Qin's custody and has taken physical custody of certain assets and created an accounting of Qin's assets. The Receiver Team is continuing its investigation to locate any additional personal property owned by Qin.

## III. CLAIMS AGAINST THIRD PARTIES

The Receiver Team continues to investigate potential claims held by the Receiver against third parties. The Receiver Team has been in contact with over 250 third parties located in the U.S. and various foreign jurisdictions to identify potential claims for the recovery of Receivership

Property. The Receiver Team is currently engaged in discussions with certain third parties related to potential claims involving assets of substantial value that the Receiver believes are Receivership Property. The Receiver continues his Investigation to quantify these claims, evaluate the legal basis for recovery, and assess the likelihood of recovery. Wherever possible the Receiver will seek to recover against these third parties for the value of the claims without initiating litigation. However, the Receiver is prepared to initiate litigation to resolve claims against third parties if necessary. Before initiating any litigation the Receiver will seek the Court's approval.

In the period covered by this status report, the Receiver Team has successfully asserted, negotiated, and settled claims to significant Receivership Property in the form of both U.S. dollars and cryptocurrencies. The Receiver has taken custody of some of these assets and is in the process of taking custody of the remaining assets. The Receiver Team continues its Investigation to identify additional third parties who may be in possession of Receivership Property. The Receiver believes there is a reasonable likelihood that additional claims for the recovery of Receivership Property with substantial value may be identified through the ongoing Investigation efforts.

IV.   ASSETS AND LIABILITIES

The Receiver has established a bank account to secure assets in the form of U.S. dollars. During the time period covered by this fifth status report, the Receivership bank account has received multiple inbound deposits of funds representing Receivership Property. These funds were identified through the Receiver Team's Investigation and have been received from various third parties through negotiations with those third parties, including in some instances negotiations with legal counsel.

The Receiver has also established an insured institutional cryptocurrency custody account with a U.S.-based firm to provide safe custody of certain cryptocurrency assets, as well as a multi-

signature cryptocurrency wallet to custody certain cryptocurrency assets which are not supported by the Receiver's institutional custody account. The market value of the cryptocurrency assets in the possession of the Receiver is likely to fluctuate because cryptocurrency prices are highly volatile, and certain cryptocurrency markets are inefficient and illiquid. During the time period covered by this fifth status report, the Receivership institutional cryptocurrency custody account and multi-signature account have received dozens of inbound deposits of cryptocurrency funds representing Receivership Property. These cryptocurrency funds were identified through the Receiver Team's Investigation and have been received from various third parties through negotiations with those third parties, including in some instances negotiations with legal counsel.

      The Receiver Order grants the Receiver authority to dispose of Receivership Property in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate.[11] Pursuant to this authority, the Receiver has established and has continued to implement a process for the orderly and secure conversion of cryptocurrency assets in his possession into U.S. dollars to be received in the Receivership bank account. This process has included the liquidation of certain cryptocurrencies that had been held at a cryptocurrency exchange on behalf of the Receivership, as well as the liquidation of cryptocurrencies previously received in the Receivership's institutional cryptocurrency custody account. The Receiver has established these liquidation procedures in a manner deemed most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

      The Receiver Team continues its Investigation to identify all available asset sources. The Receiver Team continues to assemble data from dozens of bank accounts into a workable database

---

[11] Receiver Order ¶ 30.

that is being used to assess the sources and uses of funds into and out of the various Receivership Entities and provides a basis for potential actions for the recovery of Receivership Property. The Receiver Team has also obtained and is analyzing internal account information from certain cryptocurrency exchanges and continues to work with various cryptocurrency exchanges to obtain additional internal account records relevant to the Investigation. The Receiver Team is in the process of identifying additional cryptocurrency assets from other sources and is working to obtain relevant information from certain third parties that may have had dealings with Qin and/or the Receivership Entities. Additionally, the Receiver Team has taken a physical inventory of items in Qin's personal residence and has taken custody of certain items that are believed to be of value for eventual liquidation.

The Receiver Team continues to analyze investor data for both the Sigma and VQR Funds, which had limited books and records. Neither Fund had been audited and neither had any level of third-party accounting verification in the months leading up to the appointment of the Receiver. The Receiver Team continues to analyze voluminous documents and data obtained to evaluate investor and investment activity, investigate the use of funds from 2017 through 2020, and determine if any funds are recoverable for the Receivership Entities.

## V.    ADMINISTRATIVE EXPENSES

The Receiver has incurred expenses for legal services from BakerHostetler, forensic accounting and consulting services from Ankura, and legal services from Nelsons, the Receiver's Cayman Islands counsel. On October 4, 2021, the Court entered an Order granting in part the Receiver's Certified Initial Fee Application.[12] On November 9, 2021, the Court entered an Order granting the remainder of the Receiver's Resubmitted Certified Initial Fee Application and

---

[12] Order Granting in Part Receiver's Certified Initial Fee Application, ECF No. 91.

granting the Receiver's Certified Second Fee Application.[13] On January 20, 2022, the Court entered an Order granting the Receiver's Certified Third Fee Application.[14] Payments have been made pursuant to these Orders. The Receiver provided details about the fees for BakerHostetler, Ankura, and Nelsons in his first Quarterly Fee Application, which was filed with the Court on July 15, 2021;[15] his second Quarterly Fee Application, which was filed with the Court on October 15, 2021;[16] and his third Quarterly Fee Application, which was filed with the Court on December 30, 2021.[17] The Receiver will provide further details about the fees for BakerHostetler, Ankura, and Nelsons in his fourth Quarterly Fee Application, which will be filed with the Court at a later date and which will address fees for the period covered by this fifth status report.

The Receiver has incurred expenses related to winding down the relationships with certain vendors used by the Receivership Entities. The Receiver has paid certain vendor expenses, and expects to pay additional vendor expenses, using funds from the Receiver's bank account. Pursuant to the Court's Order on July 26, 2021, the Receiver returned certain funds to Caceis Bank Luxembourg Branch that had been erroneously transmitted to the Receivership Entities, less the cost of fees expended by the Receiver's forensic and legal teams in investigating and resolving the matter.[18] The Receiver has also incurred minimal expenses related to re-establishing access to certain data repositories formerly used by the Receivership Entities that the Receiver believes may contain data relevant to the Investigation. Additionally, the Receiver has incurred a minimal amount of standard transaction fees (sometimes referred to as "gas fees") associated with transferring cryptocurrency from Receivership Entity wallets to wallets controlled by the Receiver.

---

[13] Order Granting the Receiver's Resubmitted Certified Initial Fee Application and the Receiver's Certified Second Fee Application, ECF No. 101.
[14] Order Granting the Receiver's Certified Third Fee Application, ECF No. 117.
[15] Receiver's Certified Initial Fee Application, ECF No. 66.
[16] Receiver's Certified Second Fee Application, ECF No. 93.
[17] Receiver's Certified Third Fee Application, ECF No. 113.
[18] Order Granting Receiver Permission to Return Funds to Caceis Bank Luxembourg Branch, ECF No. 70.

These fees are mandatory payments to the owners of the computers that devote computer processing power, and incur associated electricity and other costs, to perform the computational work to validate transactions on a public blockchain. These fees are automatically collected from the cryptocurrency transferred at the time of the transaction.

## VI.  PROPOSED PLAN FOR ADMINISTERING THE RECEIVERSHIP

The Receiver is still identifying and securing Receivership Property on behalf of the Receivership Estate. The Receiver believes that there is additional Receivership Property that may be recoverable for the Receivership Estate. However, further investigation is needed to identify any additional Receivership Property, and litigation may be necessary to recover certain Receivership Property.

The Receiver Team continues its work to validate the contributions and investments made to the Receivership Entities. Based on the information identified to date, the Receiver believes that substantial effort is still required to validate the contributions and investments and accurately determine what is owed to whom. The Receiver is cooperating with the SEC and the U.S. Attorney's Office for the Southern District of New York as part of these efforts.

The Receiver recommends that he be allowed to continue his Investigation to locate and secure additional Receivership Property and validate the contributions and investments made to the Receivership Entities. In accordance with the Receiver Order, the Receiver will submit another status update within thirty days after the end of the first calendar quarter.[19]

---

[19] Receiver Order ¶ 46.

Dated:  January 31, 2022                                  Respectfully submitted,

/s/ Teresa Goody Guillén
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 1100
Washington, D.C. 20036
Tel.: (202) 861-1500
Facsimile: (202) 861-1783
Teresa Goody Guillén
tgoodyguillen@bakerlaw.com

45 Rockefeller Plaza
New York, NY 10111
Tel.: (212) 589-4200
Facsimile: (212) 589-4201
Marco Molina
mmolina@bakerlaw.com
Bari R. Nadworny
bnadworny@bakerlaw.com

*Attorneys for Receiver Robert A. Musiala, Jr.*