**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>vs.<br><br>STEFAN QIN, VIRGIL TECHNOLOGIES LLC, MONTGOMERY TECHNOLOGIES LLC, VIRGIL QUANTITATIVE RESEARCH, LLC, VIRGIL CAPITAL LLC, and VQR PARTNERS LLC,<br><br>    Defendants. | Case No.: 20-cv-10849 (LGS) |

**MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S MOTION FOR AN ORDER**
<u>**APPROVING THE RETENTION OF CIPHERTRACE AND ELLIPTIC**</u>

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Receiver Robert A. Musiala, Jr.*

Robert A. Musiala Jr., as Court-appointed Receiver in the above-captioned action, by and through his undersigned counsel, respectfully submits this memorandum of law in support of the Receiver's Motion for an Order Approving the Retention of two blockchain analytics vendors, CipherTrace, Inc. and Elliptic Inc. (the "Motion"), as vendors to facilitate the investigation of complex cryptocurrency transactions.  The Declaration of Bari R. Nadworny is submitted in support of the Motion ("Nadworny Decl.").

## BACKGROUND AND PROCEDURAL HISTORY

On December 22, 2020, the U.S. Securities and Exchange Commission ("SEC") filed a complaint in the United States District Court for the Southern District of New York against Virgil Technologies LLC, Montgomery Technologies LLC, Virgil Quantitative Research, LLC, Virgil Capital LLC, VQR Partners LLC (collectively, "Receivership Entities" or "Entity Defendants") and Stefan Qin (collectively, "Defendants"), captioned *SEC v. Qin*, No. 20-cv-10849 (LGS) (S.D.N.Y.) ("*SEC v. Qin*").  The Receivership Entities are a group of interrelated entities, all of which were either controlled or owned directly by Defendant Stefan Qin.  Using his control and ownership of the Receivership Entities, Qin perpetrated a scheme to lure investors into two funds (the "Funds"), the Virgil Sigma Fund LP (the "Sigma Fund") and the VQR Multistrategy Fund LP, which were marketed as using algorithmic trading strategies involving cryptocurrencies.  Through this scheme, Qin exerted his control, particularly over the Sigma Fund, to steal investor proceeds to fund personal expenses and investments and paid investor redemptions by using funds from new investors to pay earlier investors.  On February 4, 2021, Qin pleaded guilty to one count

of securities fraud in connection with this scheme.[1]  On September 15, 2021, Qin was sentenced to 90 months in prison.[2]

On January 21, 2021, upon stipulation of the parties, the Court entered an order (the "Receiver Order") which, *inter alia*, appointed the Receiver for the purposes of marshaling and preserving all assets of the Entity Defendants that: "(a) are attributable to funds derived from investors, including without limitation any assets associated with either Virgil Sigma Fund, LP or VQR Multistrategy Fund LP; (b) are held in constructive trust for the Entity Defendants; (c) were fraudulently transferred by the Entity Defendants, or by any of their owned or controlled subsidiaries, or by any person acting on behalf of, or who controlled any of, the Entity Defendants; and/or (d) may otherwise be includable as assets of the estates of the Entity Defendants (collectively, the "Recoverable Assets")."[3]

The Receiver Order empowers the Receiver:

> A. To use reasonable efforts to determine the nature, location, and value of all property interests of the Receivership Entities and all other Recoverable Assets, including, but not limited to, monies, funds, securities, digital assets, credits, effects, goods, chattels, lands, premises, leases, claims, rights, and other assets, together with all rents, profits, dividends, interest, or other income attributable thereto, of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estates");
>
> B. To take custody, control, and possession of all Receivership Property and records relevant thereto from the Receivership Entities; to sue for and collect, recover, receive, and take into possession from third parties all Receivership Property and records relevant thereto;

---

[1] Press Release 21-022, Department of Justice, U.S. Attorney's Office, Southern District of New York, *Founder Of $90 Million Cryptocurrency Hedge Fund Charged With Securities Fraud And Pleads Guilty In Federal Court* (Feb. 4, 2021), *available at* https://www.justice.gov/usao-sdny/pr/founder-90-million-cryptocurrency-hedge-fund-charged-securities-fraud-and-pleads-guilty.
[2] Press Release 21-239, Department of Justice, U.S. Attorney's Office, Southern District of New York, *Founder Of $90 Million Cryptocurrency Hedge Fund Sentenced To More Than Seven Years In Prison* (Sept. 15, 2021), *available at* https://www.justice.gov/usao-sdny/pr/founder-90-million-cryptocurrency-hedge-fund-sentenced-more-seven-years-prison.
[3] Order Appointing Receiver, *SEC v. Qin*, No. 20-cv-10849 (LGS) (S.D.N.Y. Jan. 21, 2021), ECF No. 31.

C. To manage, control, operate, and maintain the Receivership Estates and hold in his possession, custody, and control all Receivership Property, pending further Order of this Court;

D. To use Receivership Property for the benefit of the Receivership Estates, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

E. To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, managing members, trustees, and agents of the Receivership Entities;

F. To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, investigators, technology vendors, brokers, traders, or auctioneers;

G. To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

H. To issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure, concerning any subject matter within the powers and duties granted by this Order;

I. To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

J. To pursue, resist, and defend all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Estates; and

K. To take such other action as may be approved by this Court.[4]

The Receiver Order further authorizes and empowers the Receiver "to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all Recoverable Assets and other Receivership Property" and directs the Receiver to file a status report with the Court within thirty days of the entry of the Receiver Order.[5] Within thirty days after the end of each calendar quarter,

---

[4] *Id.* ¶ 7.
[5] *Id.* ¶¶ 44-45.

3

beginning on April 30, 2021, the Receiver must also file "a full report and accounting of the Receivership Estates (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates."[6]  The Receiver Order authorizes the Receiver, after first obtaining an Order of the Court, to solicit agents acting within the scope of such agency ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in the Receiver Order.[7]

Because of his ongoing investigation into the fraudulent activities of Defendant Qin and the Entity Defendants, the Receiver has become aware of numerous cryptocurrency wallets that, when aggregated, appear to contain significant amounts of cryptocurrency and/or digital assets that the Receiver believes may belong to the Receivership Estates.  The Receiver must undertake a blockchain analytics investigation to determine whether the cryptocurrency is Receivership Property and support efforts to obtain custody of the assets.  The Receiver requires specialized analytics tools and experts to conduct the requisite blockchain analytics investigation.  Accordingly, the Receiver issued a request for proposals from seven (7) blockchain analytics firms, and, based on technical expertise and cost, has selected two (2) vendors to assist the Receiver in tracing and recovering cryptocurrency.

## ARGUMENT

As set forth below, the services of CipherTrace, Inc. ("CipherTrace") and Elliptic Inc. ("Elliptic") (collectively, "Blockchain Analytics Vendors") are necessary and essential to enable the Receiver to execute faithfully his duties under the Receiver Order and maximize asset recovery.

---

[6] *Id.* ¶ 46.
[7] *Id.* ¶¶ 50-51.

Additionally, the Receiver's authority to engage the services of such vendors is authorized under the Receiver Order.[8] The Receiver, therefore, proposes to retain and employ CipherTrace and Elliptic as vendors to assist in tracing, preserving, identifying, and obtaining custody of cryptocurrency and digital assets that belong to the Receivership Estates, and any related matters as directed by the Receiver. The SEC has consented to the relief requested herein.

The Receiver is an officer of the court and has the duty to preserve and protect receivership property. *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 98 (2d Cir. 1988). "As a result, [his] authority is wholly determined by the order of the appointing court." *Id.*; *see also Sec. Pac. Mortg. & Real Estate Serv., Inc. v. Republic of Philippines*, 962 F.2d 204, 211 (2d Cir. 1992) (stating that the receiver may perform "acts expressly authorized by the appointing court" in the appointment order); *SEC v. Platinum Mgmt. (NY) LLC*, 16-cv-6848 (BMC), 2018 WL 4623012, at *4 (E.D.N.Y. Sept. 26, 2018) (stating that the receiver is authorized to retain professionals to assist him pursuant to appointment order and court approval).

The Receiver Order expressly allows the Receiver to solicit Retained Personnel with the Court's permission to assist him in carrying out his duties and responsibilities under the Receiver Order.[9] Specifically, the Receiver Order authorizes the Receiver:

> To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, investigators, technology vendors, brokers, traders, or auctioneers.[10]

Here, the Receiver has determined that it will be necessary to engage CipherTrace and Elliptic to assist him in the discharge of his duties under the Receiver Order and to trace

---

[8] *Id.* ¶ 7.F.
[9] *Id.* ¶¶ 50-51.
[10] *Id.* ¶ 7.F.

cryptocurrency and digital assets that may belong to the Receivership Estates. Decentralized cryptocurrencies and digital assets are difficult to trace and vulnerable to obfuscation. For example, cryptocurrency asset transfers that occur on the blockchain are generally pseudonymous, which makes tracing and recovering these assets significantly more time consuming and challenging than the tracing and recovery of traditional financial assets—especially when cryptocurrency assets are stored in unhosted self-custodied wallets.[11] Unlike traditional financial asset recovery, in which records may be subpoenaed and assets frozen, cryptocurrency assets can be stored in unhosted wallets and only the individual(s) controlling such wallets have access to the records and assets associated with and contained therein. Therefore, the Receiver must conduct an investigation into the location of cryptocurrency and digital assets related to the Receivership Entities to preserve the ability to locate and obtain custody of the digital assets.

The Receiver seeks to retain the Blockchain Analytics Vendors, specifically, because of their knowledge and expertise in tracing, preserving, identifying, and obtaining custody of cryptocurrency assets. Blockchain analytics vendors in general use different proprietary methods and algorithms to trace and analyze blockchain data; consequently, the use of two or more blockchain analytics vendors often significantly enhances the quality of investigative findings and improves the likelihood that assets will be recoverable. CipherTrace is a leading provider of blockchain analytics services and has been providing blockchain data and enhanced blockchain intelligence since 2015. It received initial funding from the Department of Homeland Security

---

[11] Unhosted self-custodied wallets function as digital storage for cryptocurrencies, whereby only permissioned individuals can access funds protected by such wallets, which are generally not managed by a third-party intermediary. Rather, unhosted wallets are typically managed by one or more individuals, typically non-entities, that have a private key (a form of cryptography) controlling the cryptocurrency wallet and any transactions that occur from and to the wallet. Parties without knowledge of an unhosted wallet's private keys have no ability to access the funds. Therefore, investigating and identifying individuals who control access to certain unhosted wallets and corresponding private keys is paramount to the Receiver's ability to investigate and take custody of assets secured within such wallets.

Science & Technology Directorate and the Defense Advanced Research Projects Agency. Elliptic is a global leader in blockchain analytics and monitoring solutions and has been providing cryptocurrency analytics software and services since 2013. It provides a comprehensive suite of tools and investigatory services covering blockchain analytics for Bitcoin, Ethereum, and other protocol tokens subject to the Receiver's investigation and regularly provides such services to national and international law enforcement and intelligence agencies for the purposes of facilitating investigations into dark and illicit marketplaces. These tools provide the ability to visualize complex blockchain data, allowing for efficient exploratory and investigative analysis of such data that would otherwise require significantly more time and resources than are available. After an in-depth evaluation of seven (7) blockchain analytics vendors and the benefits of their respective tools to the instant investigation, with significant weight given to the respective costs, the Receiver concluded that CipherTrace and Elliptic are currently the best fit for the investigations, as the needs of such investigations are currently known. The Blockchain Analytics Vendors have indicated a willingness to act on the Receiver's behalf to render the foregoing professional services. The Receiver submits that the Blockchain Analytics Vendors' provision of professional services to the Receiver is permissible under the Receiver Order and is in the best interest of the Receivership Estates. To the best of the Receiver's knowledge, no conflict of interest exists between the Receiver, the Blockchain Analytics Vendors, and the Receivership Estates. To the best of the Receiver's knowledge, the Blockchain Analytics Vendors and their principals and employees: (a) do not hold or represent any interest adverse to the Receiver, the Defendants, their creditors, or the Receivership Estates; (b) have no connection with the Defendants, their creditors, any other party in interest, their respective attorneys and accounts, or any judge in the Southern District of New York; (c) are disinterested persons as that term is defined

in 11 U.S.C. § 101(14) and used in 11 U.S.C. § 327(a); and (d) hold no pre-receivership claims against the Receivership Estates. Although the Blockchain Analytics Vendors may have contracts with the SEC related to other matters, investigations, or actions, the Blockchain Analytics Vendors have not been engaged by the SEC to undertake any investigative work on the SEC's behalf in relation to *SEC v. Qin*. The Blockchain Analytics Vendors have no knowledge of whether the SEC has used their software, under general software contracts, as part of the SEC's investigation in *SEC v. Qin* and have no knowledge of, or access to, any information that the SEC may have obtained in this regard using the SEC's own or other third-party investigators.

The Blockchain Analytics Vendors propose to be compensated at the discounted rates listed below. The Blockchain Analytics Vendors agreed to the proposed discounted rates given the public benefit nature of the proceedings. Initially, the Receiver expects to require the services of the Blockchain Analytics Vendors for a period of three months per vendor at the monthly subscription fees listed below ("Initial Services"). As part of the Initial Services, the Receiver also expects to require a training fee and ten (10) hours of Forensic Services fees from CipherTrace, as listed below. As noted below, the total cost of the Initial Services will be $██████ according to the agreements the Receiver has reached with the Blockchain Analytics Vendors.

The Blockchain Analytics Vendors have each taken significant actions to lower their fee structures, create alternatives to their standard offerings, and alter their terms of service in order to accommodate the Receiver's unique needs for the investigation. The Blockchain Analytics Vendors have each taken these actions to further the public benefit nature of the investigation. For these reasons, and due to the unique capabilities and benefits to the investigation that the Blockchain Analytics Vendors will offer, the Receiver respectfully requests the Court to grant approval to the Receiver to pay for the Initial Services, as outlined below, as and when the invoices

8

for the Initial Services accrue, and without requiring the Receiver to submit the invoices for the Initial Services to the Court for additional approval in the Receiver's quarterly fee application.[12] The Receiver respectfully requests the Court to grant this approval in accordance with the Court's authority provided by paragraph 7.K of the Receiver Order, under which the Court may authorize the Receiver "[t]o take such other action as may be approved by this Court."

By granting this Motion, the Court grants approval to the Receiver to pay for the Initial Services, as outlined below, upon receipt of the Blockchain Analytics Vendors' invoices, and without submitting the Blockchain Analytics Vendors' invoices for the Initial Services to the Court for additional approval as part of the Receiver's quarterly fee application.[13]  In the event that the Receiver requires additional services from the Blockchain Analytics Vendors beyond the Initial Services, the Receiver will submit the invoices for such additional services in his quarterly fee application for the period in which such services are provided.  For all services provided by the Blockchain Analytics Vendors beyond the Initial Services, applications for compensation to the Blockchain Analytics Vendors will be filed with this Court pursuant to the Receiver Order, the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission," and all applicable statutes and rules.

---

[12] *See* Receiver Order ¶¶ 50-51.
[13] *See* Receiver Order ¶¶ 50-51.

**Blockchain Analytics Vendors – Initial Services**

| CipherTrace | | | | |
|---|---|---|---|---|
| **Service** | **Discounted Rate** | **Quantity** | **Sub-Total (monthly cost)** | **Total Cost (3 months)** |
| Monthly Subscription Fee | $■■■/month for 1st user; $■■/month per additional user | 6 users | $■■■■ | $■■■■ |
| One-time Training Fee | $■■/user | 8 users | $■■■ | $■■■ |
| Forensic Services | $■■/hour | 10 hours | $■■■ | $■■■ |
| **TOTAL** | | | | $■■■■ |

| Elliptic | | | | |
|---|---|---|---|---|
| **Service** | **Discounted Rate** | **Quantity** | **Sub-Total (monthly cost)** | **Total Cost (3 months)** |
| Monthly Subscription Fee | $■■■/user | 3 | $■■■ | $■■■ |
| **TOTAL** | | | | $■■■ |

| | |
|---|---|
| **INITIAL SERVICES GRAND TOTAL** | $■■■■ |

**Blockchain Analytics Vendors – Rates for Additional Services**

| Vendor | Service | Quantity |
|---|---|---|
| **CipherTrace** | Monthly Subscription | $▮▮▮▮▮▮/month for 1st user; $▮▮▮▮/month per additional user |
| | Forensic Services | $▮▮▮▮/hour |
| | Expert Witness Consulting | $▮▮▮▮/hour |
| **Elliptic** | Monthly Subscription | $▮▮▮▮▮/user (3 user minimum) |

The Receiver respectfully requests that this Motion be considered on an expedited basis because expedient retention of the Blockchain Analytics Vendors in this matter is required to preserve the maximum amount of, and limit the dissipation of, digital assets and will further enable the Receiver to discharge his duties in a timely fashion in accordance with the Receiver Order and maximize the recovery of assets to ultimately be returned to injured investors.

## **CONCLUSION**

The Receiver respectfully requests that the Court enter an order authorizing the Receiver to employ the Blockchain Analytics Vendors for the purposes described herein and granting the Receiver such other and further relief as is just and proper.

Dated:   February 17, 2022
         New York, New York

*/s/ Teresa Goody Guillén*
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 1100
Washington, D.C. 20036
Tel.: (202) 861-1500
Facsimile: (202) 861-1783
Teresa Goody Guillén
tgoodyguillen@bakerlaw.com

45 Rockefeller Plaza
New York, NY 10111
Tel.: (212) 589-4200
Facsimile: (212) 589-4201
Marco Molina
mmolina@bakerlaw.com
Bari R. Nadworny
bnadworny@bakerlaw.com

*Attorneys for Receiver Robert A. Musiala, Jr.*