**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>STEFAN QIN, VIRGIL TECHNOLOGIES LLC, MONTGOMERY TECHNOLOGIES LLC, VIRGIL QUANTITATIVE RESEARCH, LLC, VIRGIL CAPITAL LLC, and VQR PARTNERS LLC,<br><br>Defendants. | Case No.: 20-cv-10849 (LGS) |

## RECEIVER'S CERTIFIED SIXTH FEE APPLICATION

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Receiver Robert A. Musiala, Jr.*
*Court-appointed Receiver for Receivership Entities*

Pursuant to paragraphs 1-3 of this Court's Order Appointing Receiver in this case (ECF No. 31) (the "Receiver Order"), Robert A. Musiala Jr., Esq., the Court-appointed Receiver over Defendants Virgil Capital LLC, Montgomery Technologies, LLC, Virgil Technologies, LLC, Virgil Quantitative Research, LLC, and VQR Partners, LLC, including without limitation the assets of Virgil Sigma Fund, LP and VQR Multistrategy Fund, LP (collectively, "Receivership Entities"), files this certified sixth fee application.

## SUMMARY OF FEE REQUEST

1. This sixth fee application covers April 1, 2022 to June 30, 2022 (the "Application Period"), has been reviewed and approved by the U.S. Securities and Exchange Commission ("SEC"), and is submitted in accordance with the Receiver Order, the local rules of this Court, and the Billing Instructions for Receivers in Civil Actions Commenced by the United States Securities and Exchange Commission (the "Billing Instructions").

2. The Receiver respectfully requests that this Court enter an order approving and authorizing, on an interim basis, the payment of fees and expenses for the Application Period totaling $694,591.67 to Baker & Hostetler LLP ("BakerHostetler"), $370,877.00 to Ankura Consulting Group, LLC ("Ankura"), $10,450.00 to the Law Office of Dennis O. Cohen, PLLC ("Law Office of Dennis Cohen"), and $607.50 to Nelsons Attorneys-at-Law, Ltd ("Nelsons"). The Receiver's counsel as well as the consultants and advisers retained by the Receiver's counsel are collectively referred to as the "Receiver Team."

3. The Receiver recognizes that pursuant to paragraph 54 of the Receiver Order (ECF No. 31), Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

4. During the Application Period of April 1, 2022 to June 30, 2022, the Receiver and his Receiver Team have provided significant value to the Receivership, including collecting and analyzing data; negotiating with third parties, executing settlement agreements, and collecting associated Receivership Property; investigating claims to potential Receivership Property in the form of cryptocurrencies; facilitating the orderly and secure conversion of cryptocurrency assets into U.S. dollars; communicating with third parties that have contacted the Receiver; interviewing witnesses; issuing subpoenas; analyzing data and documentation collected to identify potential new claims to certain Receivership Property; and working at significantly discounted rates resulting in fee discounts to the Receivership.

## CASE STATUS[1]

5. <u>Cash on Hand</u>. As of the date of the filing of this Fee Application, the amount of cash on hand in the Receiver's bank account consists of (a) amounts received from Defendants' bank accounts; (b) amounts received from the liquidation of certain investments identified by the Receiver Team as Receivership Property[2]; (c) amounts received from Defendants' U.S. dollar accounts at a U.S.-based cryptocurrency exchange; (d) amounts received from the Defendants' U.S. dollar account at a foreign-based cryptocurrency OTC desk and identified by the Receiver Team as Receivership Property; (e) amounts received from the liquidation of Defendants' cryptocurrency account at a foreign-based cryptocurrency OTC desk and identified by the

---

[1] The Receiver respectfully acknowledges the Court's order dated July 25, 2022 (ECF No. 167), which directed the Receiver to include certain additional information in the Fee Applications and Status Reports going forward. Given the potentially sensitive nature of some of that information, the Receiver filed under seal a letter to the Court dated September 7, 2022 (ECF No. 177), seeking a modification of that order. With regard to this issue, the Receiver respectfully awaits the Court's response, and will follow the Court's further direction and amend or supplement his Fee Application as necessary.

[2] "Receivership Property" is defined as all property interests of the Receivership Entities and all other Recoverable Assets, including, but not limited to, monies, funds, securities, digital assets, credits, effects, goods, chattels, lands, premises, leases, claims, rights, and other assets, together with all rents, profits, dividends, interest, or other income attributable thereto, of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly. Receiver Order ¶ 7.

Receiver Team as Receivership Property; (f) amounts received from cash collected during a physical site inspection; (g) amounts received from the liquidation of cryptocurrencies that had been held at a cryptocurrency exchange on behalf of the Receivership; (h) amounts received from the liquidation of certain cryptocurrencies from the Receivership's institutional cryptocurrency custody account; and (i) amounts received from various third parties through negotiations with those third parties, including in some instances negotiations with legal counsel.

6. <u>Cryptocurrency Assets</u>. In addition to the cash on hand listed above, as of the date this report was filed with the Court, the Receiver has possession of cryptocurrency assets consisting of Bitcoin (BTC), Ether (ETH), ERC20 U.S. Dollar Coin tokens (USDC), ERC20 AirSwap tokens (AST), ERC20 Tether tokens (USDT), ERC20 GRAIN tokens (GRAIN), ERC20 Curve tokens (CRV), ERC20 Curve.fi tokens (Curve.fi), ERC20 Cool Cousin tokens (CUZ), ERC20 Sparrow tokens (SPO), ERC20 Hive tokens (HVN), ERC20 Compound Tokens (COMP), and ERC20 Caih tokens (CAIH). The Receiver maintains an insured institutional cryptocurrency custody account with a U.S.-based firm to provide safe custody of cryptocurrency assets as well as a multi-signature cryptocurrency wallet to custody certain cryptocurrency assets that are not supported by the Receiver's institutional custody account. The value of these cryptocurrency assets is likely to fluctuate because cryptocurrency prices are highly volatile, and certain cryptocurrency markets are inefficient and illiquid.

7. <u>Personal Property</u>. The Receiver has conducted a review and inventory of personal property in Qin's custody and has taken custody of certain property, including certain collectibles that the Receiver believes may be of value.

8. <u>Expenses</u>. The Receiver has incurred expenses related to winding down the relationships with certain vendors used by the Receivership Entities, re-establishing access to

certain data repositories formerly used by the Receivership Entities, and maintaining the corporate status of certain Receivership Entities. The Receiver has paid these expenses using funds from the Receiver's bank account. The Receiver has also incurred a minimal amount of standard transaction fees (sometimes referred to as "gas fees") associated with transferring cryptocurrency from Receivership Entities' wallets to wallets controlled by the Receiver. These fees are mandatory payments to the owners of the computers that devote computer processing power, and incur associated electricity and other costs, to perform the computational work to validate transactions on a public blockchain. These fees are automatically collected from the cryptocurrency transferred at the time of the transaction. The Receiver has paid these fees out of assets of the Receivership, and the Receiver is not seeking reimbursement for these fees.

9. <u>Employee Claims</u>. The Receiver is reviewing claims by former employees who believe they are owed certain amounts pursuant to their employment agreements with the Receivership Entities. The Receiver Team is working diligently to verify and quantify these employee claims.

10. <u>Creditor Claims</u>. The Receiver Team is in the process of evaluating the investor contributions made to the Receivership Entities based on information received from third parties, internal records obtained from the Receivership Entities, and information received from persons who have contacted the Receiver. The Receiver has not yet determined the exact number of investor claims.

11. On August 8, 2022, the Court granted the Receiver's motion to set a bar date for claims against the Receivership Estate and to approve claim form and notice procedures (ECF No. 168). Accordingly, on August 26, 2022, the Receiver launched an electronic claims portal, published the required notice of the claims process and claims portal, and sent notice emails to

potential claimants informing them of the same. Consistent with the Court's order, the Receiver will accept claims up until the Bar Date of December 6, 2022, 11:59 Eastern Prevailing Time.

12. The Receiver Team is formulating a process for determining and adjudicating investor claims. The Receiver expects for this process to include procedures for reviewing claims, recommending to the Court payment or denial of claims, and disposing of claims. The Receiver has not disbursed any funds to any claimants.

13. <u>Claims Held by Receiver</u>. The Receiver Team continues to investigate potential claims held by the Receiver against third parties. The Receiver Team has been in contact with over 250 third parties located in the U.S. and various foreign jurisdictions to identify potential claims for the recovery of Receivership Property. The Receiver Team is currently engaged in discussions with certain third parties related to potential claims involving assets of substantial value that the Receiver believes are Receivership Property. The Receiver continues his investigation to quantify these claims, evaluate the legal basis for recovery, and assess the likelihood of recovery. When possible the Receiver will seek to recover against these third parties for the value of the claims without initiating litigation. However, the Receiver is prepared to initiate litigation to resolve claims against third parties if necessary. Before initiating any litigation the Receiver will seek the Court's approval.

14. The Receiver Team continues its investigation to identify additional third parties who may be in possession of Receivership Property. The Receiver believes there is a reasonable likelihood that additional claims for the recovery of Receivership Property with substantial value may be identified through the ongoing investigation efforts.

## FEE APPLICATION

15.     On December 22, 2020, the SEC filed a complaint against Stefan Qin and the Receivership Entities.

16.     On January 21, 2021, the Court appointed Robert A. Musiala Jr. as Receiver over the Receivership Entities, and approved BakerHostetler as legal counsel to the Receiver (ECF No. 31). The Receiver and BakerHostetler began working on this matter on January 21, 2021.

17.     On February 4, 2021, the Court entered an order approving the Receiver's motion to employ Ankura as a forensic accounting, data forensics, and investigative consultant (ECF No. 37). Ankura began working on this matter on February 4, 2021.

18.     On February 17, 2021, the Court entered an order approving the Receiver's motion to employ the Cayman Islands law firm of Nelsons to provide legal advice with respect to Cayman Islands law and winding up petitions filed for the Virgil Sigma Fund LP and VQR Multistrategy Cayman Feeder Fund, Ltd. (ECF No. 43). Nelsons began working on this matter on February 17, 2021.

19.     On February 14, 2022, the Court entered an order approving the Receiver's motion to employ the Law Office of Dennis Cohen (ECF No. 124). The Law Office of Dennis Cohen began working on this matter on February 14, 2022.

20.     On February 18, 2022, the Court entered an order approving the Receiver's motion to employ Elliptic and CipherTrace to provide assistance in tracing, preserving, identifying, and obtaining custody of cryptocurrency and digital assets that belong to the Receivership Estates, and any related matters as directed by the Receiver (ECF No. 136). The Receiver began working with Elliptic and CipherTrace upon the Court's approval of the Fourth Fee Application dated April 25, 2022 (ECF No. 154), which authorized payments to Elliptic, Inc. ("Elliptic"), and to CipherTrace

Inc. ("CipherTrace") for a period of three months per vendor ("Initial Services") in the fee amounts listed in the Receiver's motion dated February 17, 2022 (ECF No. 131).

21. The names, hours worked, hourly billing rates, and total fees of all BakerHostetler professionals (including legal staff, in-house data forensics staff, and non-attorney support staff) who have billed time to this matter, including the Receiver, are listed in BakerHostetler's invoice, which has been submitted to and approved by the SEC.[3] The hourly billing rates for BakerHostetler legal staff are the same as those listed in BakerHostetler's proposal, which is attached to the Stipulation to the Entry of Order Appointing Receiver filed on January 20, 2021 (ECF No. 29-1). The Receiver's hourly rate is $580. BakerHostetler partner Marco Molina's hourly rate is $590. All other BakerHostetler partners are billed at an hourly rate of $695, and all BakerHostetler associates are billed at an hourly rate of $260. The billing rates of BakerHostetler in-house data forensics staff, and non-attorney support staff, are their standard rates. BakerHostetler has not incurred any travel costs. In total, BakerHostetler's significantly discounted hourly rates have resulted in a combined total discount and fee write-off of $365,290.50 for the Application Period, which is equivalent to a 34.5% total discount from BakerHostetler's standard hourly rates.

22. The names, hours worked, hourly billing rates, and total fees of all Ankura professionals who have billed time to this matter are listed in Ankura's invoice, which has been submitted to and approved by the SEC. Ankura has incurred costs associated with taking custody of certain data and corporate record database searches. In total, Ankura's significantly reduced

---

[3] The invoices detailing the work of the Receiver and BakerHostetler, Ankura, the Law Office of Dennis Cohen, and Nelsons were submitted to the SEC. Because the invoices contain highly confidential information and the public disclosure of that information would thwart the Receiver's efforts to recover Receivership Property from third parties, the invoices are not publicly submitted to the Court herewith. Pursuant to the Court's August 23, 2021 Order (ECF No. 78), the Receiver will file under seal the invoices detailing the work of the Receiver and BakerHostetler, Ankura, the Law Office of Dennis Cohen, and Nelsons as Exhibits A–D, respectively, so that the Court may ascertain the specific tasks performed and number of hours billed. Additionally, pursuant to the Court's August 23, 2021 Order (ECF No. 78), the Receiver will file versions of these documents on the public docket, with any confidential, privileged, or sensitive information redacted.

hourly rates have resulted in a combined total discount and fee write-off of $162,908.00 for the Application Period, which is equivalent to a 30.7% total discount from Ankura's standard hourly rates.

23.     The names, hours worked, hourly billing rates, and total fees of all professionals from the Law Office of Dennis Cohen who have billed time to this matter are listed in the invoice for the Law Office of Dennis Cohen, which has been submitted to and approved by the SEC. The Law Office of Dennis Cohen has not incurred any travel costs.

24.     The names, hours worked, hourly billing rates, and total fees of all Nelsons professionals who have billed time to this matter are listed in Nelsons' invoice, which has been submitted to and approved by the SEC. Nelsons has not incurred any travel costs.

25.     In accordance with the Court's order dated February 18, 2022 (ECF No. 136), the Elliptic and CipherTrace invoices for the Initial Services[4] were submitted as part of the Receiver's Fourth Fee Application. The Court approved payments to Elliptic and CipherTrace for the Initial Services on April 25, 2022 as part of the Court's approval of the Receiver's Fourth Fee Application (ECF No. 154). Elliptic and CipherTrace have not incurred any expenses other than for the Initial Services.

26.     The total fees and expenses, after application of the agreed hourly rate discounts, incurred for the Application Period (April 1, 2022 through June 30, 2022) are summarized as follows:

---

[4] Initially, the Receiver expects to require the services of Elliptic and CipherTrace for a period of three months per vendor ("Initial Services") at the monthly subscription fees listed in the Receiver's motion dated February 17, 2022 (ECF No. 131) and as approved by the Court's February 18, 2022 Order (ECF No. 136).

**Receiver and Receiver's Counsel, BakerHostetler – Application Period Fees and Expenses**

| Hours | Fees at Standard Rates | Rate Discount | Total Fees | Expenses | Total Fees and Expenses | Fee Application Amount |
|---|---|---|---|---|---|---|
| 1570.9 | $1,058,465.00 | ($365,290.50) | $693,174.50 | $1,417.17 | $694,591.67 | $694,591.67 |

**Receiver's Consultant, Ankura – Application Period Fees and Expenses**

| Hours | Fees at Standard Rates | Rate Discount | Total Fees | Expenses | Total Fees and Expenses | Fee Application Amount |
|---|---|---|---|---|---|---|
| 883.1 | $530,135.50 | ($162,908.00) | $367,227.50 | $3,649.50 | $370,877.00 | $370,877.00 |

**The Law Office of Dennis Cohen – Application Period Fees and Expenses**

| Hours | Total Fees | Expenses | Total Fees and Expenses | Fee Application Amount |
|---|---|---|---|---|
| 15.2 | $9,500.00 | $950 | $10,450.00 | $10,450.00 |

**Receiver's Cayman Islands Counsel, Nelsons – Application Period Fees and Expenses**

| Hours | Total Fees | Expenses | Total Fees and Expenses | Fee Application Amount |
|---|---|---|---|---|
| 0.9 | $607.50 | $0 | $607.50 | $607.50 |

27. The Receiver respectfully asks the Court to approve payment to BakerHostetler, on an interim basis, in the amount of $694,591.67 for the Application Period of April 1, 2022 through June 30, 2022. The Receiver further respectfully asks the Court to approve payment to Ankura, on

9

an interim basis, in the amount of $370,877.00 for the Application Period of April 1, 2022 through June 30, 2022. The Receiver respectfully asks the Court to approve payment to the Law Office of Dennis Cohen, on an interim basis, in the amount of $10,450.00 for the Application Period of April 1, 2022 through June 30, 2022. The Receiver respectfully asks the Court to approve payment to Nelsons, on an interim basis, in the amount of $607.50 for the Application Period of April 1, 2022 through June 30, 2022. The SEC has reviewed and approved this fee application and the invoices for BakerHostetler, Ankura, the Law Office of Dennis Cohen, and Nelsons.

28.     The Receiver recognizes that the Court may exercise its discretion under the Receiver Order to holdback 20% of the fees and expenses for this fee application, with the total amounts held back during the course of the receivership to be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership. In the event the Court chooses to exercise this discretion, the Receiver respectfully asks the Court to approve payment to BakerHostetler totaling $555,673.34, payment to Ankura totaling $296,701.60, payment to the Law Office of Dennis Cohen totaling $8,360.00, and payment to Nelsons totaling $486.00. In this event the amounts held back will be included in the final fee application submitted at the close of the receivership, consisting of BakerHostetler fees totaling $138,918.33, Ankura fees totaling $74,175.40, Law Office of Dennis Cohen fees of $2,090.00, and Nelsons fees of $121.50.

29.     In accordance with the Billing Instructions, the Receiver and Receiver Team have separately categorized their services by task. The following table summarizes the respective number of hours incurred relative to each task category during the Application Period of April 1, 2022 through June 30, 2022:

### Receiver and Receiver's Counsel, BakerHostetler

| Task Description | Hours Worked | Total Fees |
|---|---|---|
| Asset Analysis and Recovery | 1,376.5 | $590,893.50 |
| Claims Administration and Objections | 133.10 | $74,721.50 |
| Case Administration | 23.0 | $10,224.50 |
| Data Analysis | 27.9 | $12,108.00 |
| Tax Issues | 10.4 | $5,227.00 |

### Receiver's Consultant, Ankura

| Task Description | Hours Worked | Total Fees |
|---|---|---|
| Forensic Accounting | 739.3 | $303,897.50 |
| Claims Administration and Objections | 107.6 | $48,965.00 |
| Data Analysis | 22.0 | $7,337.50 |
| Status Reports | 14.2 | $7,027.50 |

### Receiver's Counsel, the Law Office of Dennis Cohen

| Task Description | Hours Worked | Total Fees |
|---|---|---|
| Asset Analysis and Recovery | 15.2 | $9,500.00 |

### Receiver's Cayman Islands Counsel, Nelsons

| Task Description | Hours Worked | Total Fees |
|---|---|---|
| Case Administration | 0.9 | $607.50 |

11

30. This interim fee application is the sixth fee application that the Receiver has made. As of the date of the filing of this Fee Application, the Court previously has entered Orders granting in part the Receiver's Certified Initial Fee Application (ECF No. 91), granting the Receiver's Resubmitted Initial Fee Application (ECF No. 101), granting the Receiver's Certified Second Fee Application (ECF No. 101), granting the Receiver's Certified Third Fee Application (ECF No. 117), granting the Receiver's Certified Fourth Fee Application (ECF No. 154), and granting in part the Receiver's Certified Fifth Fee Application (ECF No. 167). Payments have been made pursuant to the Orders.

## ARGUMENTS AND AUTHORITIES IN SUPPORT OF FEE APPLICATION

31. This Court may award compensation for services rendered and costs expended in furtherance of the Receivership. *SEC v. Amerindo Inv. Advisors Inc.*, No. 05-cv-5231 (RJS), 2015 WL 13678841, at *1 (S.D.N.Y. Sept. 14, 2015) (quoting *SEC v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008)) ("A receiver appointed by a court who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred."); *see also SEC v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992) (if a receiver reasonably discharges his duties, the receiver is entitled to compensation; the circumstances surrounding the receivership, including the results, are relevant). "Like fee awards in other contexts, the reasonableness of a receiver's fee application is determined in the court's discretion, and is judged by, among other things, the reasonableness of the hourly rate charged and the reasonableness of the number of hours billed." *Amerindo Inv. Advisors Inc.*, 2015 WL 13678841, at *1 (citations omitted). When determining the amount of professional fees to award, the Court should use the lodestar method, which multiplies the number of hours reasonably expended by the reasonable hourly rate. *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that

the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'").

32. When determining fees under the lodestar approach, courts apply the forum rule, according to which "courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017). A district court may adjust the lodestar when it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Millea*, 658 F.3d at 167 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010)). However, such adjustments occur only in "rare circumstances" as the lodestar figure already includes most, if not all, of the relevant factors constituting a reasonable fee. *Id.* (quoting *Perdue*, 559 U.S. at 553-54). The SEC's full approval of the Receiver's application "is a significant factor in determining the reasonableness of the compensation and reimbursement sought." *Amerindo Inv. Advisors Inc.*, 2015 WL 13678841, at *1. In support of this application, BakerHostetler submits the Certification of Teresa Goody Guillén addressing the reasonableness of the rates charged and hours billed by professionals at BakerHostetler.

33. BakerHostetler and Ankura have charged fees that are at or below the standard billing rates for the professionals working on this matter, and those fees are at or below customary fees charged by similar professionals in their respective markets. BakerHostetler and Ankura have billed all expenses at actual costs with no mark-up added, and they are not seeking overhead charges. The fees and expenses sought in this application are reasonable and were necessary for the proper administration of the duties of the Receiver.

34. As explained in the Initial Status Report, Second Status Report, Third Status Report, Fourth Status Report, Fifth Status Report, Sixth Status Report, and Seventh Status Report,

the Receiver and his Receiver Team have performed tasks that have added value to the Receivership. Actions the Receiver and Receiver Team have taken include, but are not limited to, the following:

a. Establishing a Receiver website (https://www.bakerlaw.com/qin-receivership) and email address for inquiries (Qin-Receivership@bakerlaw.com);

b. Communicating with investors and other interested parties by telephone and email;

c. Taking custody of various hardware devices and other data sources, and processing and analyzing approximately 1.85 TB of the data obtained;

d. Obtaining hundreds of thousands of records from third parties, and processing and analyzing these documents, including approximately 17,000 lines of bank transactions;

e. Conducting approximately 79 witness interviews;

f. Identifying dozens of third parties through investigative procedures and sending Notice Letters to over 250 entities seeking information concerning potential claims to Receivership Property;

g. Serving approximately 83 subpoenas on various third parties to obtain additional information to assist in identifying and recovering Receivership Property;

h. Establishing a Receivership bank account;

i. Transferring funds from the Defendants' bank accounts to the Receivership bank account;

j. Liquidating certain cryptocurrency and transferring this value to the Receivership bank account;

k. Establishing a secure, insured cryptocurrency custody account for the Receivership and transferring certain cryptocurrencies to the account;

l. Establishing a secure, multi-signatory cryptocurrency wallet for the Receivership to custody cryptocurrency unsupported by the cryptocurrency custody account and transferring certain cryptocurrencies to the wallet;

  m. Identifying certain Receivership Property in the form of private investments, liquidating the investments and transferring this value to the Receivership bank account;

  n. Claiming as Receivership Property and taking custody of certain cryptocurrencies obtained from various third parties identified through investigative procedures; and

  o. Identifying significant additional Receivership Property claims through investigative procedures and engaging in negotiations with certain third parties for the recovery of this Receivership Property.

35. During the Application period of April 1, 2022 through June 30, 2022, the Receiver and his Receiver Team have performed work that has resulted in specific benefits for the Receivership. This includes but is not limited to the following:

  a. Resolution of potential claims against multiple third parties, resulting in the recovery of significant value for the benefit of the Receivership;

  b. Liquidating Receivership Property in the form of marketable securities pursuant to an agreement reached with a third party and transferring the funds to the Receivership bank account;

  c. Negotiating with a foreign-based entity that is in possession of a significant amount of Receivership Property to resolve certain issues that will allow for the future receipt of these assets;

  d. Issuing subpoenas and engaging in discussions with various third parties to identify the location and obtain custody of additional Receivership Property;

  e. Negotiating with a foreign-based cryptocurrency exchange for the receipt of certain records and to identify certain Receivership Property held by the exchange;

  f. Asserting a claim to significant Receivership Property by serving a Notice Letter and the Receiver Order via personal service on a foreign-based person;

  g. Identifying and engaging in negotiations with certain third parties for the return and recovery of significant Receivership Property;

h.  Investigating additional claims to potential Receivership Property in the form of cryptocurrencies that appears to be related to cryptocurrency exchange accounts used in the operation of the Receivership Entities;

i.  Identifying certain data repositories and taking steps to preserve and process the data for the Investigation;

j.  Reviewing and responding to various investor inquiries;

k.  Identifying and establishing contact with a technical vendor that may have access to certain data relevant to the Receivership Estate;

l.  Executing an agreement with the Receivership's institutional cryptocurrency custody account provider, and completing related actions, to enable certain efficiencies in the process established by the Receiver for the orderly and secure conversion of cryptocurrency assets into U.S. dollars;

m.  Implementing and completing an accelerated schedule for the orderly and secure conversion of cryptocurrency assets into U.S. dollars to be received in the Receivership bank account in response to certain market conditions;

n.  Executing an amended settlement agreement with a third party;

o.  Investigating significant cryptocurrency value believed to be Receivership Property, and issuing subpoenas to obtain related information;

p.  Analyzing blockchain transactional data to determine whether significant cryptocurrency value may be Receivership Property, and engaging in discussions with certain third parties to identify relevant information;

q.  Investigating and issuing subpoenas to third parties related to certain technical hardware relevant to the Receiver's Investigation;

r.  Analyzing certain cryptocurrency public keys and associated transactional data that are believed to provide potential avenues for the identification of additional Receivership Property;

s.  Analyzing certain cryptocurrency transactions of interest to the Receiver's Investigation and negotiating with certain third parties to resolve related issues and obtain certain records relevant to the Receiver's Investigation;

t.  Engaging in discussions with counsel for a foreign-based cryptocurrency

       exchange to request assistance related to the investigation of certain cryptocurrency transactions involving Receivership Property;

u. Obtaining sworn declarations and related records from certain third parties related to the Receiver's Investigation;

v. Applying specialized blockchain analytics tools to the Investigation and creating a process for the orderly and cost-effective application of such tools;

w. Negotiating with certain third parties to obtain control of internet domains and related email accounts formerly used in the operation of the Receivership Entities;

x. Completing a forensic analysis of certain electronic devices relevant to the Receiver's Investigation; and

y. Obtaining and analyzing certain third-party records relevant to the Receiver's Investigation.

z. Completing a draft Memorandum of Law in Support of a Motion to Set a Bar Date for Claims Against the Receivership, drafting related filings, and providing the draft filings to the SEC for review.

aa. Preparing for the launch of an electronic claims portal, publication of the required notice of the claims process, and delivery of notice emails to potential claimants informing them of the same.

36. The benefits to the Receivership of the ongoing work referenced in the preceding paragraphs include the recovery of significant Receivership Property during the Application period of April 1, 2022 through June 30, 2022. Additionally, during the Application Period of April 1, 2022 through June 30, 2022, the Receiver and his Receiver Team have identified new potential avenues for the recovery of additional Receivership Property.

37. Each of these tasks was reasonably necessary to secure assets of the Receivership and to evaluate potential sources of other assets. Further, each task was performed efficiently by the Receiver or his Receiver Team at BakerHostetler, Ankura, the Law Office of Dennis Cohen, and Nelsons. The SEC has reviewed and approved this fee application and the related invoices.

## CONCLUSION

38.     For the reasons stated, the Receiver respectfully requests that this Court enter an order approving and authorizing, on an interim basis, the payment of fees and expenses totaling $694,591.67 to BakerHostetler, $370,877.00 to Ankura, $10,450.00 to the Law Office of Dennis Cohen, and $607.50 to Nelsons. In the event the Court chooses to exercise its discretion to hold back 20% of these amounts, the Receiver asks the Court to approve payment to BakerHostetler totaling $555,673.34, payment to Ankura totaling $296,701.60, payment to the Law Office of Dennis Cohen of $8,360.00, and payment to Nelsons totaling $486.00, with the amounts held back to be included in the final fee application submitted at the close of the receivership.

**RECEIVER'S CERTIFICATION IN SUPPORT OF SIXTH FEE APPLICATION**

I, Teresa Goody Guillén, counsel to the Court-appointed Receiver in the above-captioned matter and in connection with the Sixth Fee Application therein do hereby certify that:

(a)     I have read the application;

(b)     to the best of my knowledge, information, and belief formed after reasonable inquiry, the application and all fees and expenses in it are true and accurate and comply with the Billing Instructions;

(c)     all fees contained in the application are reasonable, necessary, and commensurate with the skill and experience required for the activity performed;

(d)     the amount for which reimbursement is sought does not include the amortization of the cost of any investment, equipment, or capital outlay; and

(e)     the requests for reimbursement of services that were justifiably purchased or contracted for from third parties (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches),

include only the amount billed to BakerHostetler by the third-party vendor and paid by BakerHostetler to such vendor.

Dated: September 28, 2022

/s/ *Teresa Goody Guillén*

BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 1100
Washington, D.C. 20036
Tel.: (202) 861-1500
Facsimile: (202) 861-1783
Teresa Goody Guillén
tgoodyguillen@bakerlaw.com

45 Rockefeller Plaza
New York, NY 10111
Tel.: (212) 589-4200
Facsimile: (212) 589-4201
Marco Molina
mmolina@bakerlaw.com
Lauren P. Lyster
llyster@bakerlaw.com

*Attorneys for Receiver Robert A. Musiala, Jr., Court-appointed Receiver for Receivership Entities*