**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>          vs.<br><br>STEFAN QIN, VIRGIL TECHNOLOGIES LLC, MONTGOMERY TECHNOLOGIES LLC, VIRGIL QUANTITATIVE RESEARCH, LLC, VIRGIL CAPITAL LLC, and VQR PARTNERS LLC,<br><br>                    Defendants. | Case No.: 20-cv-10849 (LGS) |

## RECEIVER'S NINTH STATUS REPORT

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Receiver Robert A. Musiala, Jr.*

Robert A. Musiala Jr., Esq., Court-appointed Receiver for the assets of Virgil Capital LLC, Montgomery Technologies, LLC, Virgil Technologies, LLC, Virgil Quantitative Research, LLC, and VQR Partners, LLC (collectively, the "**Receivership Entities**"), submits this Status Report (the "**Report**") in accordance with the Order of this Court entered on January 21, 2021 (the "**Receiver Order**"), and for the purpose of providing a status report on the Receiver's work and findings to date (the "**Investigation**").[1] The facts presented in this Report are preliminary and may be amended and changed as the Investigation continues. This Report includes the assessment of the Receiver's legal counsel as well as the consultants and advisers retained by the Receiver's counsel (the "**Receiver Team**").

## I. INTRODUCTION

The Receivership Entities are a group of interrelated entities, all of which were either controlled or owned directly by Defendant Stefan Qin ("**Qin**"). Using his control and ownership of the Receivership Entities, Qin perpetrated a scheme to lure investors into two funds (the "**Funds**"), the Virgil Sigma Fund LP (the "**Sigma Fund**") and the VQR Multistrategy Fund LP (the "**VQR Fund**") that were marketed as using algorithmic trading strategies involving cryptocurrencies. Through this scheme, Qin exerted his control, particularly over the Sigma Fund, to steal investor proceeds to fund personal expenses and investments and paid investor redemptions by using funds from new investors to pay earlier investors. On December 22, 2020, the Securities and Exchange Commission (the "**SEC**") commenced an enforcement action (the "**Enforcement Action**") against Qin and the Receivership Entities. On February 4, 2021, Qin pleaded guilty to

---

[1] Order Appointing Receiver ¶ 46, *SEC v. Qin*, No. 20-cv-10849 (LGS) (S.D.N.Y. Jan. 21, 2021), ECF No. 31. Unless otherwise indicated, documents referenced herein by ECF Number are in connection with the above-captioned matter.

one count of securities fraud in connection with this scheme.[2] On September 15, 2021, Qin was sentenced to 90 months in prison.[3]

Simultaneous with the filing of its complaint, the SEC sought emergency relief, including a preliminary injunction, in the form of an order freezing the assets of the Receivership Entities.[4] The SEC also sought the appointment of a receiver over those assets.[5] On January 21, 2021, the Court appointed Robert A. Musiala Jr., Esq. as the receiver (the "**Receiver**") for the estates of the Receivership Entities.[6] The Receiver Order requires that the Receiver file an initial status report to the Court within 30 days of the Receiver Order. In satisfaction of this requirement, the Receiver submitted the initial status report on February 22, 2021.[7] In addition, the Receiver Order requires that the Receiver file a status report within thirty days after the end of each calendar quarter. In satisfaction of this requirement, the Receiver submitted the second, third, fourth, and fifth status reports, respectively, on April 30, 2021, July 30, 2021, November 1, 2021, and January 31, 2022. On March 25, 2022, the Court ordered that the Receiver shall file quarterly status reports within fifteen days after the close of every quarter.[8] In satisfaction of this requirement, the Receiver submitted the sixth, seventh, and eighth status reports, respectively, on April 15, 2022, July 14, 2022, and October 17, 2022. In further satisfaction of this requirement, the Receiver submits this ninth status report.

---

[2] Press Release 21-022, Department of Justice, U.S. Attorney's Office, Southern District of New York, *Founder Of $90 Million Cryptocurrency Hedge Fund Charged With Securities Fraud And Pleads Guilty In Federal Court* (Feb. 4, 2021), https://www.justice.gov/usao-sdny/pr/founder-90-million-cryptocurrency-hedge-fund-charged-securities-fraud-and-pleads-guilty.
[3] Press Release 21-239, Department of Justice, U.S. Attorney's Office, Southern District of New York, *Founder Of $90 Million Cryptocurrency Hedge Fund Sentenced To More Than Seven Years In Prison* (Sept. 15, 2021), https://www.justice.gov/usao-sdny/pr/founder-90-million-cryptocurrency-hedge-fund-sentenced-more-seven-years-prison.
[4] Plaintiff Securities and Exchange Commission's *Ex Parte* Emergency Motion for an Asset Freeze and Other Relief, ECF No. 4.
[5] Stipulation to the Entry of Order Appointing Receiver, ECF No. 29.
[6] Receiver Order ¶¶ 2-3, ECF No. 31.
[7] Receiver's Initial Status Report, ECF No. 46.
[8] ECF No. 148.

## II. SUMMARY OF RECEIVERSHIP ACTIVITIES PERFORMED DURING THE STATUS REPORT PERIOD

### A. Identifying and Securing Receivership Property

During the period covered by this ninth status report, the Receiver and his Receiver Team have performed numerous activities that have resulted in the recovery of Receivership Property, and the identification of additional Receivership Property. Key activities performed in this regard include: (1) resolution of potential claims against multiple third parties, resulting in the recovery of significant value for the benefit of the Receivership; (2) negotiating with a foreign-based third party and completing the transfer of significant Receivership Property into the Receiver's bank account; (3) analyzing certain cryptocurrency records and negotiating with a foreign-based cryptocurrency exchange to identify and quantify significant Receivership Property deposited at the exchange and to demand that certain accounts at the exchange be frozen to preserve the Receivership Property held in the accounts; and (4) identifying and engaging in negotiations with multiple third parties for the return and recovery of significant Receivership Property.

## B. Operating the Receivership Estate

During the period covered by this ninth status report, the Receiver and his Receiver Team have performed numerous activities essential to operating the Receivership Estate and evaluating potential claims against the Receivership Estate. Key activities performed in this regard include: (1) identifying certain data repositories and taking steps to preserve and process the data for the Investigation; (2) reviewing and responding to various claimant inquiries; (3) operating an electronic claims portal to allow claimants who believe they are owed funds from the Receivership Entities to submit claims, update and provide additional information/documents to their claims, and track the status of their claims; (4) evaluating the claim forms and supporting documentation submitted by potential claimants through the electronic claims portal; (5) evaluating the claims submitted through the electronic claims portal to determine which claims have included sufficient documentation and which claims may require additional documentation to substantiate and determine the claim value; (6) evaluating investor cash inflows and outflows, including analyzing cash inflows and outflows in the context of bank statements; (7) sending email reminders to all Identified Potential Claimants[9] to help ensure the Identified Potential Claimants did not miss their opportunity to file their claims prior to the Bar Date;[10] (8) working with certain third parties to resolve issues related to the liquidation of certain Receivership Property in the form of cryptocurrencies; and (9) completing and filing a tax return for the Receivership Estate for the 2021 tax year.

## C. Investigations

---

[9] Through an extensive investigative and forensic process, the Receiver has identified approximately 160 potential investors, creditors, and other stakeholders (collectively, "Identified Potential Claimants") who may have claims against, or assert equity interests in, the Receivership Entities. Memorandum of Law in Support of Receiver's Motion to Set Bar Date for Claims Against the Receivership Estate and to Approve Claim Form and Notice Procedures, ECF No. 162.

[10] Order Granting Receiver's Motion to Set Bar Date for Claims Against the Receivership Estate and to Approve Claim Form and Notice Procedures, ECF No. 168.

4

During the period covered by this ninth status report, the Receiver and his Receiver Team have performed numerous activities essential to the Receiver's ongoing Investigation to identify additional Receivership Property that may be recoverable for the benefit of the Receivership Estate. Key activities performed in this regard include: (1) identifying and investigating potential claims to certain Receivership Property, engaging in discussions with counsel for a foreign-based third party to identify and receive related records, analyzing the records obtained, and taking steps to prevent the transfer or dissipation of the Receivership Property; (2) investigating multiple third parties believed to be in possession of significant Receivership Property, and deploying strategies to gain additional information to facilitate the potential recovery of the Receivership Property; (3) conducting blockchain transactional analysis related to transfers of significant Receivership Property in the form of cryptocurrencies, identifying certain third parties that may be in possession of the Receivership Property, and initiating a strategy to contact those third parties and seek the recovery of the Receivership Property; (4) identifying and analyzing certain cryptocurrency transactional data using blockchain analytics tools to identify additional avenues for the recovery of Receivership Property in the form of cryptocurrencies; (5) communicating with certain third parties to request the production of documents related to the Investigation; (6) drafting and submitting a formal request to a foreign government agency to provide evidence of certain Receivership property deposited into accounts at certain foreign financial institutions and to request assistance in freezing the relevant accounts; (7) conducting research to support potential litigation against a U.S.-based entity that received significant Receivership Property; and (8) identifying new potential claims to Receivership Property and initiating discussions with counsel for certain third parties to request records relevant to the new potential claims.

III.   **SUMMARY OF RECEIVERSHIP ACTIVITIES AND FINDINGS TO DATE**

### A. Operating the Receivership Estate

1. Service Providers

As noted in the initial status report, the Receiver directed his legal counsel Baker & Hostetler LLP[11] ("**BakerHostetler**") to retain the forensic accounting firm of Ankura Consulting Group, LLC ("**Ankura**") as consultants to assist with the analysis of the financial condition and activities of the Receivership Entities. The Court approved the retention of Ankura on February 4, 2021.[12] The Receiver has also retained the Cayman Islands law firm of Nelsons to provide legal advice with respect to Cayman Islands law and winding up petitions filed for the Sigma Fund and VQR Fund. The Court approved the retention of Nelsons on February 17, 2021.[13] Additionally, the Receiver retained the Law Office of Dennis Cohen. The Court approved the retention of the Law Office of Dennis Cohen on February 14, 2022.[14] The Receiver also retained CipherTrace, Inc. and Elliptic Inc. (collectively, the "**Blockchain Analytics Vendors**"). The Court approved the retention of the Blockchain Analytics Vendors on February 18, 2022.[15] Finally, the Receiver has retained Miller Kaplan ("**Miller Kaplan**") to provide tax and consulting services. The Court approved the retention of Miller Kaplan on August 18, 2022.[16]

2. Communications with Investors and Creditors

The Receiver Team continues to receive correspondence from purported investors and creditors and is communicating with those parties. The Receiver Team continues to maintain a website (https://www.bakerlaw.com/qin-receivership) through which investors and claimants may access information relating to the status of the Enforcement Action and the Receivership. The

---

[11] Receiver Order, ECF No. 31.
[12] Order Authorizing Receiver to Retain Ankura Consulting Group, LLC, ECF No. 37.
[13] Order Authorizing Receiver to Retain Nelsons Attorneys-at-Law, Ltd, ECF No. 43.
[14] Order Authorizing Receiver to Retain the Law Office of Dennis Cohen, ECF No. 124.
[15] Order Authorizing Receiver to Retain CipherTrace and Elliptic, ECF No. 136.
[16] Order Authorizing Receiver to Retain Miller Kaplan Arase, LLP, ECF No. 173.

Receiver Team also continues to maintain an email address for investor inquiries (Qin-Receivership@bakerlaw.com).

3.  Human Resources Administration for VQR Employees

The Receiver Team has conducted interviews of former employees of the Receivership Entities and has gathered relevant information to identify Receivership Property and wind down activities of the Receivership Entities. The Receiver Team has resolved all known benefits and immigration issues regarding employees. The Receiver Team will continue to work with the payroll and benefits administrator of the VQR Fund to handle any remaining employment and compensation issues and other employment-related issues that may arise in accordance with the contractual and legal obligations of the VQR Fund. The Receiver Team continues to receive correspondence from former employees and is communicating with those parties.

4.  Claims Process

On July 8, 2022, the Receiver filed a Motion to Set Bar Date for Claims Against the Receivership Estate and to Approve Claim Form and Notice Procedures, along with a supporting memorandum and proposed order, for the Court's consideration.[17] On August 8, 2022, the Court issued an Order granting the motion.[18] Among other things, the Court's August 8, 2022, Order set 11:59 p.m. prevailing Eastern Time on December 6, 2022 as the Bar Date to file all Claims against the Receivership Estate.[19] In accordance with the Court's August 8, 2022 Order, on August 25, 2022, the Receiver sent notice via electronic mail to all Identified Potential Claimants; published

---

[17] Notice of Receiver's Motion to Set Bar Date for Claims Against the Receivership Estate and to Approve Claim Form and Notice Procedures, ECF No. 161; Memorandum of Law in Support of Receiver's Motion to Set Bar Date for Claims Against the Receivership Estate and to Approve Claim Form and Notice Procedures, ECF No. 162; Proposed Order Granting Receiver's Motion to Set Bar Date for Claims Against the Receivership Estate and to Approve Claim Form and Notice Procedures, ECF No. 163.
[18] Order Granting Receiver's Motion to Set Bar Date for Claims Against the Receivership Estate and to Approve Claim Form and Notice Procedures, ECF No. 168.
[19] *Id*.

7

a Publication Notice[20] to provide notice of the Bar Date and of the provisions of the August 8, 2022 Order to all parties who may hold claims against the Receivership Estate; and launched an electronic claims portal to allow claimants who believe they are owed funds from the Receivership Entities to submit claims, update and provide additional information/documents to their claims, and track the status of their claims.[21] Consistent with the Court's August 8, 2022 Order, at 11:59 p.m. prevailing Eastern Time on December 6, 2022, the Receiver ceased accepting new claims through the electronic claims portal. Based on preliminary analysis by the Receiver Team, the Receiver estimates that prior to the Bar Date approximately 113 unique claims were submitted through the electronic claims portal by investors, employees, and creditors. The Receiver Team is evaluating the claims submitted, as an initial matter, to determine which claims have included sufficient documentation and which claims may require additional documentation to substantiate and determine the claim value. The Receiver Team is also evaluating investor cash inflows and outflows, including analyzing cash inflows and outflows in the context of bank statements. The Receiver has not disbursed any funds to any claimants. The Receiver has paid certain creditor expenses approved by the Court.

### B. Investigations

1. Witness Interviews

The Receiver Team has to date conducted approximately 80 interviews in total, and has interviewed approximately 41 witnesses, some of whom have retained legal counsel, in connection with the Receiver's Investigation. These include interviews with former employees, officers, and directors of the various Receivership Entities as well as business vendors and other business

---

[20] PR Newswire Press Release (August 25, 2022), https://www.prnewswire.com/news-releases/the-court-appointed-receiver-in-securities-and-exchange-commission-v-stefan-qin-et-al-announces-notice-of-bar-date-to-submit-claims-301612013.html.
[21] Qin Receivership Claims Portal, https://qinreceivershipclaims.com/register/account_setup.

contacts of the various Receivership Entities. The Receiver Team will continue to conduct interviews with witnesses and their counsel (if applicable) to assist in the Receiver's Investigation.

2. Interviews of Stefan Qin

The Receiver Team has conducted 22 interviews with Stefan Qin, in coordination with Qin's counsel, and has completed its scheduled interviews with Stefan Qin. The Receiver may arrange additional interviews with Stefan Qin as needed to gain any further information about the Receivership Entities' business operations and the existence and location of potential Receivership Property.

3. Forensic Data Capture and Analysis

The Receiver Team continues to coordinate with certain third parties and the SEC, and has previously coordinated with the U.S. Attorney's Office for the Southern District of New York, to obtain various records related to the Receivership Entities and to perform forensic investigation and analysis of the records. To date the Receiver Team has obtained and processed approximately 1.85 terabytes of data. The Receiver Team is working to analyze these records and data to inform the Receiver's Investigation and asset recovery efforts. Through obtaining and analyzing these records and data, the Receiver Team has to date identified over 1,000 cryptocurrency public keys and over 200 cryptocurrency exchange accounts relevant to the Investigation and has located and retrieved significant Receivership Property. The Receiver Team intends to continue to locate, obtain, and analyze relevant data and documentation, pursuant to both voluntary requests and subpoenas, to assist the Receiver in identifying and recovering assets.

C. Identifying and Securing Receivership Property

1. Notice Letters and Voluntary Information Requests

9

The Receiver Team has been in contact with over 250 U.S. and foreign based financial institutions, and has served these entities with Notice Letters and Receiver Orders to freeze any Receivership Property in their possession and to serve on the Receiver a certification or statement setting forth a description of any assets traceable to a Receivership Entity in their possession as of the date of the receipt of the Receiver Order. The Receiver Team has obtained and continues to seek additional information from these entities, pursuant to voluntary information requests and subpoenas, to assist in the Receiver's Investigation. In many circumstances, the Receiver Team has supplemented the initial Notice Letters with new information gained during the ongoing Investigation. In furtherance of these requests, the Receiver Team sought and the Court ordered, a Stipulation and Order governing the production and exchange of any confidential information subject to these requests to appropriately protect such confidential information and facilitate the provision of information.[22]

2. Subpoenas

The Receiver Team has served approximately 83 subpoenas on various third parties to obtain additional information to assist in identifying and recovering Receivership Property. The Receiver Team will continue to issue subpoenas, as appropriate, to third parties that may be in possession of information relevant to the Receiver's Investigation.

3. Receivership Bank Account and Cryptocurrency Custody Account

The Receiver has opened a bank account in the name of the Receivership for consolidation and custody of Receivership Property in the form of U.S. dollars. The Receiver has used the funds in this account to pay certain Receivership expenses. The Receiver has also established an insured

---

[22] Stipulation and Order Governing the Production and Exchange of Confidential Information, ECF No. 48.

10

institutional cryptocurrency custody account with a U.S. based firm for the consolidation and secure custody of Receivership Property in the form of cryptocurrencies.

4. Blockchain Analytics Vendors

The Receiver Team met with seven different providers of proprietary blockchain analytics tools and received competitive proposals from these vendors to assist in investigations targeted at identifying the location of certain cryptocurrency assets that are believed to be Receivership Property. The Receiver has selected two vendors and moved for and received Court approval of these vendors. The assistance of blockchain analytics vendors has allowed the Receiver Team to conduct a more thorough analysis of blockchain transactional data associated with certain cryptocurrency public keys that the Receiver has obtained and expects to obtain through his Investigation.

5. Physical Assets

The Receiver Team has conducted a review and inventory of personal assets that were in Qin's custody and has taken physical custody of certain assets and created an accounting of Qin's assets.

## IV.  CLAIMS AGAINST THIRD PARTIES

The Receiver Team continues to investigate potential claims held by the Receiver against third parties. The Receiver Team has been in contact with over 250 third parties located in the U.S. and various foreign jurisdictions to identify potential claims for the recovery of Receivership Property. The Receiver Team is currently engaged in discussions with certain third parties related to potential claims involving assets of substantial value that the Receiver believes are Receivership Property. The Receiver continues his Investigation to quantify these claims, evaluate the legal basis for recovery, and assess the likelihood of recovery. Wherever possible the Receiver will seek

to recover against these third parties for the value of the claims without initiating litigation. However, the Receiver is prepared to initiate litigation to resolve claims against third parties if necessary. Before initiating any litigation the Receiver will seek the Court's approval.

In the period covered by this status report, the Receiver Team has successfully asserted, negotiated, and settled claims to significant Receivership Property in the form of U.S. dollars and cryptocurrencies. The Receiver has taken custody of these assets. The Receiver Team continues its Investigation to identify additional third parties who may be in possession of Receivership Property. The Receiver believes there is a reasonable likelihood that additional claims for the recovery of Receivership Property with substantial value may be identified through the ongoing Investigation efforts.

## V. ASSETS AND LIABILITIES

The Receiver has established a bank account to secure assets in the form of U.S. dollars. During the time period covered by this ninth status report, the Receivership bank account has received multiple inbound deposits of funds representing Receivership Property. These funds were identified through the Receiver Team's Investigation and have been received from various third parties through negotiations with those third parties, including in some instances negotiations with legal counsel.

The Receiver has also established an insured institutional cryptocurrency custody account with a U.S.-based firm to provide safe custody of certain cryptocurrency assets, as well as a multi-signature cryptocurrency wallet to custody certain cryptocurrency assets which are not supported by the Receiver's institutional custody account. These funds were identified through the Receiver Team's Investigation and have been received from various third parties through negotiations with those third parties, including in some instances negotiations with legal counsel. The market value

of the cryptocurrency assets in the possession of the Receiver is likely to fluctuate because cryptocurrency prices are highly volatile, and certain cryptocurrency markets are inefficient and illiquid.

The Receiver Order grants the Receiver authority to dispose of Receivership Property in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate.[23] Pursuant to this authority, the Receiver has established and has continued to implement liquidation procedures and a process for the orderly and secure conversion of cryptocurrency assets in his possession into U.S. dollars to be received in the Receivership bank account. This process has included the liquidation of certain cryptocurrencies that had been held at a cryptocurrency exchange on behalf of the Receivership, as well as the liquidation of cryptocurrencies previously received in the Receivership's institutional cryptocurrency custody account. This process has been ongoing and commenced well in advance of the cryptocurrency market downturn that occurred in the Spring of 2022. During the Fall of 2022, the Receiver liquidated most of the Receivership's remaining cryptocurrency positions to protect against losses from the more recent cryptocurrency market downturn. The Receiver has established these liquidation procedures in a manner deemed most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

The Receiver Team continues its Investigation to identify all available asset sources. The Receiver Team has assembled data from dozens of bank accounts into a workable database that is being used to assess the sources and uses of funds into and out of the various Receivership Entities and provides a basis for potential actions for the recovery of Receivership Property. The Receiver Team has also obtained and is analyzing internal account information from certain cryptocurrency

---

[23] Receiver Order ¶ 30.

exchanges and continues to work with various cryptocurrency exchanges to obtain additional internal account records relevant to the Investigation. The Receiver Team is in the process of identifying additional cryptocurrency assets from other sources and is working to obtain relevant information from certain third parties that may have had dealings with Qin and/or the Receivership Entities. Additionally, the Receiver Team has taken a physical inventory of items in Qin's personal residence and has taken custody of certain items that are believed to be of value for eventual liquidation.

The Receiver Team continues to analyze investor data for both the Sigma and VQR Funds, which had limited books and records. Neither Fund had been audited and neither had any level of third-party accounting verification in the months leading up to the appointment of the Receiver. The Receiver Team's analysis of investor data has assisted in identifying potential claims held by the Receiver against third parties for the recovery of Receivership Property and is assisting the process of evaluating claims submitted by potential claimants through the electronic claims portal. The Receiver Team continues to analyze voluminous documents and data obtained to evaluate investor and investment activity, investigate the use of funds from 2017 through 2020, and determine if any other funds are recoverable for the Receivership Entities.

## VI. ADMINISTRATIVE EXPENSES

The Receiver has incurred expenses for legal services from BakerHostetler, forensic accounting and consulting services from Ankura, legal services from the Law of Office of Dennis Cohen, legal services from Nelsons, blockchain analytics tool services from the Blockchain Analytics Vendors, and tax and consulting services from Miller Kaplan. On October 4, 2021, the Court entered an Order granting in part the Receiver's Certified Initial Fee Application.[24] On

---

[24] Order Granting in Part Receiver's Certified Initial Fee Application, ECF No. 91.

November 9, 2021, the Court entered an Order granting the remainder of the Receiver's Resubmitted Certified Initial Fee Application and granting the Receiver's Certified Second Fee Application.[25] On January 20, 2022, the Court entered an Order granting the Receiver's Certified Third Fee Application.[26] On April 25, 2022, the Court entered an Order granting the Receiver's Certified Fourth Fee Application.[27] On July 25, 2022, the Court entered an Order granting in part the Receiver's Certified Fifth Fee Application.[28] On October 3, 2022, the Court entered an Order granting the remainder of the Receiver's Certified Fifth Fee Application.[29] On December 5, 2022, the Court entered an Order granting in part the Receiver's Certified Sixth Fee Application.[30] Payments have been made pursuant to these Orders. The Receiver provided details about the fees for BakerHostetler, Ankura, Nelsons, the Law of Office of Dennis Cohen, the Blockchain Analytics Vendors, and Miller Kaplan, in his first Quarterly Fee Application, which was filed with the Court on July 15, 2021;[31] his second Quarterly Fee Application, which was filed with the Court on October 15, 2021;[32] his third Quarterly Fee Application, which was filed with the Court on December 30, 2021;[33] his fourth Quarterly Fee Application, which was filed with the Court on March 30, 2022;[34] his fifth Quarterly Fee Application, which was filed with the Court on June 29, 2022;[35] his sixth Quarterly Fee Application, which was filed with the Court on September 28, 2022;[36] and his seventh Quarterly Fee Application, which was filed with the Court on December

---

[25] Order Granting the Receiver's Resubmitted Certified Initial Fee Application and the Receiver's Certified Second Fee Application, ECF No. 101.
[26] Order Granting the Receiver's Certified Third Fee Application, ECF No. 117.
[27] Order Granting the Receiver's Certified Fourth Fee Application, ECF No. 154.
[28] Order Granting in Part Receiver's Certified Fifth Fee Application, ECF No. 167.
[29] Order Granting Remainder of Receiver's Certified Fifth Fee Application, ECF No. 182.
[30] Order Granting in Part Receiver's Certified Sixth Fee Application, ECF No. 185.
[31] Receiver's Certified Initial Fee Application, ECF No. 66.
[32] Receiver's Certified Second Fee Application, ECF No. 93.
[33] Receiver's Certified Third Fee Application, ECF No. 113.
[34] Receiver's Certified Fourth Fee Application, ECF No. 149.
[35] Receiver's Certified Fifth Fee Application, ECF No. 155.
[36] Receiver's Certified Sixth Fee Application, ECF No. 179.

30, 2022.[37] The Receiver will provide further details about the fees for BakerHostetler, Ankura, Nelsons, the Law of Office of Dennis Cohen, the Blockchain Analytics Vendors, and Miller Kaplan, in his eighth Quarterly Fee Application, which will be filed with the Court at a later date and which will address fees for the period covered by this ninth status report.

The Receiver has incurred expenses related to winding down the relationships with certain vendors used by the Receivership Entities. The Receiver has paid certain vendor expenses, and expects to pay additional vendor expenses, using funds from the Receiver's bank account. Pursuant to the Court's Order on July 26, 2021, the Receiver returned certain funds to Caceis Bank Luxembourg Branch that had been erroneously transmitted to the Receivership Entities, less the cost of fees expended by the Receiver's forensic and legal teams in investigating and resolving the matter.[38] The Receiver has also incurred minimal expenses related to re-establishing access to certain data repositories formerly used by the Receivership Entities that the Receiver believes may contain data relevant to the Investigation. Additionally, the Receiver has incurred a minimal amount of standard transaction fees (sometimes referred to as "gas fees") associated with transferring cryptocurrency from Receivership Entity wallets to wallets controlled by the Receiver. These fees are mandatory payments to the owners of the computers that devote computer processing power, and incur associated electricity and other costs, to perform the computational work to validate transactions on a public blockchain. These fees are automatically collected from the cryptocurrency transferred at the time of the transaction.

## VII.    PROPOSED PLAN FOR ADMINISTERING THE RECEIVERSHIP

The Receiver is still identifying and securing Receivership Property on behalf of the Receivership Estate. The Receiver believes that there is additional Receivership Property that may

---

[37] Receiver's Certified Seventh Fee Application, ECF No. 186.
[38] Order Granting Receiver Permission to Return Funds to Caceis Bank Luxembourg Branch, ECF No. 70.

16

be recoverable for the Receivership Estate. However, further investigation is needed to identify any additional Receivership Property, and litigation may be necessary to recover certain Receivership Property. The Receiver has also taken steps that will result in an eventual Liquidation Plan by sending notice via electronic mail to all Identified Potential Claimants, issuing a Publication Notice to provide notice of the Bar Date and of the provisions of the Court's August 8, 2022 Order to all parties that may hold claims against the Receivership Estate, and launching an electronic claims portal to allow claimants who believe they are owed funds from the Receivership Entities to submit claims, update and provide additional information/documents to their claims, and track the status of their claims. In accordance with the Court's August 8, 2022, Order, the Bar Date to file all Claims against the Receivership Estate was 11:59 p.m. prevailing Eastern Time on December 6, 2022.[39]

The Receiver Team continues its work to validate the contributions and investments made to the Receivership Entities. Based on the information identified to date, the Receiver believes that substantial effort is still required to validate the contributions and investments and accurately determine what is owed to whom. The Receiver is cooperating with the SEC and the U.S. Attorney's Office for the Southern District of New York as part of these efforts.

The Receiver recommends that he be allowed to continue his Investigation to locate and secure additional Receivership Property that has been identified and validate the contributions and investments made to the Receivership Entities. In accordance with the Receiver Order[40] and the Court's Order of March 25, 2022,[41] the Receiver will submit another status update within fifteen days after the end of the first calendar quarter.

---

[39] Order Granting Receiver's Motion to Set Bar Date for Claims Against the Receivership Estate and to Approve Claim Form and Notice Procedures, ECF No. 168.
[40] Receiver Order ¶ 46.
[41] ECF No. 148.

Dated:  January 17, 2023                             Respectfully submitted,

/s/ Teresa Goody Guillén
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 1100
Washington, D.C. 20036
Tel.: (202) 861-1500
Facsimile: (202) 861-1783
Teresa Goody Guillén
tgoodyguillen@bakerlaw.com

45 Rockefeller Plaza
New York, NY 10111
Tel.: (212) 589-4200
Facsimile: (212) 589-4201
Marco Molina
mmolina@bakerlaw.com
Lauren Lyster
llyster@bakerlaw.com

*Attorneys for Receiver Robert A. Musiala, Jr.*

18