**GARY M. KAPLAN**
gkaplan@fbm.com
D 415.954.4940
**AVIVA J. GILBERT**
agilbert@fbm.com
D 415.954.4478

June 23, 2023

*Via ECF and Electronic Mail*

The Honorable Lorna G. Schofield, District Judge
United States District Court - SDNY
*schofield_nysdchambers@nysd.uscourts.gov*

Re: Third-Party Response to Letter filed by Receiver's Counsel in *Securities and Exchange Commission v. Qin, et al.*; 20-cv-10849 (LGS).

Dear Judge Schofield:

We represent Nasir Adaya and Phuong Nguyen, neither of whom are parties to the above-referenced case, and who are victims of defendant Stefan Qin's misconduct. Pursuant to Your Honor's Individual Rules and Procedures for Civil Cases III.A.1, we write to respond to the letter the Receiver's counsel filed on Thursday, June 15, which we received the evening of June 16. By this letter we **ask the Court to vacate or continue the briefing schedule entered at docket 204, and to order instead that our clients transfer the total disputed amount ($3,500,000) into a third-party escrow** account so that it may be safeguarded while the merits of the Receiver's claim are litigated after discovery and a fair process. This would remove the Receiver's purported exigency and allow our clients to obtain sufficient information to respond to the drastic relief sought in the Receiver's anticipated motion. Mr. Adaya and Ms. Nguyen also request the Court enter an order permitting them to access certain relevant information the Receiver controls and to conduct a limited amount of their own discovery so they can appropriately respond to such motion, as described in more detail below.

The Receiver's letter substantially overstates the amount in dispute and makes numerous erroneous assertions, stating the Receiver's presumed litigation position as uncontroverted fact. The letter also ignores the fact that Mr. Adaya—not the Receiver— raised this matter of his own accord over seven months ago seeking information and a resolution and has done absolutely nothing to dissipate any funds. To the contrary, Mr. Adaya (and Ms. Nguyen) have cooperated at every turn, submitting to interviews, providing documents, and responding to subpoenas from the Receiver. While $529,000 of the assets in question may well be receivership property, the remaining $3 million (the "disputed assets") are not property of the Receivership Estate, as we expect to prove after conducting appropriate discovery that due process requires before we can fairly oppose the Receiver's anticipated motion.

I. There is No Risk of Dissipation Given Mr. Adaya's Conduct and Escrow Alternative.

Mr. Adaya was an employee (quantitative asset trader) of various businesses formerly controlled by defendant Stefan Qin, until the entities imploded due to Qin's fraud. Adaya occasionally took on side jobs, including for the third-party owner of the disputed assets at issue here. Adaya has suffered tremendously due to Qin's conduct; he had the rug pulled out from under him, professionally speaking, when the fraud was discovered. Adaya has tried to re-start his career and rebuild in the years since. He has filed a claim with the receivership estate for substantial commissions he is owed for work he did for Qin's entities and for which he was never paid. Mr. Adaya is thus a victim, rather than Qin's co-conspirator or a thief, as the Receiver's letter implies.



Mr. Adaya, in addition to the extensive cooperation referenced in part above, was the one who raised concerns beginning in December 2022 about the disputed assets and the Receiver's inappropriate direction to Binance to freeze the entirety of an account owned by Ms. Nguyen which Mr. Adaya uses to trade digital assets (his job). Mr. Adaya has not avoided addressing this matter; rather, he sought information from the Receiver because the Receiver's conduct has impeded his ability to earn a living. The Receiver stonewalled him and then, in the last ten minutes of the deposition to which Mr. Adaya agreed, finally introduced documents that helped Mr. Adaya piece together some aspects of the Receiver's position. Based on that information, Mr. Adaya agrees that $529,000 is the approximate value of assets he understood to be Qin's which were erroneously transferred out of VQR once word of Qin's fraud started spreading.

There is no meaningful risk of dissipation, and certainly no showing of exigency that justifies ordering Mr. Adaya and/or Ms. Nguyen to transfer $3.5 million without permitting a fair exchange of information and a process in which Mr. Adaya may appropriately respond to the Receiver's draconian motion. While **the Receiver asserts there is great risk of dissipation, he offers no evidence of this, but instead acknowledges that the subject funds remain in the account.** The Receiver inexplicably fails to mention that he directed Binance to freeze the subject account in its entirety, a disproportionate request, so Mr. Adaya and Ms. Nguyen cannot actually "move the Assets outside [of] reach" in any event, as the Receiver knows.

Further, Binance and the SEC reached a court-approved agreement on June 17 to address customer funds' security, and thus the Receiver's apparent concern about the SEC's suit against Binance and its viability should be assuaged. Moreover, Mr. Adaya and Ms. Nguyen's willingness to transfer into a third-party escrow account assets from the Binance account (which would require the Receiver unfreezing such account) with a value in the full amount the Receiver seeks—$3.5 million--should accomplish the Receiver's goal of ensuring that the disputed assets do not dissipate pending resolution of this matter.

II. The Receiver Order Does Not Permit the Receiver to Obtain Proceeds of Traded Third Party-Owned Assets.

The disputed assets are not receivership property; VQR never owned and did not "secure title" to any INJ tokens at any point. We expect that the Receiver's conclusory assertion will not be borne out by the evidence, which instead should show that those tokens belonged to a third party and Mr. Adaya agreed to engage in market-making work for that third party to develop a price and value for those tokens, for which he contracted and was later paid by that third party. Mr. Adaya must be permitted to collect his own evidence in order to fairly respond to the drastic relief sought by the Receiver's anticipated motion.

Further, it is inappropriate to base a request for an order forcing an innocent third party to transfer more than $3 million on unsubstantiated calculations that the Receiver's accountant admittedly abandoned because they became "impractical," and which are premised on an undisclosed valuation methodology. Mr. Adaya is entitled to understand how the Receiver is valuing the disputed assets, how far his tracing went, and to an accounting that he can fairly challenge in an adversarial process. The Receiver Order does not permit the Receiver to grab millions of dollars from an innocent third party based on guesswork regarding asset ownership, location and value, particularly because the disputed assets do not constitute Receivership Property under the Receiver Order.[1]

[1] Under § I.7.A of the Receiver Order, Receivership Property is limited to "property interests" of the Receivership Entities and "profits, dividends, interest, or other income" attributable to such property interests that the



III. Discovery is Required as a Matter of Fairness and Due Process.

In view of the drastic relief sought by the Receiver's anticipated motion, the substantial factual disputes which must be determined to adjudicate such motion, and the remediation of the purported exigency through the third-party escrow proposed above, Mr. Adaya should be provided an appropriate opportunity to conduct discovery and obtain information the Receiver has to date refused to share.

There is an information asymmetry here wherein, absent the Court vacating the briefing schedule, ordering escrow, and permitting discovery, Mr. Adaya would be forced to respond to the Receiver's demands without understanding their factual basis and without access to the relevant data sources or time to gather the evidence available to respond to the drastic relief the Receiver seeks. The Receiver has been conducting his work for years; Mr. Adaya and Ms. Nguyen should be permitted at least a few weeks to marshal their own evidence. Further, Mr. Adaya is entitled to communications and records that the Receiver has collected as a matter of fairness and due process. He must also be able to subpoena at least two individuals involved in the subject transactions. Prior to resolving this matter through any litigation, due process requires that Mr. Adaya be permitted to conduct appropriate and limited discovery.

Given the foregoing, Mr. Adaya and Ms. Nguyen respectfully request the Court authorize and direct that they to transfer into a third-party escrow account the full amount in dispute ($3.5 million) in conjunction with the Receiver releasing the freeze on the subject Binance account, and providing that such escrowed funds may not be disbursed in the absence of the written agreement of the parties or the Court's order. They further request that the Court vacate the briefing schedule and enter an order permitting them a reasonable period to conduct discovery, followed by an appropriate period to oppose the Receiver's anticipated motion.

Sincerely,

Aviva J.B. Gilbert

Gary M. Kaplan

41410\16229587.5

---

Receivership Entities "own, possess, or have a beneficial interest in, or control directly or indirectly." The Receiver's letter acknowledges the disputed assets are not property interests that the Receivership Entities own or have a beneficial interest in, but instead argues they are "profits, dividends, interest, or other income" attributable to ***former*** property interests of the Receivership Entities because they "likely" are proceeds of assets that were initially taken by Qin from VQR and subsequently transferred through multiple parties, although the Receiver acknowledges that "extensive trading activity has made it impractical, and perhaps impossible, for the Receiver and his forensic accountant to discern exactly which of the [disputed] assets derive directly or indirectly from the stolen assets." But, "proceeds" are not "profits, dividends, interest, or other income" of property interests of the Receivership Entities. Indeed, other courts' federal receivership orders have reflected this distinction. *See, e.g.*, *SEC v. Global Online Direct, Inc.*, No. 1:07-CV-0767-WSD, ECF No. 12, at 6, 16-17 (N.D. Ga. June 4, 2007) (directing receiver to take control of all "income, earnings, rents and profits of the Receiver Estate," in addition to taking control of "proceeds" of property interests of Receivership Estate); *Citizens Bank v. JES Global Capital, L.P.*, No. 9:21-cv-080815-AMC, ECF No. 28, at 3–4, 10 (S.D. Fla. May 14, 2021) (directing receiver to take control of all "profits, dividends, interest, or other income" of the receivership entities, in addition to taking over control of "proceeds" of receivership estate property); *see also CFTC v. Peregrine Finan. Grp., Inc.*, No. 1:12-cv-05383, ECF No. 28, at 4 (N.D. Ill. Jul. 17, 2012) (directing receiver to take control of "proceeds" of receivership estate property).