# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

**By ECF**                                                                                  July 14, 2023

The Honorable Lorna G. Schofield
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *United States Securities and Exchange Commission v. Qin*, No. 20-cv-10849 (LGS)

Dear Judge Schofield:

On behalf of Robert A. Musiala, Jr., the Court-appointed receiver ("Receiver") in the above-referenced litigation, and pursuant to the Court's July 7, 2023 order (ECF No. 219), we write in response to the letters ("Respondent Letters") sent on behalf of Nasir Adaya ("Adaya") and Phuong Nguyen ("Nguyen," and together with Adaya, "Respondents") (ECF Nos. 214, 216). In their letters, Respondents ask that the Court (1) direct the Receiver to request a lift of the current freeze on Nguyen's account ("Nguyen Account") held offshore on the Binance exchange and direct that the amount in dispute be transferred to a third-party escrow account; (2) permit a discovery period; and (3) vacate the current ten-day briefing schedule.

As detailed below, the Receiver agrees that the freeze should be lifted so that the assets currently in dispute may be preserved in a third-party escrow account. The Receiver is willing to agree to meet and confer with Respondents, permit limited discovery, and enlarge the briefing schedule, as set forth below.

## I.   Background

The Receiver is required to marshal, preserve, and prevent the dissipation of Receivership Property.[1]  As explained in his June 15, 2023 letter to the Court (ECF No. 202), the Receiver identified $3.5 million in assets ("Disputed Assets") he deemed Receivership Property that were wrongly in the Respondents' custody.  In the letter, the Receiver requested leave to file a motion for an order compelling the turnover of the Disputed Assets from the Nguyen Account ("Motion").[2]  On June 22, 2023, the Court granted the Receiver's request to file the Motion and set a briefing schedule (ECF No. 204).  Respondents thereafter filed the Respondent Letters, and the Receiver requested permission from the Court to allow him to file a declaration that exceeded the Court's prescribed page and exhibit limits (ECF No. 210).

---

[1] *See* Order Appointing Receiver (ECF No. 31) ("Receiver Order"), at 2 and § I.7.G.
[2] On June 13, 2023, the Receiver provided Respondents' counsel with a draft copy of the Motion.

Atlanta    Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa    Dallas    Denver    Houston
Los Angeles    New York    Orlando    Philadelphia    San Francisco    Seattle    Washington, DC    Wilmington

### II.     Lifting the Freeze and Transferring the Disputed Assets to a Third-Party Escrow

The Nguyen Account is currently frozen by Binance, as requested by the Receiver pursuant to his duties under the Receiver Order.  The Disputed Assets are currently at risk of dissipation in their present location due to multiple factors, including government investigations and legal actions against Binance.[3]  As such, the Receiver is willing to request the freeze be lifted, so that the Disputed Assets can be transferred to a third-party escrow account as outlined below.

The Disputed Assets consist of $3.5 million in various cryptocurrencies.  With fiat currency, transferring funds into escrow is straight-forward.  Here, however, the transfer is complicated because many of the cryptocurrencies in the Nguyen Account are not accepted by U.S.-based custodians, and, to the best of the Receiver's knowledge, there are no capable third-party escrow agents that will custody $3.5 million in cryptocurrencies.  Therefore, the Receiver requests that if the freeze on the Nguyen Account is lifted, the Disputed Assets be (1) converted into bitcoin ("BTC"), which *is* accepted by U.S.-based custodians, (2) transferred to a U.S.-based cryptocurrency exchange account, (3) liquidated into U.S. dollars ("USD") (for which a U.S.-based escrow agent can easily be found), and, (4) transferred to a U.S.-based third-party bank escrow account, to be mutually agreed upon by the Receiver and the Respondents.  Each step is set forth in detail below.

#### A.     Converting the Assets to BTC

The Disputed Assets are denominated in various cryptocurrencies, most of which cannot be accepted by U.S.-based custodians.  Binance, a foreign exchange, does not support or allow for the withdrawal of USD.  Therefore, the Receiver respectfully suggests that the following procedure be followed to convert the Disputed Assets to BTC for their further conversion to USD: (1) within two business days of this Court's order, the parties shall meet and confer to confirm which tokens within the Nguyen Account will be converted to BTC;[4] (2) within 24 hours of Binance lifting the freeze, on a recorded video call with the Receiver, the Respondents will convert $3.5 million in tokens into BTC for transfer, as outlined below.

#### B.     Transferring the Digital Assets

Once the Disputed Assets have been converted to BTC, they can be transferred to an exchange that can liquidate the BTC into USD.  To minimize the cost and time of onboarding a new account at a new exchange, the Receiver proposes to use the insured institutional custody account that he already has with Coinbase ("Coinbase Account"), which can both receive BTC and convert BTC into USD.  Using the Coinbase Account as the temporary recipient of the Disputed Assets is optimal because opening a new account would add time and complexity.[5]  Within 24 hours

---

[3] The Consent Order in *SEC v. Binance Holdings, Ltd.*, No. 23-1599, ECF No. 71 (D.D.C. June 17, 2023) referenced in the Respondent Letters relates only to customer funds held on the U.S.-based Binance platform.  The Disputed Assets are held on the foreign-based Binance platform.
[4] The current value in the Nguyen Account exceeds $3.5 million.
[5] Completing the account opening procedures at a U.S.-based cryptocurrency exchange can take several weeks and would likely take even longer under these unique circumstances.  One key issue that could become a source of contention is who would be named on and have control over the account.  In addition, as a result of converting the BTC to USD, there would be significant tax implications for the person named on the account.

following conversion of the Disputed Assets to BTC, Respondents, on a recorded video call with the Receiver, will transfer the BTC from the Nguyen Account to the Coinbase Account.

### C. Converting the BTC to USD and Transferring the USD to an Escrow Account

Due to the lack of cryptocurrency escrow agents and the fluctuating prices of cryptocurrencies, the Receiver requests that the Disputed Assets then be liquidated from BTC to USD. Specifically, within 48 hours of receipt of the BTC into the Coinbase Account, the Receiver, on a recorded video call with the Respondents, will liquidate the BTC into USD within the Coinbase Account. Within 24 hours after the conversion, the U.S. dollar funds will be wired to a third-party escrow agent/account at a U.S. bank, to be mutually agreed upon by the parties.

### III. Allowing for a Meet and Confer and Discovery Period

Respondents appear to have indicated that $529,202.16 of the Disputed Assets ("Sigma Assets") constitutes Receivership Property.[6] As such, the only facts that remain at issue in this matter are those relating to the ownership of the approximately $3 million dollars' worth of proceeds linked to the INJ tokens ("VQR Assets") described in the Receiver's July 15 letter (ECF No. 202).

Provided that Respondents stipulate that the Sigma Assets constitute Receivership Property, the Receiver would be willing to withdraw his request (ECF No. 210) to file an extended version of the supporting declaration for the Motion, which primarily focuses on the Sigma Assets tracing.

The Receiver would agree to limited discovery. He proposes that the parties meet and confer to discuss the scope of discovery and work together to effect the same in a cost-effective and time-efficient manner. To that end, the Receiver proposes the following discovery schedule:

> (1) within three business days following entry of an order by the Court on this issue, the parties meet and confer to generate a list of (a) stipulated facts; (b) disputed facts; and (c) discovery requests related to the disputed facts;

> (2) following the completion of the above, the parties conduct limited discovery, to be completed within 14 days.

### IV. Enlarging the Briefing Schedule

Following discovery, the Receiver proposes: (1) seven days after discovery concludes, the Receiver will file the Motion; (2) within 14 days after the Motion is filed, Respondents will file their opposition; (3) within seven days after the opposition is filed, the Receiver will file his reply.

We thank your Honor for the consideration of this request.

Respectfully submitted,

*Teresa Goody Guillén* (signature)

Teresa Goody Guillén

---

[6] *See* ECF 214 at ¶¶ 2 and 4 ("…$529,000 of the assets in question may well be receivership property;" "Mr. Adaya agrees that $529,000 is the approximate value of assets he understood to be Qin's which were erroneously transferred out of VQR once word of Qin's fraud started spreading.").