**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>STEFAN QIN, VIRGIL TECHNOLOGIES LLC, MONTGOMERY TECHNOLOGIES LLC, VIRGIL QUANTITATIVE RESEARCH, LLC, VIRGIL CAPITAL LLC, and VQR PARTNERS LLC,<br><br>　　　　　　Defendants. | Case No.: 20-cv-10849 (JGLC)<br><br>**THIRD PARTY RESPONDENTS' NOTICE OF MOTION AND MOTION TO STRIKE SPECIFIED PARAGRAPHS OF THE DECLARATION OF MARK PORTER IN SUPPORT OF RECEIVER'S MOTION TO COMPEL TURNOVER OF ASSETS (DOCKET NO. 234)** |

41410\16426983.8

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that third party respondents, Nasir Adaya and Phuong Nguyen ("Respondents"), by and through their undersigned counsel, will, and hereby do, move this Court, before the Honorable Jessica G. L. Clarke, United States District Judge for the Southern District of New York, Courtroom 20C at the United States District Court for the Southern District of New York, located at 500 Pearl Street, New York, New York, 10007-1312, for entry of an order striking the second sentence in paragraph 5 and the entirety of paragraphs 6-9, 101-103, and 118 (collectively, the "Objectionable Portions") of the Declaration of Mark Porter in Support of Receiver's Motion to Compel Turnover of Assets filed herein on August 4, 2023 as Docket No. 234 (the "Porter Declaration"). The grounds for the motion are that the specified portions of the Porter Declaration contain unqualified expert opinion testimony in contravention of Federal Rule of Evidence ("FRE") 702, and improper lay witness opinion testimony in contravention of FRE 701. The Motion to Strike is based on this Notice of Motion and Motion and the accompanying Objections to Evidence and Memorandum of Points and Authorities in support.

Dated: October 27, 2023                                              Respectfully,

*[signature: Gary Kaplan]*

Gary M. Kaplan (California State Bar No. 155530), *admitted pro hac vice*
Aviva J.B. Gilbert (California State Bar No. 300091) *admitted pro hac vice*
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, California 94104
Telephone: (415) 954-4400

*Attorneys for Third Party Respondents Nasir Adaya and Phuong Nguyen*

### OBJECTIONS TO EVIDENCE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE

Respondents, in connection with their opposition to the Motion to Compel Turnover of Assets (the "Turnover Motion," Docket No. 232) filed by the receiver, Robert A. Musiala, Jr. ("Receiver"), hereby submit these objections to the Porter Declaration submitted in support of the Turnover Motion. On the basis of these objections, Respondents request that the Court strike the Objectionable Portions from the Porter Declaration as unqualified expert opinion testimony and improper lay witness opinion testimony, as they do not constitute admissible evidence, and thus should not be considered in adjudicating the Turnover Motion.

I. **THE OBJECTIONABLE PORTIONS OF THE PORTER DECLARATION SHOULD BE STRICKEN AS UNQUALIFIED EXPERT OPINION TESTIMONY AND IMPROPER LAY WITNESS OPINION TESTIMONY**

The Objectionable Portions of the Porter Declaration should be stricken as improper pursuant to applicable provisions of the Federal Rules of Evidence. The Porter Declaration does not establish that Mr. Porter is qualified as an expert pursuant to FRE 702.[1] Further, at his deposition, Mr. Porter admitted that he was not an expert with respect to the matters as to which he testified in his declaration.[2] When asked whether he had been retained in the matter to conduct a forensic accounting and analysis with respect to the transactions discussed in the Porter Declaration, Mr. Porter responded, "I have not." Transcript of Deposition of Mark Porter, Oct. 12, 2023, ("Porter Dep."), attached as Exhibit I to the Declaration of Aviva Gilbert in Support of Respondents' Opposition to the Turnover Motion filed contemporaneously herewith,

---

[1] Fed. R. Evid. Provides in relevant part: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion . . . ."

[2] Likewise, Receiver's counsel has maintained that Mr. Porter is not an expert witness and thus not required to provide an expert report in accordance with Federal Rule of Civil Procedure 26(a)(2)(B). *See* Declaration of Aviva Gilbert, ¶ 12.

at 23:6-10.  Mr. Porter also testified that his role was limited to tracing assets and that he did not perform any related analysis with respect to that tracing (*id.* at 23:19-22), and that he "wasn't asked to give any opinions" (*id.* at 24:6-7).  Further, when asked whether his specialized knowledge and training was at all useful or used in his analysis described in the Porter Declaration, Mr. Porter replied, "I don't believe it's necessary." *Id*. at 34:7-10. Accordingly, the statements in Mr. Porter's Declaration that purport to be opinions provided as an expert are inadmissible and should be stricken because he is not a properly qualified expert with respect to such matters.

The Objectionable Portions of the Porter Declaration are also not proper lay witness opinion testimony. FRE 701 requires that opinion statements from a lay witness not testifying as an expert must be "rationally based on the witness's perception" and "not based on scientific, technical, other specialized knowledge within the scope of Rule 702."  Mr. Porter has no personal knowledge of any of the matters (such as the source or ownership of assets) as to which he testifies, nor did he perceive the transactions on which he purports to opine.  A court may strike a declaration when an individual is applying their expertise to information the individual did not personally perceive and has not been properly designated as an expert.  *See DVL, Inc. v. Niagara Mohawk Power Corp.*, 490 F. App'x 378, 380 (2d Cir. 2012); *Alto v. Sun Pharm. Indus., Inc.*, No. 1:19-CV-09758-GHW, 2021 WL 4803582, at *14 (S.D.N.Y. Oct. 13, 2021); *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, No. 11-CV-726 CBA, 2013 WL 4409434, at *12, *16 (E.D.N.Y. Aug. 2, 2013).

Mr. Porter provides numerous unqualified expert opinions and improper lay witness opinions in his declaration, all of which should be stricken. First, he asserts that he used the Last In First Out ("LIFO") methodology to conduct the tracing about which he testifies, but provides

no information that qualifies him as an expert for the LIFO methodology, or for any other type of digital asset tracing methodology for that matter. Asserting in his declaration that he is a "seasoned forensic accountant with more than six years of experience" with no reference to his experience with the LIFO methodology, is insufficient to qualify him as an expert. While he testified that he had "an understanding of the LIFO methodology" (Porter Dep., 35:15-18), he did not claim particular expertise in such regard. Indeed, Mr. Porter acknowledged that a layperson could have performed the same tracing that he did as long as they were instructed to use a "last in, first out" methodology. *Id.*, 35:22-36:4. Mr. Porter additionally admitted during his deposition that he has never testified as an expert either in a trial or a deposition and that he has never published anything professionally. *Id*. at 40:6-11. Based on the purported use of this methodology, Mr. Porter improperly characterizes and opines on the sources and ownership of the assets in dispute. For example, in Paragraph 102 of his declaration, Mr. Porter asserts that "VQR Assets refer to approximately $3 million dollars' worth of digital assets derived from 990,726.23 Injective Tokens ('INJ') that were transferred from the Receivership Estate to Adaya…" Mr. Porter's characterization of assets as "derived" is an opinion, and his statement that Injective tokens were "transferred from the Receivership Estate to Adaya" is both a reference to a transaction about which he has no personal knowledge or perception, and an opinion regarding ownership of assets which he has no expertise to offer.

Further, Mr. Porter makes opinion statements throughout his declaration regarding information about which he has no personal knowledge. For example: Mr. Porter asserts in Paragraph 102 of his declaration that "I have reason to believe that commingled proceeds derived from the Sigma Assets were transferred to and remain in the Nguyen Account;" and he asserts in Paragraph 118 of his declaration that "I have reason to believe that commingled proceeds derived

from the Sigma and VQR Assets were transferred from the Yenamandra Account to, and remain in, the Nguyen Account." Such opinions are improper as Mr. Porter has no personal knowledge of purported asset transfers, no personal knowledge of which assets are in the Nguyen Account, and, critically, no personal knowledge nor qualified expertise sufficient to opine on or characterize the ownership of any disputed asset. Mr. Porter's repeated "reason to believe" testimony constitutes purported opinion testimony regarding matters that he has neither personal knowledge nor established expertise.

Such unqualified expert opinion and improper lay witness opinion testimony should be stricken.

| Objections to the Porter Declaration | | |
|---|---|---|
| **Material Objected To** | **Grounds for Objection**[3] | **Court's Ruling** |
| 1. **Paragraph 5, Sentence 2:** ". . . Commonly used to trace assets, the LIFO methodology adheres to Generally Accepted Accounting Principles ("GAAP") and is widely accepted by courts…." | **Improper expert opinion, Fed. R. Evid. 702.** Mr. Porter has not been qualified as an expert in LIFO methodology, and testified at his deposition that he is not an expert with respect to the matters in which he testified in his declaration. | ☐ Sustained<br>☐ Overruled |
| 2. **Paragraph 6 and corresponding footnotes:** "Between March 2019 and January 2021, Adaya diverted approximately $3.5 million dollars' worth of digital assets ("Disputed Assets") from the Receivership Estate [Footnote 1] to two accounts that he controlled: (i) a Binance account registered under the name of Nguyen ("Nguyen Account") [Footnote 2] and (ii) an unhosted bitcoin ("BTC") wallet address | **Improper expert opinion, Fed. R. Evid. 702.** Mr. Porter has not been qualified as an expert with respect to the statements of opinion in the referenced portions of his declaration, and testified at his deposition that he is not an expert with respect to the matters in which he testified in his declaration. Mr. Porter's opinions regarding ownership and location of the assets in question is improper opinion testimony of a lay witness. | ☐ Sustained<br>☐ Overruled |

---

[3] The grounds for objection listed below are presented in summary format. See above discussion for further discussion of such grounds.

| **Objections to the Porter Declaration** | | |
|---|---|---|
| **Material Objected To** | **Grounds for Objection[3]** | **Court's Ruling** |
| ending in "vwca" ("Adaya BTC Wallet"). [Footnote 3]"<br><br>**Footnote 1:** "'Receivership Estate' is defined as 'all property interests of the Receivership Entities and all other Recoverable Assets, including, but not limited to, monies, funds, securities, digital assets, credits, effects, goods, chattels, lands, premises, leases, claims, rights, and other assets, together with all rents, profits, dividends, interest, or other income attributable thereto, of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly.' Order Appointing Receiver, SEC v. Qin, (Jan. 21, 2021) ECF 31, at ¶ 7.A.."<br><br>**Footnote 2:** "The Nguyen Account refers to Binance master account with User ID ending in 8310 and its related sub-accounts. Pursuant to Federal Rule of Civil Procedure 5.2, redactions have been applied throughout this Declaration and the attached exhibits to protect confidential personal and financial information."<br><br>**Footnote 3:** "A wallet address is an alphanumeric string from and to which cryptocurrencies can be sent. It can be shared with different contacts like an email address. Coinbase, *Help: Wallet Address,* https://help.coinbase.com/en/coinbase/getting-started/cryptoeducation/glossary/wall | **Improper Lay Opinion; Lack of Personal Knowledge, Fed. R. Evid. 701.** Mr. Porter lacks personal knowledge regarding the transactions and ownership of assets on which he purports to opine in the referenced portions of his declaration. | |

| Objections to the Porter Declaration |||
|---|---|---|
| **Material Objected To** | **Grounds for Objection[3]** | **Court's Ruling** |
| et-address (last accessed on June 23, 2023). A wallet can be hosted or unhosted. A "hosted" wallet is one in which the funds contained within are controlled and custodied by a financial institution known as an "exchange" such as Coinbase or Binance. Conversely, an "unhosted" wallet is one in which the funds contained within are controlled and custodied by the user directly. Unhosted wallets may be accessed using software applications, including Metamask, Electrum, or MyEtherWallet ("MEW"). *See* Requirements for Certain Transactions Involving Convertible Virtual Currency or Digital Assets, 85 Fed. Reg. 83840 (Dec. 23, 2020) (amending 31 C.F.R. §§ 1010, 1020, and 1022), available at https://www.govinfo.gov/content/pkg/FR-2020-12-23/pdf/2020-28437.pdf." | | |
| 3. **Paragraph 7:** "The Disputed Assets consist of (a) approximately $3 million dollars' worth of digital assets that are traceable to (i) Sigma Fund investors ("Sigma Assets") and (ii) VQR-owned and -controlled exchange accounts ("VQR Assets") and (b) 20.03 bitcoin ("BTC")." | **Improper expert opinion, Fed. R. Evid. 702.** Mr. Porter has not been qualified as an expert with respect to the statements of opinion in the referenced portions of his declaration, and testified at his deposition that he is not an expert with respect to the matters in which he testified in his declaration. Mr. Porter's opinions regarding ownership and location of the assets in question is improper opinion testimony of a lay witness.<br><br>**Improper Lay Opinion; Lack of Personal Knowledge, Fed. R. Evid. 701.** Mr. Porter lacks personal | ☐ Sustained<br>☐ Overruled |

| Objections to the Porter Declaration | | |
|---|---|---|
| **Material Objected To** | **Grounds for Objection[3]** | **Court's Ruling** |
| | knowledge regarding the transactions and ownership of assets on which he purports to opine in the referenced portions of his declaration. | |
| **4. Paragraph 8 and corresponding footnotes:** "At a high level, the Sigma Assets can roughly be traced from the Receivership Estate to Adaya in six steps:<br><br>(a) Step 1: Fiat currency was deposited by Sigma Fund investors into one of two accounts at Commonwealth Bank of Australia ("CBA") registered in the name of Virgil Capital Pty Ltd. (the predecessor to Virgil Capital LLC, Sigma Fund's General Partner), which Qin controlled and continued to use to accept investor funds for purported investment into the Sigma Fund — an account ended in x2114 and an account ended in x0146 ("Virgil CBA x2114" and "Virgil CBA x0146," respectively, and, together, the "Virgil CBA Accounts");<br><br>(b) Step 2: The fiat currency was then transferred to one of two personal bank accounts in Qin's name: a Chase Private Client Account ending in x7059 ("Qin Chase Account") and a CBA account ending in x8375 ("Qin CBA Account" and, together with the Qin Chase Account, "Qin Personal Accounts");<br><br>c) Step 3: The fiat currency was then transferred to one of three over-the- | **Improper expert opinion, Fed. R. Evid. 702.** Mr. Porter has not been qualified as an expert with respect to the statements of opinion in the referenced portions of his declaration, and testified at his deposition that he is not an expert with respect to the matters in which he testified in his declaration. Mr. Porter's opinions regarding ownership and location of the assets in question is improper opinion testimony of a lay witness.<br><br>**Improper Lay Opinion; Lack of Personal Knowledge, Fed. R. Evid. 701.** Mr. Porter lacks personal knowledge regarding the transactions and ownership of assets on which he purports to opine in the referenced portions of his declaration. | ☐ Sustained<br>☐ Overruled |

| Objections to the Porter Declaration |||
|---|---|---|
| **Material Objected To** | **Grounds for Objection[3]** | **Court's Ruling** |
| counter ("OTC") trading desks [Footnote 4] — QCP Capital Pte Ltd. ("QCP Capital"); Galois Capital Alpha Fund, LP ("Galois"); and OS Limited ("OSL")—where it was converted into cryptocurrency (QCP Capital, Galois, and OSL may collectively be referred to as "OTC Trading Desks"); <br><br>(d) Step 4: The resultant cryptocurrency was then transferred to one of three cryptocurrency exchange accounts in Qin's name — an account on Binance ("Qin Binance Account"); [Footnote 5] an account on Bitfinex ("Qin Bitfinex Account"); and an account on BitMEX ("Qin BitMEX Account") (the Qin Binance Account, Qin Bitfinex Account, and Qin BitMEX Account may collectively be referred to as "Qin Exchange Accounts"); <br><br>(e) Step 5: The cryptocurrency was then transferred from Qin Exchange Accounts to a Binance account registered in the name of Srihari Yenamandra ("Yenamandra Account") [Footnote 6] and controlled by Adaya; [Footnote 7] and <br><br>(f) Step 6: After being traded extensively for and commingled with other assets, the resultant cryptocurrency (and proceeds thereof) was transferred from the Yenamandra Account to the Nguyen Account." | | |

| Objections to the Porter Declaration |||
|---|---|---|
| **Material Objected To** | **Grounds for Objection[3]** | **Court's Ruling** |
| **Footnote 4:** "In traditional finance, OTC is the process of trading securities via a broker-dealer network as opposed to on a centralized exchange (such as the New York Stock Exchange). Chris Murphy, What Is Over-the-Counter (OTC)?, INVESTOPEDIA (Apr. 24, 2023), https://www.investopedia.com/terms/o/otc.asp. In cryptocurrency, an OTC desk is a third-party entity that helps to facilitate a direct trade between parties without the need for a centralized exchange. OTC desks are usually used to purchase large quantities of an asset in order to improve transparency, save time and fees, and to maintain security of the asset purchased. Over-the-Counter (OTC) Trading, CRYPTOPEDIA, https://www.gemini.com/cryptopedia/search?query=Over-the-Counter%20(OTC)%20Trading." <br><br> **Footnote 5:** "The Qin Binance Account refers to the master account with a User ID ending in 3517 and all related subaccounts." <br><br> **Footnote 6:** "The Yenamandra Account refers to the master account with a User ID ending in 9897 and all related subaccounts." <br><br> **Footnote 7:** "Transcript of Dep. of Nasir Adaya, Mar. 7, 2023, 143:14-144:17, attached as Exhibit 2 to Molina Decl." | | |
| **5. Paragraph 9 and corresponding footnotes:** "At a high level, the VQR Assets can be traced from the | **Improper expert opinion, Fed. R. Evid. 702.** Mr. Porter has not been qualified as an expert with respect to | ☐ Sustained <br> ☐ Overruled |

| Objections to the Porter Declaration |||
|---|---|---|
| **Material Objected To** | **Grounds for Objection[3]** | **Court's Ruling** |
| Receivership Estate to Adaya in four steps as follows:<br><br>(a) <u>Step 1</u>: Cryptocurrency tokens were deposited into and subsequently traded within an account on Binance controlled by VQR ("VQR Binance Account" – which consists of the master account ("VQR Binance Master Account") [Footnote 8] and its related subaccount ("VQR Binance Sub-Account"); [Footnote 9]<br><br>(b) <u>Step 2</u>: Certain trading proceeds were then transferred from the VQR Binance Account to one of two unhosted wallets controlled by Adaya: a wallet ending in "Deefa" ("Deefa Wallet") and Adaya BTC Wallet (and together with the Deefa Wallet, "Adaya Wallets");<br><br>(c) <u>Step 3</u>: The proceeds were then transferred from the Deefa Wallet to the Yenamandra Account and Nguyen Account; and<br><br>(d) <u>Step 4</u>: After additional and extensive trading for and commingling with other assets, the proceeds from the Yenamandra Account were ultimately transferred to the Nguyen Account."<br><br>**Footnote 8:** "The VQR Binance Master Account refers to the master account with a User ID ending in 4083." | the statements of opinion in the referenced portions of his declaration, and testified at his deposition that he is not an expert with respect to the matters in which he testified in his declaration. Mr. Porter's opinions regarding ownership and location of the assets in question is improper opinion testimony of a lay witness.<br><br>**Improper Lay Opinion; Lack of Personal Knowledge, Fed. R. Evid. 701.** Mr. Porter lacks personal knowledge regarding the transactions and ownership of assets on which he purports to opine in the referenced portions of his declaration. | |

| **Objections to the Porter Declaration** | | |
|---|---|---|
| **Material Objected To** | **Grounds for Objection**[3] | **Court's Ruling** |
| Footnote 9: "The VQR Binance Sub-Account refers to an account with a User ID ending in 5275." | | |
| 6. **Paragraph 101:** "Based on (a) my tracing of the Sigma Assets to the Yenamandra Account, coupled with (b) the fact that I have not been able to identify the return by Adaya of any Sigma Assets to Qin or the Receivership Entities, (c) the extensive trading and commingling of the Sigma Assets within the Yenamandra Account, and the (d) final transfers of the Yenamandra Account balance to the Nguyen Account, I have reason to believe that commingled proceeds derived from the Sigma Assets were transferred to and remain in the Nguyen Account." | **Improper expert opinion, Fed. R. Evid. 702.** Mr. Porter has not been qualified as an expert with respect to the statements of opinion in the referenced portions of his declaration, and testified at his deposition that he is not an expert with respect to the matters in which he testified in his declaration. Mr. Porter's opinions regarding ownership and location of the assets in question is improper opinion testimony of a lay witness.<br><br>**Improper Lay Opinion; Lack of Personal Knowledge, Fed. R. Evid. 701.** Mr. Porter lacks personal knowledge regarding the transactions and ownership of assets on which he purports to opine in the referenced portions of his declaration. | ☐ Sustained<br>☐ Overruled |
| 7. **Paragraph 102 and corresponding footnote:** "The VQR Assets refer to approximately $3 million dollars' worth of digital assets derived from 990,726.23 Injective Tokens ("INJ") [Footnote 17] that were transferred from the Receivership Estate to Adaya as follows: (a) 20.3 BTC transferred to Adaya BTC Wallet on December 14, 2020; (b) 218,671.75 INJ and 323,544.70 USDT transferred to the Yenamandra Account between December 22, 2020 and January 3, 2021; and (c) 200,000 INJ transferred to the Nguyen | **Improper expert opinion, Fed. R. Evid. 702.** Mr. Porter has not been qualified as an expert with respect to the statements of opinion in the referenced portions of his declaration, and testified at his deposition that he is not an expert with respect to the matters in which he testified in his declaration. Mr. Porter's opinions regarding ownership and location of the assets in question is improper opinion testimony of a lay witness.<br><br>**Improper Lay Opinion; Lack of Personal Knowledge, Fed. R. Evid.** | ☐ Sustained<br>☐ Overruled |

| Objections to the Porter Declaration |||
|---|---|---|
| **Material Objected To** | **Grounds for Objection[3]** | **Court's Ruling** |
| Account between January 13-14, 2021."<br><br>**Footnote 17:** "This value was derived from the delta between the 1,000,001 INJ tokens received by VQR in October 2020 and the 9,274.37 INJ returned to Injective Labs between October and November 2020." | **701.** Mr. Porter lacks personal knowledge regarding the transactions and ownership of assets on which he purports to opine in the referenced portions of his declaration. | |
| 8. **Paragraph 103:** "As explained in ¶9, *supra,* the VQR Assets can be traced from the Receivership Estate to Adaya in 4 steps: (a) Step 1: INJ tokens deposited into and traded on the VQR Binance Sub-Account; (b) Step 2: trading proceeds transferred from the VQR Binance Master Account to the Deefa Wallet and Adaya BTC Wallet; (c) Step 3: trading proceeds transferred from the Deefa Wallet to the Yenamandra and Nguyen Accounts; and (d) Step 4: proceeds from the Yenamandra Account transferred to the Nguyen Account." | **Improper expert opinion, Fed. R. Evid. 702.** Mr. Porter has not been qualified as an expert with respect to the statements of opinion in the referenced portions of his declaration, and testified at his deposition that he is not an expert with respect to the matters in which he testified in his declaration. Mr. Porter's opinions regarding ownership and location of the assets in question is improper opinion testimony of a lay witness.<br><br>**Improper Lay Opinion; Lack of Personal Knowledge, Fed. R. Evid. 701.** Mr. Porter lacks personal knowledge regarding the transactions and ownership of assets on which he purports to opine in the referenced portions of his declaration. | ☐ Sustained<br>☐ Overruled |
| 9. **Paragraph 118:** "Between March 11, 2019 and January 3, 2021 (the day before the assets in the Yenamandra Account were transferred to the Adaya Unhosted Wallets), there were approximately 4,000 trades, 100 withdrawals, and 100 deposits within the Yenamandra Account. Between January 6, 2021 | **Improper expert opinion, Fed. R. Evid. 702.** Mr. Porter has not been qualified as an expert with respect to the statements of opinion in the referenced portions of his declaration, and testified at his deposition that he is not an expert with respect to the matters in which he testified in his declaration. Mr. | ☐ Sustained<br>☐ Overruled |

| Objections to the Porter Declaration |||
|---|---|---|
| **Material Objected To** | **Grounds for Objection[3]** | **Court's Ruling** |
| (the day the Nguyen Account was opened) until January 17, 2023 (the date Binance produced transactional records to the Receiver), there were approximately 7,000 trades, 100 withdrawals, and 100 deposits within the Nguyen Account, resulting in total assets valued at approximately $6,061,700. Due to the extensive commingling of crypto assets, coupled with the high volume of trading that occurred in both the Yenamandra and Nguyen Accounts, further tracing of the specific Sigma Assets or VQR Assets and their proceeds would be overly burdensome for the Receiver to undertake without further information. However, based on my review of the transactional records related to the Yenamandra and Nguyen Accounts, coupled with the fact that none of the Sigma or VQR Assets were returned to Qin or the Receivership Entities, I have reason to believe that commingled proceeds derived from the Sigma and VQR Assets were transferred from the Yenamandra Account to, and remain in, the Nguyen Account." | Porter's opinions regarding ownership and location of the assets in question is improper opinion testimony of a lay witness.<br><br>**Improper Lay Opinion; Lack of Personal Knowledge, Fed. R. Evid. 701.** Mr. Porter lacks personal knowledge regarding the transactions and ownership of assets on which he purports to opine in the referenced portions of his declaration. | |

## II.  CONCLUSION

The Court should strike the Objectionable Portions of the Porter Declaration as they consist of unqualified expert and improper lay witness opinion testimony in contravention of FRE 701 and 702.

///

Dated: October 27, 2023                  Respectfully,

*/s/ Gary Kaplan*

Gary M. Kaplan (California State Bar No. 155530), *admitted pro hac vice*
Aviva J.B. Gilbert (California State Bar No. 300091) *admitted pro hac vice*
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, California 94104
Telephone: (415) 954-4400

*Attorneys for Third Party Respondents Nasir Adaya and Phuong Nguyen*