# EXHIBIT D

## Entrusted Asset Management Contract

Party A (asset trustor): Bixin Ventures Co., Limited

Address: Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, VG1110, British Virgin Islands.

Mobile phone number of the person in charge: +86 18910518382

Party B (asset trustee):  VQR MAS BX LLC

Address:  199 Water St, New York, NY 10038

Mobile phone number of the person in charge:

After friendly consultations conducted in accordance with the principles of equality and mutual benefit, Party A has agreed to entrust Party B to carry out digital asset management in accordance with the provisions of this Contract.

Now the Parties hereby agree as follows:

The initial capital of asset management entrusted by Party A to Party B is <u>500 BTC in total</u>. Party A shall first open accounts ( "the entrusted account") on the OKEX Exchange (www.okex.com), Huobi Exchange (www.huobi.com), then transfer <u>500 BTC</u> to the entrusted accounts as the initial capital(for clarification, the total initial capital for all the entrusted accounts is 500 BTC).

If both parties agree to increase additional entrusted asset in the future, Party A shall transfer BTC to the entrusted accounts and timely notify Party B, and Party A shall guarantee the legitimacy of the transferred assets. The rule of the increased entrusted asset shall comply with the rules stated in Article I(Investment strategy) under this contract.

The term of entrustment management period is <u>3 months,</u> temporarily from <u>September 2, 2020</u> to <u>December 2, 2020.</u> The Term shall expire automatically on the Expiration Date, unless extended for additional terms agreed by both Parties at least 5 days prior to the Expiration Date.

1

Party A shall provide Party B with the full name of accounts, APIKey and secretKey, and deposit <u>500 BTC</u> into the entrusted accounts before <u>September 2, 2020</u>. Party B shall deposit <u>5BTC</u> into the entrusted accounts before <u>September 3, 2020</u> as safe fund. The actual entrustment management period shall start from the date(including) when above entrusted accounts has received all the initial capital.

I. Investment Strategy

The investment strategy are arbitrage trading of mainstream cyptocurrencies, and the trend following strategy will not be adopted.

The specific rules are as follows:

Trading pairs: spot/ futures/ perpetual trading pairs on Huobi, OKEX (including but not limited to Top 10 cryptocurrencies ranked by market capitalization), and if needed, with Party A's written consent in prior, Party B shall borrow the relevant cryptocurrencies on the exchange. However, Party B shall be able to borrow up to 200% of the entrusted account value without written consent (for clarification if the entrusted accounts have 500 BTC, up to 1000 BTC may be borrowed without written consent).

II. Risk Control: position control and stop-loss

2.1. When Party B runs spot, swap and futures arbitrage trading strategy, the risk control constraint is: when initial BTC quantity < BTC net position < 1.1 * initial BTC quantity

When BTC net position is > 1.1 or BTC's net position < 0.9, Party A will contact the Party B by phone to communicate about risk control issues;

When BTC net position is > 1.2 or BTC net position is < 0.8, Party A has the right to conduct active risk control intervention on the exposure position of the account and eliminate part of the exposure position.

2.2. If the total loss exceeds 5%(excluding 5%) of entrusted asset, both parties shall negotiate over the specific situation. If it's not due to the enlarging of the basis, Party B shall not conduct any new investment or transaction except liquidation, and Party A shall have the right to redeem the capital or Party B shall act under the requirement of Party A.

2.3. When the total loss exceeds 7%(excluding 7%), Party B shall not make any new investment or transaction except liquidation. Party A shall have the right to redeem the capital or Party B shall act under the requirement of  Party A.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                               SECVQIN-RECEIVERSHIP 0015344

Party B shall bear all the losses caused to Party A owing to the breach of this contract, including violating or arbitrarily changing the investment strategies (details of the investment strategy are described in article I and articles 2.1, 2.2, 2.3 under this contract), violating redemption arrangements, and failing to achieve risk control requirements, etc.. Party B shall not be liable for losses caused by force majeure, including but not limited to serious errors in exchange data, bankruptcy, national policy and so on.

During the transaction period, Party B shall have the right to trade, deposit and withdraw cryptocurrency among white-listed accounts provided by Party A. If there is any other demand, party A shall handle it by itself.

During the term of the entrustment management period, Party A shall negotiate with Party B before conducting any operation in the entrusted account. If assets of the entrusted accounts change due to Party A's operation, Party A shall bear the responsibility. Party B shall report to Party A everyday about the net asset value and investment of the previous day (at 24:00) before 18:00 Beijing time.

III. Profit Sharing

During the entrusted asset management, the performance fees shall be calculated and extracted on a 3-month basis. On the last day of each entrustment management period, if Party A's profit is more than 0% in BTC, Party B shall receive some of the profit of the current period as the following form shows(including two parts), and Party A shall pay it to Party B in BTC as performance fee. If the profit is negative, Party B shall not charge performance fee.

Performance fee of Party B = Max (0, current profit of entrusted account* Fee rate)

| Tier | Profit (annualized basis) | Fee rate |
|---|---|---|
| 1 | 0~20% | 40% |
| 2 | Profit-20% | 50% |

Notwithstanding the foregoing, during the period of entrusted asset management, all forked coins generated by the initial BTC shall not be counted as profit and shall belong to Party A. Party A shall record all the forked coins by itself and shall have the right to transfer them to other non-trading accounts. To avoid ambiguity, during the BTC fork, whether the initial BTC is converted into other assets form by Party B or not, as long as the exchanges recognizes the BTC fork and distributes forked coins to account's BTC, Party B is obligated to transfer equivalent amount of forked coins to

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                              SECVQIN-RECEIVERSHIP 0015345

Party A equal to all forked coins generated by the initial BTC in the account. Such payments shall not affect the assets entrusted by Party A to Party B .

The high-water mark method shall be adopted in this asset management. If the current profit is negative and the next period profit is positive, Party B will only participate in the profit sharing of the next period profit minus the loss of the current period. For example:

Suppose that the initial investment is 100 BTC, and the loss is 10 BTC at the end of current period, the net value of the fund is 0.9. If the profit of the next peroid is 20 BTC, then the net value of the fund is 1.1. Under this circumstance, Party B will only participate in the profit sharing of 10 BTC.

IV. Liquidation

Settlement time: 20:00 Beijing time on the last day of the entrustment management period (if the period is extended, the time shall be 20:00 Beijing time on the last day of every three months).

Party B shall take a screenshot of the total size of assets under management at the settlement time, and calculate the net value and P/L, and send the report to Party A before 12:00 Beijing time the next workday. Party A shall confirm if the report is correct within  3  workdays, then pay the performance fee to Party B in BTC before 24:00 Beijing time of the confirmation date.

Party B's performance fee receiving account:

<u>BTC:</u>

V.  Confidentiality

From time to time prior to and during the term of this Contract either Party ( "Disclosing Party " ) has disclosed or may disclose Confidential Information to the other Party ( "Receiving Party " ). The Receiving Party shall, during the term of this Contract and thereafter, keep all Confidential Information strictly confidential by using a reasonable degree of care, and shall not disclose any Confidential Information received to any third parties.

If the leakage of confidential information happens, both parties shall inform the other party and take immediate remedial measures. The party who causes losses to the other party due to disclosure of Confidential Informatio shall compensate for all the losses.

VI. Party A shall guarantee the legitimacy of entrusted assets and has the obligation to keep Party B's operation confidential. In terms of redeem, Party A shall notify Party

4

B <u>3</u> days in advance; if less than 3 days, the withdrawal shall be adjusted depend on the account's situation. Both parties shall negotiate specifically if there is a unrealized loss.

If Party A intends to redeem the entrusteed asset, except for any losses caused by Party B's breach of this contract, the amount that Party A can redeem shall be principal plus profit minus the performance fees (if any) or the principal minus loss(if any).

VII. If Party B provides asset management services to other subscribers, and transactions occur among accounts of different subscribers, Party B shall treat all the accounts equally.

VIII. If both parties are unable to continue to perform this contract due to policy factors or other force majeure before the Expiration Date, Party A shall have the right to take back the principal plus profit minus the performance fees (if any) or the principal minus loss(if any) . This Contract shall terminate after the settlement of above matters between both parties.

IX. The parties hereto shall choose the laws of Hong Kong as the governing law and the Hong Kong international arbitration center (HKIAC) shall be the dispute resolution institution. The arbitration shall be governed by the arbitration rules in effect at that time of the Hong Kong international arbitration center (HKIAC).

X. This contract is made in duplicate with copies of the valid certificates of Party A and Party B . Each party holds one copy, which shall come into force after being signed by the legal or authorized representatives of Party A and Party B .

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    SECVQIN-RECEIVERSHIP 0015347

_____

(This page is intentionally left blank for signature)

Party A: __Hu Yanshan__ (signature or stamp)

Date: __September 2nd, 2020__

Party B: __Stefan Qin__ (signature or stamp)
(DocuSigned by: F105BD8C3FAF4F4...)

Date: __9/2/2020__

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                SECVQIN-RECEIVERSHIP 0015348