# EXHIBIT I

# CONSULTING AGREEMENT

This Consulting Agreement ("***Agreement***") is entered as of July 21, 2021 (the "***Effective Date***"), by and between Antifragile Management LLC, a New York limited liability company ("***Consultant***"), and Open Defi Foundation, a Panamanian foundation ("***Company***").

**WHEREAS**, Company has developed a decentralized sidechain relayer network which serves as a layer-2 derivatives platform, trade execution coordinator and decentralized orderbook which supports generalized smart contract execution through a modular implementation of the Ethereum Virtual Machine on top of the Cosmos-SDK (the "***Protocol***") with units of value on such Protocol denominated as the "***Tokens***"; and

**WHEREAS**, Company and Consultant are parties to that certain Token Purchase Agreement dated as of July July 21, 2021, pursuant to which Consultant purchased that number of Tokens set forth therein, and whereas Company wishes for Consultant to engage in discretionary trading of the Tokens and other digital assets on the Protocol and to increase liquidity in the market with respect to the Tokens and other digital assets on the Protocol.

**NOW THEREFORE**, in consideration of the mutual promises and agreements of the parties set forth herein, the parties agree as follows:

## 1.  CONSULTANT APPOINTMENT

1.1   Consultant will engage in trading of the Tokens and other digital assets in its discretion in circumstances where the price of the Tokens and other digital assets are deemed by Consultant to be less than or greater than the fair market value of such Tokens. This trading should result in increased liquidity on the Protocol.

1.2   Consultant will only enter orders that are intended to be consummated and only where such trades are supported by a legitimate rationale.

1.3   Consultant will not execute any trade if it is reasonably likely that Consultant is both the buyer and the seller of the Tokens or other digital assets.

1.4   Consultant will provide reporting to Company at least monthly of the status of the Tokens.

1.5   Company acknowledges that any and all such trading described in this Section 1 will be completed in the sole discretion of Consultant. Consultant will not take direction from Company about how or when to place trades, except in the case of Company notifying Consultant that it possesses Material Nonpublic Information as described below in paragraph 1.6. Consultant may elect to trade all or none of Tokens of Company in any period, in its sole discretion.

1.6   Company may, in its sole discretion, withhold any and all information related to Company and/or the Tokens from Consultant, including any Material Nonpublic Information. "***Material Nonpublic Information***" means any information about Company and/or the Tokens that has not been previously publicly disclosed to the market, if such information, if known to the market, would be expected to significantly alter the total mix of information about the Tokens or Company in the marketplace, or any information designated as such by Company in writing. If Consultant becomes aware of Material Nonpublic Information, it shall notify Company as soon as reasonably practicable, and, if so directed by Company, suspend its trading in the Token until further notice from Company.

1.7   Consultant agrees not to trade on the basis of, or tip or disclose, any Material Nonpublic Information, including to or through its employees, consultants and advisors, if Consultant knows or has reason to believe that such information was obtained through fraud or deception, or through a breach of a pre-existing duty, whether such duty was established by law, regulation, agreement, understanding, or any other source.

1.8 Any transaction fees for trades conducted by Consultant shall be borne by Consultant.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

DocuSign Envelope ID: B35BC655-E477-4D74-B3A0-84F5488022D4

2. [RESERVED]

3. REPRESENTATIONS OF CONSULTANT

3.1 Consultant represents and warrants that it is duly organized and validly existing as a legal entity under the laws of the jurisdiction of its organization, and has the requisite power and authority to conduct its business.

3.2 Consultant represents and warrants that this Agreement constitutes a legal, valid and binding obligation of Consultant enforceable against Consultant in accordance with its terms.

3.3 Consultant represents and warrants that the performance of its obligations under this Agreement does not violate or conflict with any existing law, judgment, order, regulation, or contractual restriction applicable to or binding on Consultant, and that it has the technical capability and required regulatory authorization to perform its obligations under this Agreement with sufficient competency, care and diligence.

3.4 Consultant represents and warrants that It shall not undertake any action or neglect to take any action that would result in a lien or other encumbrance on the Tokens, or enter into or contemplate entering into an arrangement, compromise or composition with or assignment for the benefit of its creditors or a class of creditors.

3.5 Consultant represents and warrants that neither Consultant nor any shareholder, director, officer or other principal of Consultant is a Prohibited Person. *"Prohibited Person"* means any individual that is a citizen of, or any entity that is formed in or has its principal place of business in, a country is subject to any embargo, prohibition or similar sanction under applicable laws or regulations.

3.6 Consultant is not registered with any regulatory body, including the National Futures Association (NFA), the U.S. Commodity Futures Trading Commission (CFTC), or the Securities and Exchange Commission (SEC). Consultant warrants that it is not required to be registered with any of these agencies to conduct the activities contemplated under this Agreement.

3.7 Consultant shall promptly notify Company if at any time during the term of this Agreement Consultant is unable to meet any of its obligations hereunder.

3.8 Consultant shall promptly notify Company in the event of any technical failure, security breach or any other such incidents.

4. TAXATION

Company and Consultant each acknowledges and agrees that it has sole responsibility for determining its obligations under applicable tax law, including determining whether, and to what extent, any taxes are owed as a result of the transactions contemplated by this Agreement, and whether it is required to withhold, collect, or report, any amounts payable to or by it under this agreement. Company and Consultant each agree to cooperate with the other party in determining such tax obligations, and to provide such information reasonably requested by the other party as is reasonably necessary for it to comply with such tax obligations.

5. MONEY LAUNDERING

Consultant represents and warrants as of the date hereof, and at the time that Consultant has acquired and/or sold any Tokens, that Consultant has in place, or when required by applicable law or regulations will put in place, and maintain suitable and adequate "know your customer" policies and procedures as applicable to Consultant's activities and obligations hereunder. Furthermore, Consultant agrees to comply with all applicable laws and regulations regarding anti-money laundering, including the USA Patriot Act.

6. DIGITAL ASSET RISKS

6.1 Consultant and Company mutually acknowledge that the legal and regulatory landscape governing digital assets is rapidly evolving. Should it be determined in good faith by either party that certain actions contemplated by this Agreement are not consistent with developments in the legal and regulatory landscape governing digital assets, then the parties agree that that particular activity will no longer be undertaken.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

SECvQ_NA_000173

7.   CONFIDENTIAL INFORMATION

Each party agrees to hold the terms and conditions of this Agreement and all other information herein or otherwise shared after the execution of this Agreement ("*Confidential Information*") in strict confidence and not to disclose it to others except to its officers, employees, directors, and advisors on a need-to-know basis. Each party further agrees to take all actions reasonably necessary to protect the confidentiality of all Confidential Information including, without limitation, implementing and enforcing procedures to minimize the possibility of unauthorized use or disclosure of Confidential Information. The foregoing shall not prohibit disclosure of Confidential Information required by law, or pursuant to a subpoena or other governmental request. Each party agrees that should it receive a subpoena or request for information which would include this agreement or its provisions, it will provide the other party reasonable notice and an opportunity to object to production, unless prohibited by law.

8.   INDEMNITY

8.1   Consultant will defend, indemnify and hold Company harmless from and against all claims, damages, liabilities, losses, expenses and costs (including reasonable fees and expenses of attorneys and other professionals) arising out of or resulting from:

(a)   any action or claim made by a third party against Company in connection with transactions contemplated by this Agreement (other than caused by the adjudicated intentional misconduct of Company);

(b)   any action by a third party against Company that is based on any act or omission of Consultant; and

(c)   any investigation, request for information, or action by any law enforcement or regulatory body, related to this Agreement or to the parties' business relationship;

(d)   any action resulting from Consultant's breach of this Agreement, including actions initiated by Company to enforce the terms of this Agreement.

9.   TERM AND TERMINATION

9.1   Term. This Agreement will commence on the Effective Date and continue until terminated by either party hereto upon thirty (30) days written notice, or otherwise terminated in accordance with Section 9.2.

9.2   Termination for Breach. Either party may terminate this Agreement if Consultant or the other party breaches any material term of this Agreement and fails to cure such breach within ten (10) days following written notice thereof from the non-breaching party.

9.3   Survival. The rights and obligations of the parties under Section **Error! Reference source not found.**, 5, 7, 8, 9 and 10 will survive the expiration or termination of this Agreement.

10.  GENERAL

10.1   Assignment. Neither party may assign or transfer this Agreement, in whole or in part, without the other party's express prior written consent, which consent shall not be unreasonably withheld, conditioned, or delayed. Any attempt to assign this Agreement, without such consent, will be void. Subject to the foregoing, this Agreement will bind and benefit the parties and their respective successors and assigns.

10.2   No Election of Remedies. Except as expressly set forth in this Agreement, the exercise by a party of any of its remedies under this Agreement will not be deemed an election of remedies and will be without prejudice to its other remedies under this Agreement or available at law or in equity or otherwise.

10.3   Governing Law. This Agreement will be governed by and construed in accordance with the laws of Panama, excluding its body of law controlling conflict of laws. Except as provided below, any dispute arising out of or relating to this Agreement and its formation, breach, performance, interpretation and application, shall be referred to and finally resolved by arbitration in New York by a panel of one (1) arbitrator in accordance with the JAMS Comprehensive Rules and Procedures ("*JAMS Rules*") for the time being in force, which rules are deemed to be incorporated by reference to this clause. English shall be the official language for

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

DocuSign Envelope ID: B35BC655-E477-4D74-B3A0-84F5488022D4

the arbitration. The arbitrator shall be appointed jointly by both parties and if the parties cannot agree on the identity of the arbitrator within thirty (30) days of the parties' mutual decision to refer the matter to arbitration, the arbitrator is to be designated by JAMS in accordance with JAMS Rules. The award rendered by the arbitrator shall be final and binding on the parties, and judgment thereon may be entered in any court having competent jurisdiction. Notwithstanding anything to the contrary in this Section, neither party will be required to arbitrate any dispute relating to actual or threatened unauthorized disclosure of Confidential Information. Either party will be entitled to seek in a court of competent jurisdiction injunctive relief preventing the disclosure of Confidential Information in breach of the terms of Section 7 hereof, or an order for specific performance to compel the other party to perform its obligation under this Agreement.

10.4   Severability. If any provision of this Agreement is held invalid or unenforceable by a court of competent jurisdiction, the remaining provisions of this Agreement will remain in full force and effect, and the provision affected will be construed so as to be enforceable to the maximum extent permissible by law.

10.5   Waiver. The failure by either party to enforce any provision of this Agreement will not constitute a waiver of future enforcement of that or any other provision.

10.6   Notices. All notices required or permitted under this Agreement will be in writing, will reference this Agreement, and will be deemed given: (i) when delivered personally; (ii) one (1) business day after deposit with a nationally-recognized express courier, with written confirmation of receipt; or (iii) three (3) business days after having been sent by registered or certified mail, return receipt requested, postage prepaid. All such notices will be sent to the addresses set forth below or to such other address as may be specified by either party to the other party in accordance with this Section.

10.7   Entire Agreement. This Agreement, together with the Token Purchase Agreement, constitutes the complete and exclusive understanding and agreement of the parties with respect to its subject matter and supersedes all prior understandings and agreements, whether written or oral, with respect to its subject matter. Any waiver, modification or amendment of any provision of this Agreement will be effective only if in writing and signed by the parties hereto.

10.8   Counterparts. This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

SECvQ_NA_000175

DocuSign Envelope ID: B35BC655-E477-4D74-B3A0-84F5488022D4

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

COMPANY:

**OPEN DEFI FOUNDATION**

By: *Yerzinio Ronaldo Moreno*

Name: Yerzinio Ronaldo Moreno

Title: Director

Date: 7/21/2021

Address: PH Capital Plaza 19th Floor
Panama City, Panama

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

SECvQ_NA_000176

DocuSign Envelope ID: B35BC655-E477-4D74-B3A0-84F5488022D4

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

CONSULTANT:

**ANTIFRAGILE MANAGEMENT LLC**

By: *Nasir Adaya* (DocuSigned)

Name: Nasir Adaya

Title: Founder

Date: 8/2/2021

Address: 260 Madison Avenue, 8th Floor, New York, NY 10016, USA

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

SECvQ_NA_000177