UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>STEFAN QIN, VIRGIL TECHNOLOGIES LLC, MONTGOMERY TECHNOLOGIES LLC, VIRGIL QUANTITATIVE RESEARCH, LLC, VIRGIL CAPITAL LLC, and VQR PARTNERS LLC,<br><br>Defendants. | Case No.: 20-cv-10849 (JGLC) |

## SECOND DECLARATION OF ERIC CHEN

I, Eric Chen, declare as follows:

1. I am the CEO of Injective Labs, Inc. ("Injective Labs") and I currently reside in New York, NY. I have personal knowledge of the facts stated in this declaration. I understand this declaration will be filed in support of Respondents Nasir Adaya and Phuong Nguyen's Opposition to the Receiver in the above-captioned action's filed Motion to Compel Turnover of Assets.

2. Injective Labs is a technology and research company that provides services to the Open DeFi Foundation ("ODF"), an independent foundation based in the Cayman Islands, pursuant to a services agreement. ODF supports the Injective blockchain ecosystem, which has a native token named INJ.

3. I have known Nasir Adaya since approximately 2018 or 2019 and consider him a friend. I am very familiar with his professional background and his skill set, which includes but

is not limited to quantitative analysis and associated trading of digital assets as well as market making for digital assets. I view market making as a highly specialized skill set within the digital asset trading industry.

4. Mr. Adaya consulted for Injective Labs pursuant to a consulting agreement entered into as of April 26, 2020, before the defendant entities in the above-captioned action (collectively, "VQR") ceased to operate.

5. In Fall 2020, ODF, assisted by Injective Labs and me, engaged Mr. Adaya to perform market making services for the INJ token, which was first publicly listed as a tradeable token in October 2020. I am not aware of any inquiries or communications received by ODF regarding its engagement of Mr. Adaya.

6. Before INJ was listed on an exchange, it lacked a public market value. INJ's value, like many other tokens native to cryptocurrency ecosystems, changes over time.

7. To enable Mr. Adaya to do the agreed-upon INJ market making work, in October 2020, ODF issued him 1M INJ tokens (the "Initial INJ Tokens"). Although the Initial INJ Tokens were subsequently characterized as a "token purchase," I believed, and still believe, that the Initial INJ Tokens effectively served as the principal of a loan from ODF to Mr. Adaya. I understood that Mr. Adaya was obligated to return to ODF digital assets in an approximately equivalent value to the then-existing valuation of the Initial INJ Tokens, after his market-making work was essentially done and INJ was an established token capable of being fairly valued by market forces.

8. I understood that Mr. Adaya was to be compensated for the INJ market-making work by retaining any profits from the INJ token market making (that is, any amounts he earned over the value of the Initial INJ Tokens that Mr. Adaya was required to return to ODF).

9.  I was informed that Mr. Adaya might use a VQR-affiliated Binance account to hold and trade the INJ, although he was not obligated to do so by his agreement with ODF.

10. I viewed Mr. Adaya as a market-maker who received the INJ tokens comprising the Initial INJ Tokens with the agreed-upon goal of establishing their fair market value over time, regardless of the individuals or entities that owned, controlled, and/or managed the specific account or accounts that were used to achieve that goal. I do not and did not understand that any purpose of issuing INJ to Mr. Adaya was to confer ownership, control, or management over those tokens to VQR.

11. It is consistent with my understanding of the arrangement between ODF and Mr. Adaya that Mr. Adaya transferred (or caused to be transferred) the INJ tokens compromising the Initial INJ Tokens or their equivalent value in other digital assets to a non-VQR-affiliated trading account before VQR shut down in late 2020. At that time, Mr. Adaya still was still engaged in INJ market-making and controlled INJ tokens from the Initial INJ Tokens or other digital assets to which they had been converted in the course of his market making.

12. Although I did not direct nor have complete visibility into Mr. Adaya's market-making, I occasionally advised and received periodic updates from Mr. Adaya in my capacity as consultant to ODF. Attached hereto as **Exhibit A** are true and correct copies of chats between Mr. Adaya and me discussing Mr. Adaya's INJ market-making work in detail in Fall 2020 and into 2021. The work was unrelated to VQR and thus continued into 2021 without interruption notwithstanding that VQR shut down.

13. To the extent I had visibility into Mr. Adaya's market-making work, I had no complaints about its quality. ODF, advised in part by me, contracted with Mr. Adaya to conduct similar projects in subsequent years and to compensate him for his efforts. Attached hereto as

**Exhibit B** is a group chat between Mr. Adaya, my colleague, and me discussing a quarterly update Mr. Adaya was to provide.

14.     As mentioned above, the INJ tokens comprising the Initial INJ Tokens lacked a market value before their listing in October 2020. Accordingly, ODF and Mr. Adaya deferred documenting their 2020 market-making agreement and its associated consideration until the tokens had developed a market value and the Initial INJ Tokens amount was ready to be returned to ODF by Mr. Adaya. Attached hereto as **Exhibit C** is a 2021 Token Purchase Agreement ("TPA") which documents the market-making agreement and assigns a value to INJ tokens of $10 per token. Attached hereto as **Exhibit D** is a group chat between Mr. Adaya, my colleague, and me discussing the TPA and contents thereof.

15.     Like many digital assets, the INJ token valuation has fluctuated over the past few years, from under $1 per token at its lowest valuation to approximately $25 per token at its highest valuation. The $10 per INJ token reflected in the TPA is below the all-time median INJ value.

16.     Mr. Adaya subsequently transferred at least ten million dollars' worth of digital assets to ODF in various tranches. Attached hereto as **Exhibit E** is a discussion between Mr. Adaya, my colleague, and me regarding one such transaction.

17.     Mr. Adaya retained any value associated with the INJ tokens (or other digital assets to which they had been converted) above the Initial INJ Tokens, as compensation for the market-making, per the TPA. Based on representations to me by Mr. Adaya, I believe those profits, as opposed to the Initial INJ Tokens, were valued (at a similar time as the TPA valuation) at approximately one million dollars. It was my expectation that Mr. Adaya would retain those profits as payment for his market making.

18. Based on the information currently available to me, I have no reason to believe that Mr. Adaya or Ms. Nguyen are presently holding or trading any assets subject to transfer to ODF under the market-making arrangement.

19. The documents referenced in the last sentence of paragraph 8 of the Declaration of Eric Chen, dated May 23, 2023, which was attached to the filed Declaration of Marco Molina (Dkt. 233-5) are Slack messages and a Telegram exchange between Mr. Adaya and other individuals who I believe to have had some association with VQR (Dkt. 233-6-8). The last sentence's reference to "in a manner I did not expect" refers to the fact that I did not expect Mr. Adaya to have conversations regarding or work with any other individual on the INJ token market making effort in Fall 2020, as ODF's agreement was with Mr. Adaya, not VQR or any other entity or individual, and I lacked complete visibility into how Mr. Adaya conducted the market-making work for which ODF retained him.

20. None of the documents shown to me by the Receiver's counsel changed my understanding of the compensation arrangements described in the above paragraphs.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in New York, NY on this 26th day of October 2023.

Eric Chen