**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>STEFAN QIN, VIRGIL TECHNOLOGIES LLC, MONTGOMERY TECHNOLOGIES LLC, VIRGIL QUANTITATIVE RESEARCH, LLC, VIRGIL CAPITAL LLC, and VQR PARTNERS LLC,<br><br>Defendants. | Case No.: 20-cv-10849 (JGLC) |

**DECLARATION OF ROHAN PANDIT**

I, Rohan Pandit, declare as follows:

1. I currently reside in San Juan, Puerto Rico. I have personal knowledge of the facts stated herein and could testify competently to them if called to do so. I understand this declaration will be filed in support of Respondents Nasir Adaya and Phuong Nguyen's Opposition to the Receiver in the above-captioned action's filed Motion to Compel Turnover of Assets.

2. Before Virgil Capital LLC/Virgil Quantitative Research LLC (collectively, "VQR") shut down, I worked there as a quantitative analyst. At VQR analysts like me supported the work of quantitative traders who managed portfolios of assets and used our analysis to do so.

3. Analysts such as myself that worked for VQR did not receive bonuses or commissions from VQR. Rather, any bonuses that an analyst might receive was paid by the trader for whom the analyst worked, at the trader's discretion, and paid from the profit percentage that

the trader was allocated based on their trading success. Thus, although I was paid a salary by VQR, I did not receive any bonuses or commissions from VQR.

4. In my work at VQR I primarily, though not exclusively, worked for quantitative trader Nasir Adaya. I have known Mr. Adaya since 2019 and consider him a close friend. We worked together before VQR and I continued to work with him after VQR imploded.

5. I am familiar with digital asset market-making, a highly specialized service that certain individuals and companies perform.

6. As far as I am aware, VQR did not do market-making work, did not market itself as having that ability, and was never hired, retained, or paid by an investor (or anyone) to perform such work.

7. I know that in fall 2020 Mr. Adaya took on a market-making project for the Open DeFi Foundation to provide liquidity for the INJ token.

8. I communicated with Mr. Adaya regarding the INJ market-making work, including on the Telegram messaging platform. We continued to communicate about it on Telegram after VQR ceased to operate.

9. I have reviewed the document submitted by the Receiver at docket entry 233-7 in this case. It is a non-consecutive set of pages excerpted from a long-running Telegram chat between me and Mr. Adaya. The excerpts from the Telegram chat reference a script with which I assisted Mr. Adaya in connection with his INJ market-making project for ODF.

10. I estimate it took less than 4 hours of my time to provide that assistance, given that the testing and script-running is largely automated.

11. The amount of time I spent on the script falls within what I would do as a favor to a friend without the expectation of compensation. That is how I view the assistance I provided.

12. I understand a separate Binance subaccount was set up to segregate the INJ principal and subsequent proceeds and profits so they would not comingle with VQR assets under management, as reflected in the above-described Telegram excerpt.

13. During my time at VQR, any trader's access to or usage of a VQR-affiliated Binance subaccount would have to be approved by Antonio Hallak.

14. I continued to work with Mr. Adaya on various projects long after VQR shut down, and we continued to use Telegram to discuss those non-VQR projects.

15. I was previously subpoenaed by the Receiver in this case to produce documents and I did so.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in San Juan, Puerto Rico on this 23 day of October 2023.

_____
Rohan Pandit