**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>      Plaintiff,<br><br>  vs.<br><br>STEFAN QIN, VIRGIL TECHNOLOGIES LLC, MONTGOMERY TECHNOLOGIES LLC, VIRGIL QUANTITATIVE RESEARCH, LLC, VIRGIL CAPITAL LLC, and VQR PARTNERS LLC,<br><br>      Defendants. | Case No.: 20-cv-10849 (JGLC) |

**RECEIVER'S NINETEENTH STATUS REPORT**

            **BAKER & HOSTETLER LLP**
            45 Rockefeller Plaza
            New York, New York 10111
            Telephone: (212) 589-4200
            Facsimile: (212) 589-4201

            *Attorneys for Receiver Robert A. Musiala, Jr.*

Robert A. Musiala Jr., Esq., Court-appointed Receiver for the assets of Virgil Capital LLC, Montgomery Technologies, LLC, Virgil Technologies, LLC, Virgil Quantitative Research, LLC, and VQR Partners, LLC (collectively, the "**Receivership Entities**"), submits this Status Report (the "**Report**") in accordance with the Order of this Court entered on January 21, 2021 (the "**Receiver Order**"), and for the purpose of providing a status report on the Receiver's work and findings to date (the "**Investigation**").[1] The facts presented in this Report are preliminary and may be amended and changed as the Investigation continues. This Report includes the assessment of the Receiver's legal counsel as well as the consultants and advisers retained by the Receiver's counsel (the "**Receiver Team**").

I.   INTRODUCTION

The Receivership Entities are a group of interrelated entities, all of which were either controlled or owned directly by Defendant Stefan Qin ("**Qin**"). Using his control and ownership of the Receivership Entities, Qin perpetrated a scheme to lure investors into two funds (the "**Funds**"), the Virgil Sigma Fund LP (the "**Sigma Fund**") and the VQR Multistrategy Fund LP (the "**VQR Fund**") that were marketed as using algorithmic trading strategies involving cryptocurrencies. Through this scheme, Qin exerted his control, particularly over the Sigma Fund, to steal investor proceeds to fund personal expenses and investments and paid investor redemptions by using funds from new investors to pay earlier investors. On December 22, 2020, the Securities and Exchange Commission (the "**SEC**") commenced an enforcement action (the "**Enforcement Action**") against Qin and the Receivership Entities. On February 4, 2021, Qin pleaded guilty to

---

[1] Order Appointing Receiver ¶ 46, *SEC v. Qin*, No. 20-cv-10849 (LGS) (S.D.N.Y. Jan. 21, 2021), ECF No. 31. Unless otherwise indicated, documents referenced herein by ECF Number are in connection with the above-captioned matter.

one count of securities fraud in connection with this scheme.[2] On September 15, 2021, Qin was sentenced to 90 months in prison.[3]

Simultaneous with the filing of its complaint, the SEC sought emergency relief, including a preliminary injunction, in the form of an order freezing the assets of the Receivership Entities.[4] The SEC also sought the appointment of a receiver over those assets.[5] On January 21, 2021, the Court appointed Robert A. Musiala Jr., Esq. as the receiver (the "**Receiver**") for the estates of the Receivership Entities.[6] The Receiver Order requires that the Receiver file an initial status report to the Court within 30 days of the Receiver Order and quarterly status reports within thirty days after the end of each calendar quarter. On March 25, 2022, the Court ordered that the Receiver shall file quarterly status reports within fifteen days after the close of every quarter.[7] The Receiver has submitted status reports in satisfaction of these requirements. In further satisfaction of the requirement to submit quarterly status reports, the Receiver submits this nineteenth status report.

## II.   SUMMARY OF RECEIVERSHIP ACTIVITIES PERFORMED DURING THE STATUS REPORT PERIOD

### A.  Identifying and Securing Receivership Property

During the period covered by this nineteenth status report, the Receiver and his Receiver Team have performed numerous activities that have served to secure the Receiver's claims to Receivership Property. Key activities performed in this regard include: (1) engaging in and

---

[2] Press Release 21-022, Department of Justice, U.S. Attorney's Office, Southern District of New York, *Founder Of $90 Million Cryptocurrency Hedge Fund Charged With Securities Fraud And Pleads Guilty In Federal Court* (Feb. 4, 2021), https://www.justice.gov/usao-sdny/pr/founder-90-million-cryptocurrency-hedge-fund-charged-securities-fraud-and-pleads-guilty.
[3] Press Release 21-239, Department of Justice, U.S. Attorney's Office, Southern District of New York, *Founder Of $90 Million Cryptocurrency Hedge Fund Sentenced To More Than Seven Years In Prison* (Sept. 15, 2021), https://www.justice.gov/usao-sdny/pr/founder-90-million-cryptocurrency-hedge-fund-sentenced-more-seven-years-prison.
[4] Plaintiff Securities and Exchange Commission's *Ex Parte* Emergency Motion for an Asset Freeze and Other Relief, ECF No. 4.
[5] Stipulation to the Entry of Order Appointing Receiver, ECF No. 29.
[6] Receiver Order ¶¶ 2-3, ECF No. 31.
[7] ECF No. 148.

concluding settlement negotiations for the return and recovery of significant Receivership Property; (2) analyzing strategies and merits of potential litigation to seek recovery of significant additional Receivership Property; (3) analyzing certain documents produced by a third party related to Receivership Property; and (4) analyzing strategies related to certain cryptocurrency assets identified as Receivership Property that may be recoverable for the Receivership Estate.

### B. Operating the Receivership Estate

During the period covered by this nineteenth status report, the Receiver and his Receiver Team have performed numerous activities essential to operating the Receivership Estate and evaluating potential claims against the Receivership Estate. Key activities performed in this regard include: (1) reviewing and responding to various claimant inquiries; (2) updating the answers to frequently asked questions on the receivership website (https://www.bakerlaw.com/qin-receivership); (3) hosting an electronic claims portal that allows claimants to track the status of their claims; (4) drafting and filing a claims schedule setting forth the status of the Receiver's claim determinations; (5) communicating with claimants who filed objections to the Receiver's claim determinations and analyzing related documentation to attempt to resolve the objections; (6) performing research and analysis related to the approved methodologies for making an initial distribution of Receivership Estate funds to allowed claimants; (7) working to complete a motion to the Court to propose procedures for distributing the receivership funds to allowed claimants ("**Distribution Motion**"); and (8) analyzing financial data to produce a current statement of receivership assets and statement of net recoveries.[8]

---

[8] See Exhibits A and B.

### C. Investigations

During the period covered by this nineteenth status report, the Receiver and his Receiver Team have performed activities essential to the Receiver's ongoing Investigation to identify additional Receivership Property that may be recoverable for the benefit of the Receivership Estate. Key activities performed in this regard include analyzing certain information in furtherance of specific strategies for the recovery of significant Receivership property previously identified by the Receiver's Investigation.

### III. SUMMARY OF RECEIVERSHIP ACTIVITIES AND FINDINGS TO DATE

#### A. Operating the Receivership Estate

##### 1. Service Providers

As noted in the initial status report, the Receiver directed his legal counsel Baker & Hostetler LLP[9] ("**BakerHostetler**") to retain the forensic accounting firm of Ankura Consulting Group, LLC ("**Ankura**") as consultants to assist with the analysis of the financial condition and activities of the Receivership Entities. The Court approved the retention of Ankura on February 4, 2021.[10] The Receiver also retained the Cayman Islands law firm of Nelsons to provide legal advice with respect to Cayman Islands law and winding up petitions filed for the Sigma Fund and VQR Fund. The Court approved the retention of Nelsons on February 17, 2021.[11] Additionally, the Receiver retained the Law Office of Dennis Cohen ("**Cohen Law**"). The Court approved the retention of Cohen Law on February 14, 2022.[12] The Receiver also retained CipherTrace, Inc. and Elliptic Inc. (collectively, the "**Blockchain Analytics Vendors**"). The Court approved the retention of the Blockchain Analytics Vendors on February 18, 2022.[13] Finally, the Receiver

---

[9] Receiver Order, ECF No. 31.
[10] ECF No. 37.
[11] ECF No. 43.
[12] ECF No. 124.
[13] ECF No. 136.

retained Miller Kaplan ("**Miller Kaplan**") to provide tax and consulting services. The Court approved the retention of Miller Kaplan on August 18, 2022.[14] On December 4, 2024, the Receiver filed a motion to retain Cohen Law on a partial contingency fee basis to institute certain legal actions.[15] The Court granted the motion on December 23, 2024.[16]

2. Communications with Investors and Creditors

The Receiver Team has reviewed and replied to various investor inquiries and continues to receive and reply to correspondence from purported investors and creditors. The Receiver Team continues to maintain a website (https://www.bakerlaw.com/qin-receivership) through which investors and claimants may access information relating to the status of the receivership. The website includes answers to frequently asked questions (https://www.bakerlaw.com/sec-v-qin-investor-faqs/). The Receiver Team also continues to maintain an email address for investor inquiries (Qin-Receivership@bakerlaw.com).

3. Claims Process

On April 8, 2024, the Receiver filed a Claims Process Motion setting forth a proposed process for the determination of submitted claims.[17] On December 20, 2024, the Court issued an opinion and Order granting the motion in full.[18] Per the Court's December 20, 2024 Order, the Receiver communicated claim determinations to claimants within 90 days of the date of the Order. The Receiver sent each claimant a determination letter through the electronic claims portal that included details on how the Receiver arrived at the claim determination. The determination letters also explained the procedures for filing an objection to the claim determination. Consistent with the Court's December 20, 2024 Order, the determination letters provided notice that claimants had

---

[14] ECF No. 173.
[15] ECF Nos. 333-336.
[16] ECF No. 340.
[17] ECF Nos. 302-309.
[18] ECF No. 339.

5

45 days from the date of their claim determination to file an objection. The determination letters also notified claimants that in the event the Receiver and claimant are not able to reach a settlement or other resolution concerning an objection, the Receiver will submit the objection to the Court for review and final determination. The Receiver is currently in the process of seeking to resolve objections filed by certain claimants.

4. <u>Distribution Motion</u>

The Receiver has not disbursed any funds to any claimants. The Receiver Team is working to complete a Distribution Motion. The Receiver will seek to file the Distribution Motion as soon as practicable. In the Distribution Motion, the Receiver will seek approval from the Court regarding the distribution method and for authority to make an initial distribution to allowed claimants.

**B. Investigations**

1. <u>Witness Interviews</u>

The Receiver Team conducted approximately 86 interviews in total (including two depositions) and interviewed approximately 44 witnesses. The Receiver Team conducted 22 interviews with Qin.

2. <u>Forensic Data Capture and Analysis</u>

The Receiver Team obtained and processed approximately 4.4 terabytes of data. The Receiver Team applied forensic procedures to analyze these records and data using a targeted and cost-effective approach to inform the Receiver's Investigation and asset recovery efforts. Through obtaining and analyzing these records and data, the Receiver Team identified over 1,000 cryptocurrency public keys and over 200 cryptocurrency exchange accounts relevant to the Investigation and located and retrieved significant Receivership Property.

**C. Identifying and Securing Receivership Property**

1. <u>Notice Letters and Voluntary Information Requests</u>

The Receiver Team contacted over 250 U.S. and foreign based financial institutions, and served these entities with Notice Letters containing a copy of the Receiver Order to freeze any Receivership Property in their possession and to serve on the Receiver a certification or statement setting forth a description of any assets traceable to a Receivership Entity in their possession as of the date of the receipt of the Receiver Order. In furtherance of these requests, the Receiver Team sought and the Court ordered, a Stipulation and Order governing the production and exchange of any confidential information subject to these requests.[19]

2. <u>Subpoenas</u>

The Receiver Team served approximately 91 subpoenas on various third parties to obtain additional information to assist in identifying and recovering Receivership Property.

3. <u>Receivership Bank Account and Cryptocurrency Custody Account</u>

The Receiver opened a bank account in the name of the receivership for consolidation and custody of Receivership Property in the form of U.S. dollars. The Receiver has used the funds in this account to pay certain receivership expenses. The Receiver also established an insured institutional cryptocurrency custody account with a U.S. based company for the consolidation and secure custody of Receivership Property in the form of cryptocurrencies.

4. <u>Blockchain Analytics Vendors</u>

The Receiver Team met with seven different providers of proprietary blockchain analytics tools, received competitive proposals from these vendors, selected two vendors, and moved for and received Court approval of these vendors. The assistance of blockchain analytics vendors

---

[19] ECF No. 48.

allowed the Receiver Team to conduct a more thorough analysis of blockchain transactional data. This work has been completed.

5. Physical Assets

The Receiver Team conducted a review and inventory of personal assets that were in Qin's custody, took physical custody of certain assets, and created an accounting of Qin's assets.

## IV. CLAIMS AGAINST THIRD PARTIES

### A. Summary of Claims Against Third Parties

The Receiver Team continues to pursue claims against certain third parties for the recovery of Receivership Property. On December 23, 2024, the Court granted the Receiver's motion to retain Cohen Law on a partial contingency fee basis and to institute certain legal actions to pursue litigation against certain third parties against whom the Receiver has claims.[20] On January 22, 2025, on behalf of the Receiver, Cohen Law filed suit against an investor group seeking the return of approximately $1.6 million in fraudulent transfers and interest.[21] On May 6, 2025, the Receiver voluntarily dismissed the claims with prejudice.[22] The Receiver and Cohen Law expect to file additional litigation in the coming months. The Receiver believes there is a reasonable likelihood that substantial value may be recovered for the Receivership Estate as a result of these ongoing efforts.

### B. Motion to Freeze and Declare as Receivership Property Certain Digital Assets

On December 4, 2023, the Receiver filed a motion to freeze and declare as Receivership Property certain digital assets ("**Motion to Freeze**").[23] The Motion to Freeze moved the Court to declare certain cryptocurrency assets located in a self-custodied wallet as Receivership Property

---

[20] ECF No. 340.
[21] *Musiala v. Doshi, et al.*, No. 25-cv-00638 (S.D.N.Y. Jan. 22, 2025).
[22] *Id.* at ECF 36.
[23] ECF Nos. 267-269.

8

and direct Circle Internet Financial, LLC ("**Circle**") to freeze the 439,650.326524 USDC tokens on the Ethereum blockchain currently located in the wallet. On January 19, 2024, the Court issued an Order granting the Motion to Freeze.[24] The Receiver continues to pursue options for the turnover and liquidation of these tokens for the benefit of the Receivership Estate.

## V.    RECEIVERSHIP ASSETS

The Receiver has established a bank account to secure assets in the form of U.S. dollars. As of June 30, 2025, the total value of Receivership Property held in the Receiver's bank accounts and cryptocurrency custody accounts in the form of U.S. dollars was $34,187,817. The Receiver has also established an insured institutional cryptocurrency custody account with a U.S.-based firm to provide safe custody of certain cryptocurrency assets, as well as a multi-signature cryptocurrency wallet to custody certain cryptocurrency assets which are not supported by the Receiver's institutional custody account. As of June 30, 2025, the total U.S. dollar value of Receivership Property held in the Receiver's institutional cryptocurrency custody account and multi-signature wallet was $103,810. As of April 10, 2023, the Receiver has liquidated all marketable cryptocurrencies in his possession with the exception of certain funds held in the form of the USDC stablecoin and a *de minimis* amount of the ether (ETH) cryptocurrency.

The Receiver Team has concluded its Investigation to identify all available asset sources. The Receiver Team continues to analyze investor data for both the Sigma and VQR Funds, which had limited books and records. Neither Fund had been audited and neither had any level of third-party accounting verification in the months leading up to the appointment of the Receiver. The Receiver Team's analysis of investor data has assisted in identifying claims held by the Receiver against third parties for the recovery of Receivership Property. The Receiver Team's analysis of

---

[24] ECF No. 282.

investor data also was critical to the Receiver's evaluation, determination, and classification of claims submitted by claimants and is assisting the Receiver in responding to certain claimant objections.

## VI.   ADMINISTRATIVE EXPENSES

The Receiver has incurred expenses for legal services from BakerHostetler, forensic accounting and consulting services from Ankura, legal services from Cohen Law, legal services from Nelsons, blockchain analytics tool services from the Blockchain Analytics Vendors, and tax and consulting services from Miller Kaplan. The Court has granted, or granted in part, fifteen fee applications previously filed by the Receiver.[25] Payments have been made pursuant to these Orders. The Receiver provided details about the fees for BakerHostetler, Ankura, Nelsons, Cohen Law, the Blockchain Analytics Vendors, and Miller Kaplan, in seventeen quarterly fee applications previously filed with the Court.[26] The Receiver will provide further details about the fees for BakerHostetler, Ankura, Nelsons, Cohen Law, the Blockchain Analytics Vendors, and Miller Kaplan, in his eighteenth Quarterly Fee Application, which will be filed with the Court at a later date and which will address fees for the period covered by this nineteenth status report.

The Receiver has incurred expenses related to winding down the relationships with certain vendors used by the Receivership Entities. The Receiver has paid certain vendor expenses, and expects to pay additional vendor expenses, using funds from the Receiver's bank account.

## VII.   PROPOSED PLAN FOR ADMINISTERING THE RECEIVERSHIP

The Receiver is still working in limited instances to secure previously identified Receivership Property on behalf of the Receivership Estate. The Receiver believes this Receivership Property may still be recoverable for the Receivership Estate.

---

[25] ECF Nos. 91, 101, 117, 154, 167, 182, 185, 192, 195, 208, 241, 275, 312, 322, 328, 341, 357.
[26] ECF Nos. 66, 93, 113, 149, 155, 179, 186, 196, 206, 245, 280, 293, 321, 327, 343, 353, 363.

The Receiver recommends that he be allowed to continue his work to secure additional Receivership Property that has been identified, resolve all claims against the Receivership Estate, and seek authorization to distribute recovered assets to allowed claimants in accordance with a forthcoming distribution plan. In accordance with the Receiver Order[27] and the Court's Order of March 25, 2022,[28] the Receiver will submit another status update within fifteen days after the end of the third calendar quarter.

Dated: July 15, 2025

Respectfully submitted,

*/s/ Jimmy Fokas*
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Tel.: (212) 589-4200
Facsimile: (212) 589-4201
Jimmy Fokas
jfokas@bakerlaw.com

*Attorneys for Receiver Robert A. Musiala, Jr., Court-appointed Receiver for Receivership Entities*

---

[27] Receiver Order ¶ 46.
[28] ECF No. 148.

11