RECEIVER'S PROPOSED PLAN – MAR. 31, 2026
SUBJECT TO COURT APPROVAL

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>STEFAN QIN, VIRGIL TECHNOLOGIES LLC, MONTGOMERY TECHNOLOGIES LLC, VIRGIL QUANTITATIVE RESEARCH, LLC, VIRGIL CAPITAL LLC, and VQR PARTNERS LLC,<br><br>Defendants. | Case No.: 20-cv-10849 (JGLC) |

> **THIS DISTRIBUTION PLAN REMAINS SUBJECT TO COURT APPROVAL AND THUS IS SUBJECT TO MATERIAL CHANGE. UPON COURT APPROVAL, THE RECEIVER INTENDS TO FILE A MODIFIED VERSION OF THIS DISTRIBUTION PLAN REMOVING THIS DISCLAIMER AND MAKING ANY OTHER APPROPRIATE CHANGES CONSISTENT WITH THE COURT'S APPROVAL**

<u>**RECEIVER'S DISTRIBUTION PLAN**</u>

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Receiver Robert A. Musiala, Jr.*

Dated: March 31, 2026

RECEIVER'S PROPOSED PLAN – MAR. 31, 2026
SUBJECT TO COURT APPROVAL

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................1

Article 1.    DEFINITIONS AND RULES OF INTERPRETATION ........................................1

    1.1.    Definitions....................................................................................................1

    1.2.    Rules of Interpretation ................................................................................5

    1.3.    References to Monetary Figures ..................................................................6

Article 2.    CLASSIFICATION AND TREATMENT OF CLAIMS .......................................6

    2.1.    Classification of Claims Generally ..............................................................6

    2.2.    Treatment of Claims Generally....................................................................6

    2.3.    Classes..........................................................................................................6

        2.3.1    Class 1 – Investor Claims ................................................................7

        2.3.2    Class 2 – Employee Claims .............................................................7

        2.3.3    Class 3 – Unsecured Creditor Claims ..............................................7

    2.4.    Distribution Notice.......................................................................................7

Article 3.    IMPLEMENTATION OF PLAN ......................................................................7

    3.1.    Consolidation of Receivership Assets ..........................................................7

        3.1.1    Use of Proceeds................................................................................8

        3.1.2    Reserve.............................................................................................8

    3.2.    Plan Settlement ............................................................................................8

    3.3.    Cancellation of Securities and Agreements .................................................8

    3.4.    Effectuating Documents; Further Transactions ..........................................9

    3.5.    Preservation of Causes of Action.................................................................9

Article 4.    DISTRIBUTION METHOD & PROCESS ..........................................................9

    4.1.    Distribution Method.....................................................................................9

        4.1.1    Rising Tide.......................................................................................9

i

4.1.1.1 For Investor Claimants.................................................................9

4.1.1.2 For Non-Investor Claimants .......................................................10

4.1.2    Rising Tide Percentage ....................................................................10

4.2.    Form of Distribution .................................................................................10

4.3.    Procedure for Distributions.......................................................................10

4.3.1    Distributions....................................................................................11

4.3.1.1 Initial Distribution....................................................................11

4.3.1.2 Subsequent Distributions .........................................................11

4.3.1.3 Final Distribution .....................................................................11

4.3.2    Objections to the Plan .....................................................................11

4.3.3    Objections to Subsequent Distribution Motions .............................11

4.3.4    Distribution Form............................................................................12

4.3.5    Conditions of Distribution ..............................................................12

4.3.6    Distributions Made Exclusively to Original Claimant......................12

4.3.7    Delivery of Distributions .................................................................12

4.3.8    Withholding Taxes...........................................................................12

4.3.9    No De Minimis Distributions Required............................................13

4.3.10   No Interest on Claims ......................................................................13

4.4.    Disposition of Unclaimed Assets / Property...............................................13

4.4.1    Unclaimed Distribution....................................................................13

4.4.2    Forfeited Distribution.......................................................................13

4.4.3    Remnant Assets................................................................................13

4.5.    Compliance With Applicable Law..............................................................13

Article 5.    EFFECT OF PLAN APPROVAL ......................................................................14

5.1.    Satisfaction of Claims Against the Receivership Estate ........................................14

5.2.    Releases..................................................................................................................14

5.3.    Binding Effect........................................................................................................14

5.4.    Receivership Order Not Superseded.....................................................................14

5.5.    SEC Actions Unaffected by Plan..........................................................................15

Article 6.    MISCELLANEOUS PROVISIONS..............................................................15

6.1.    Effective Date .......................................................................................................15

6.2.    Jurisdiction of Court .............................................................................................15

6.3.    Governing Law ......................................................................................................15

6.4.    Notices ...................................................................................................................15

6.5.    Severability ...........................................................................................................16

6.6.    Amendments or Modifications .............................................................................16

6.7.    No Admissions.......................................................................................................16

6.8.    Exhibits; Schedules...............................................................................................16

6.9.    Dissolution of Receivership Entities.....................................................................16

6.10.   Reports to the Court and Claimants......................................................................16

6.11.   Application for Order Terminating the Receivership ...........................................17

6.12.   Preservation of Records ........................................................................................17

**INTRODUCTION**

Robert A. Musiala, Jr., as Court-appointed receiver ("Receiver") in the above-captioned action, by and through his undersigned counsel and on behalf of the Receivership Entities, respectfully proposes the following distribution plan ("Plan") for classifying, calculating, and making distributions of Recoverable Assets[1] to Allowed Claimants. Plaintiff Securities and Exchange Commission has reviewed the Plan and consents to the procedures outlined herein.

**Article 1.    DEFINITIONS AND RULES OF INTERPRETATION**

1.1.    Definitions

"**Allowed**" means, with respect to any Claim, a Claim (i) for which a valid Proof of Claim has been timely filed, (ii) that is not an Unresolved Objection, and (iii) that has been allowed, in whole or part, by an order of the Court or pursuant to the Claims Procedure Order.

"**Allowed Claimant**" means a Claimant holding a Resolved Claim with an Allowed Amount greater than zero.

"**Allowed Amount**" means the amount at which a Claim is calculated and permitted under the Claims Procedure Order and as communicated in a Claim Determination.

"**Available Cash**" means, at the time of a Distribution, all Cash of the Receivership Estate on a consolidated basis less the amount of Cash designated by the Receiver to be held in Reserve.

"**Cash**" means the legal tender of the United States of America, or the equivalent value of foreign or digital currency once converted into legal tender of the United States of America.

"**Causes of Action**" means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, set-offs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims whatsoever, in each case held by or assigned to the Receivership Entities, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event, circumstance or condition occurring or existing prior to the Receivership Date or during the pendency of the SEC Action.

"**Claim**" means a valid Proof of Claim filed against the Receivership Estate.

"**Claim Determination**" means the Receiver's determination of (i) whether the Claim meets the criteria for an Allowed Claim; (ii) the classification of the Claim; and (iii) the Allowed

---

[1] Capitalized terms not otherwise defined herein are accorded the meaning afforded them in the Order Appointing Receiver (ECF No. 31); Memorandum of Law in Support of Receiver's Motion to Establish Claims Administration & Determination Procedures (ECF No. 303); and Claims Schedule (ECF No. 360).

Amount, as communicated to each Claimant in writing from the Receiver pursuant to and in accordance with the Claims Procedure Order.

"**Claimant**" means any Person asserting a Claim against the Receivership Estate, or the successor in interest to such Person under valid and enforceable operation of applicable law as determined by the Receiver in his sole discretion.

"**Claims Administration Order**" means the Court's Order Granting Receiver's Motion to Set Bar Date for Claims Against the Receivership Estate and to Approve Claim Form and Notice Procedures (ECF No. 168).

"**Claims Portal**" means the secure online portal established pursuant to the Claims Administration Order located at https://www.qinreceivershipclaims.com/, to which all Claimants were given access.

"**Claims Procedure Order**" means the Court's Opinion and Order Granting Receiver's Motion to Establish Claims Administration and Determination Procedures (ECF No. 339).

"**Class**" means a category of Allowed Claims, as set forth in the Plan.

"**Court**" means the United States District Court for the Southern District of New York.

"**Disputed**," when used with respect to a Claim, means a Claim as to which an Objection to the Allowed Amount (as initially set forth in the Claimant's Claim Determination) has been timely filed by the Claimant, has not been settled by the Receiver, and has not been Allowed, in whole or part, by an order of the Court or pursuant to the Claims Procedure Order.

"**Disputed Amount**" means the amount of a Claim that is Disputed.

"**Distribution**" means payment by the Receiver of Available Cash to one or more Allowed Claimants pursuant to the Plan.

"**Distribution Date**," when used with respect to each Resolved Claim, means the date on which one or more Resolved Claims becomes payable in accordance with the Plan pursuant to a Distribution Order, such date to occur no more than 75 days following such Distribution Order, or, in the case of the Initial Distribution, no more than 75 days from the Effective Date.

"**Distribution Form**" means the form that must be completed by the Claimant to (a) accept the terms of the Distribution and (b) provide payment instructions to receive the Distribution.

"**Distribution Motion**" means a motion filed by the Receiver seeking authorization to make a Distribution, which shall include (a) a statement of the then-applicable Rising Tide Percentage and (b) a schedule outlining proposed Distributions to Allowed Claimants.

"**Distribution Notice**" means a notice of Distribution, which will be sent via the Claims Portal to each Claimant and published on the docket of the SEC Action and the Receivership Website following the Court's issuance of a Distribution Order.

"**Distribution Objection Deadline**" means the date 21 days after the date on which a Distribution Motion is filed on the docket of the SEC Action.

"**Distribution Order**" means an order of the Court authorizing a Distribution, including but not limited to, the order approving the Plan and authorizing the Initial Distribution.

"**Employee Claim**" means an Allowed Claim held by a former employee of a Receivership Entity.

"**Effective Date**" means the date on which the Receiver declares the Plan effective by filing a notice on the docket of the SEC Action, such date to occur no more than seven (7) days following the Court's entry of an order approving the Plan.

"**Final Distribution Date**" means the date designated by the Court for distributing all remaining Available Cash pursuant to Article 4.3.1.3 of the Plan.

"**Forfeited Distribution**" means the amount of any Distribution for which the respective Allowed Claimant fails to comply with the Plan's procedures, fails to timely provide the Receiver with information required to facilitate such Distribution, or fails to comply with any other reasonable request from the Receiver or an applicable financial institution, as may be necessary to facilitate the payment of such Distribution.

"**Funds**" means, collectively, the Sigma Fund and VQR Fund.

"**Initial Distribution**" means the first Distribution made pursuant to the Plan.

"**Initial Distribution Date**" means the date on which the Receiver will commence the Initial Distribution, which shall be no more than 75 days from the Effective Date.

"**Investment Return Percentage**" or "**IRP**" means the overall return on an Investor Claimant's investment in the Funds, and is calculated using the following formula: Verified Investor Withdrawals *divided by* Verified Investor Deposits.

"**Investor Claim**" means an Allowed Claim held by an investor who invested principal amount(s) in either (or both) of the Funds that exceeded, in aggregate, the value of any distribution(s) directly or indirectly credited to or received by the investor or for their benefit.

"**Investor Claimant**" means a Person who holds a Resolved Investor Claim.

"**Litigation Claim**" means a lawsuit filed or to be filed by the Receiver with respect to the Causes of Action.

"**Non-Investor Claimant**" means a Person who holds a Resolved Employee Claim or a Resolved Unsecured Creditor Claim.

"**Objection**" means a timely filed objection to a Claim Determination pursuant to the Claims Procedure Order.

3

"**Person**" means any foreign or domestic person, including without limitation, any individual, entity, corporation, partnership, limited liability company, limited liability partnership, joint venture, association, joint stock company, estate, trust, unincorporated association or organization, official committee, ad hoc committee or group, governmental agency, or political subdivision thereof, the SEC, and any successors or assigns of any of the foregoing.

"**Proof of Claim**" means, with respect to a Claim, any proof of claim form timely filed by a Claimant pursuant to the Claims Administration Order.

"**Receiver**" means Robert A. Musiala, Jr., Esq., the Court-appointed receiver in the SEC Action, or any Court-appointed successor thereto.

"**Receivership**" means the federal equity receivership established by one or more orders of this Court entered in the SEC Action.

"**Receivership Assets**" means all assets under the control of the Receiver pursuant to an order of this Court or another court of competent jurisdiction, and all proceeds thereof.

"**Receivership Date**" means the date of commencement of the SEC Action.

"**Receivership Distribution**" means the total amount of any Distribution made by the Receiver pursuant to the Plan to or for the benefit of the Allowed Claimant prior to the applicable Distribution Date.

"**Receivership Entity**" means any of Montgomery Technologies, LLC; Virgil Capital LLC; Virgil Quantitative Research, LLC; Virgil Technologies, LLC; VQR Partners, LLC; and the assets of the Funds.

"**Receivership Website**" means https://www.bakerlaw.com/sec-v-qin-et-al-receivership/.

"**Released Parties**" means the Receiver, Baker & Hostetler LLP, Ankura Consulting Group LLC, and all other advisors, attorneys, accountants, consultants, and professionals retained by the Receiver after the Receivership Date in accordance with the Receivership Order and all persons acting by, through, under or in concert with any of them.

"**Reserve**" means the funds held by the Receiver as a reserve, as required by Article 3.1.2 of the Plan.

"**Resolved Claim**" means an Allowed Claim to which the Claim Determination has not been objected by the Claimant, or having been objected to, such Objection has been resolved.

"**Rising Tide Percentage**" means a *pro rata* percentage determined by the Receiver in his sole discretion, that applies to each Distribution, as may be increased from time to time in accordance with this Plan. The Rising Tide Percentage represents the ratio at which, based on the assets available to distribute, Allowed Investor Claimants who received little or no Verified Investor Withdrawals will be brought to the same overall percentage return on their investment

4

as investors who received substantial Verified Investor Withdrawals. The method for calculating the Rising Tide Percentage is described in Article 4.1.2 of the Plan.

"**Unresolved Objection**" means a timely filed Objection to a Claim Determination, which has been submitted to the Court for final adjudication.

"**SEC**" means the United States Securities and Exchange Commission.

"**SEC Action**" means the enforcement action commenced by the SEC in this Court in the case captioned *Securities and Exchange Comm'n v. Qin*, No. 20-cv-10849 (S.D.N.Y.).

"**Sigma Fund**" means Virgil Sigma Fund, LP.

"**Subsequent Distribution Date**" is a Distribution Date (if any) occurring after the Initial Distribution Date but before the Final Distribution Date.

"**Unsecured Creditor Claim**" means an Allowed Claim held by a trade vendor, service provider, or other general unsecured creditor of the Receivership Estate.

"**Verified Investor Deposit**" means, as to an Investor Claim, the amount of a deposit of assets into the Funds prior to the Receivership Date, whether deposited directly or by a third party for or on behalf of an Investor (or otherwise properly attributable to such Investor, as determined by the Receiver and communicated to Claimant in the Claim Determination), net of fees and other transaction or banking costs. For assets deposited as cryptocurrency, the value is converted to U.S. Dollars based on the closing price of the cryptocurrency on the date of deposit, as reported by Coinmarketcap.com. For assets deposited in non-U.S. Dollars, the value is converted to U.S. Dollars based on the average price of AUD-USD or EUR-USD (or other foreign currency), as applicable, on the date of the transaction, as reported by OFX.com.

"**Verified Investor Withdrawal**" means, as to an Investor Claim, the amount of a withdrawal (or other receipt) of assets from the Receivership Estate, whether withdrawn directly by an Investor or by a third party for or on behalf of an Investor (or otherwise properly attributable to such Investor, as determined by the Receiver and communicated to Claimant in the Claim Determination) prior to the Receivership Date, irrespective of the characterization of such withdrawals as rebates, redemptions, return of principal, or otherwise.

"**VQR Fund**" means Virgil Quantitative Research Multistrategy Fund, LP, including its various feeder funds.

"**Writing**" means written communication transmitted by one or more means prescribed in and in accordance with Article 6.4 of the Plan.

1.2.    Rules of Interpretation

For purposes of the Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter genders; (b) any reference in the Plan to a contract, instrument, release, indenture, or other

agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified, supplemented, or restated; (d) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (e) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (f) unless otherwise stated, all references in the Plan to subsections, Articles, Exhibits, and Schedules are references to subsections, Articles, Exhibits, and Schedules of or to the Plan; (g) the words "include," "includes" and "including" shall not be limiting and shall be deemed to be followed by "without limitation" whether or not they are, in fact, followed by such words or words of like import; (h) any effectuating provisions may be interpreted by the Receiver, in his sole discretion, in a manner consistent with the overall purpose and intent of this Plan all without further notice to or action, order, or approval of this Court or any other Person, without waiver of the rights of any Person; and (i) any docket number references in this Plan shall refer to the docket number of any document filed with this Court in the SEC Action.

## 1.3. References to Monetary Figures

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

## Article 2.    CLASSIFICATION AND TREATMENT OF CLAIMS

## 2.1. Classification of Claims Generally

Outlined below and set forth in **Schedule 1** is a designation of Classes of Claims against the Receivership Entities, the Allowed Amount of each Resolved Claim, and the current Disputed Amount of each Unresolved Objection. A Claim is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Resolved Claim in that Class, and such Claim has not been paid, released, withdrawn, or otherwise settled prior to the Effective Date of the Plan.

## 2.2. Treatment of Claims Generally

All Distributions to Allowed Claimants holding Resolved Claims are governed by, and subject to, the terms of this Plan and shall be in full and complete satisfaction, settlement, and release of all such Claims. Resolved Claims in the Classes set forth in Article 2.3 are payable with the priority and on the terms established for each Class from the Available Cash of the Receivership Assets. No Claimant holding a Resolved Claim shall be entitled to recovery under this Plan in excess of the full amount of the Allowed Amount of the Claim.

## 2.3. Classes

Claims against the Receivership Entities shall be classified and treated as follows:

### 2.3.1   Class 1 – Investor Claims

On the Initial Distribution Date, each Subsequent Distribution Date, and/or the Final Distribution Date, each Allowed Claimant holding an Allowed Investor Claim (Class 1) shall be entitled to receive a Distribution of Available Cash equal to (i) the Verified Investor Deposits (ii) *multiplied by* the then-applicable Rising Tide Percentage (iii) *minus the sum of* any Verified Investor Withdrawals and any Receivership Distribution.

### 2.3.2   Class 2 – Employee Claims

On the Initial Distribution Date, each Subsequent Distribution Date, and/or the Final Distribution Date, each Allowed Claimant holding an Allowed Employee Claim (Class 2) shall be entitled to receive a Distribution of Available Cash equal to (i) the Allowed Amount of the Claim (ii) *multiplied by* the then-applicable Rising Tide Percentage (iii) *minus any* Receivership Distribution.

### 2.3.3   Class 3 – Unsecured Creditor Claims

On the Initial Distribution Date, each Subsequent Distribution Date, and/or the Final Distribution Date, each Allowed Claimant holding an Allowed Unsecured Creditor Claim (Class 3) shall be entitled to receive a Distribution of Available Cash equal to (i) the Allowed Amount of the Claim (ii) *multiplied by* the then-applicable Rising Tide Percentage (iii) *minus any* Receivership Distribution.

## 2.4.   Distribution Notice

Prior to making any Distribution, the Receiver will prepare and file with the Court a Distribution Motion identifying the applicable Rising Tide Percentage and providing a schedule by Claim Number outlining the proposed Distribution for each Allowed Claimant, calculated as set forth in Article 4.1. Following the Court's granting of the Motion, the Receiver shall file a Distribution Notice on the docket of the SEC Action, post a Distribution Notice to the Receivership Website, and send such Distribution Notice to Claimants via the Claims Portal. The proposed Distribution Notice and proposed schedule for the Initial Distribution is attached as **Schedule 2**.

## Article 3.   IMPLEMENTATION OF PLAN

## 3.1.   Consolidation of Receivership Assets

Pursuant to the Claims Procedure Order, the Receiver has calculated the Allowed Amount of each Claim owed by the Receivership Entities on a consolidated basis for the purpose of making Distributions. Available Cash will be generated and distributed from the Receivership Estate's bank account, from the liquidation of the Receivership Assets, and from the proceeds of any Litigation Claims on a consolidated basis.

### 3.1.1    Use of Proceeds

Cash available from the sources described in Article 3.1 above shall be used to fund all Distributions and to fund ongoing expenses of the Receivership.

### 3.1.2    Reserve

With respect to each Distribution, the Receiver shall hold Cash in Reserve in an aggregate amount sufficient, in his determination, to pay (a) each Claimant holding a Disputed Claim (i) the amount of Cash that such Claimant would be entitled to receive under the Plan if such Claim were Allowed or (ii) such lesser amount as the Court may estimate or may otherwise order, and (b) the amount of incurred and projected professional fees, taxes, and administrative expenses of the Receivership for which, in the Receiver's reasonable judgment, it is prudent to reserve. The Receiver may, in his discretion, reduce the amount of Cash held in Reserve from time to time to the extent he determines that there is no longer a need to reserve such Cash, and in such case the equivalent Cash held in Reserve will be made available for Distribution.

### 3.2.    Plan Settlement

The Plan incorporates a proposed compromise and settlement of numerous issues involving the Receivership Entities and Claimants and is designed to achieve a fair and equitable economic resolution of the SEC Action, including but not limited to a resolution of all Claims against all of the Receivership Entities, regardless of whether a Person filed a Claim. These issues further include, without limitation, the consolidation of the assets and liabilities of the Receivership Estate, the ownership and rights of the various Receivership Entities and their affiliates with respect to certain assets, the responsibilities of the various Receivership Entities to maintain and/or effectuate an orderly liquidation of certain assets and investments, the nature and characterization of certain intercompany transactions, and the potential distribution of proceeds that may arise from any Litigation Claims. In consideration of the classification of Claims, Distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the Plan shall constitute a good faith compromise and settlement of all Claims, interests, and disputes dealt with therein.

### 3.3.    Cancellation of Securities and Agreements

On the Effective Date, the Plan shall be consummated in accordance with the provisions set forth herein and, except for obligations with respect to Allowed Claims: (i) rights to payment owing or assertable against the Receivership Entities, whether arising under any certificate, partnership interest, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, evidencing or creating, directly or indirectly, any indebtedness or obligation of or ownership interest in any of the Receivership Entities shall be cancelled, and the Receivership Entities shall not have any continuing obligations therefor; and (ii) rights to payment owing or assertable against the Receivership Entities pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation, formation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, interests, partnerships or other instruments or

8

documents evidencing or creating any indebtedness or obligation of or ownership interest in any of the Receivership Entities shall be released.

3.4.    Effectuating Documents; Further Transactions

On and after the Effective Date, the Receiver is authorized to and may, in the name of and on behalf of the applicable Receivership Entity, take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

3.5.    Preservation of Causes of Action

The Receiver shall retain and may enforce all rights to commence, pursue, and continue to pursue, as appropriate, any and all Causes of Action, whether arising before or after the Receivership Date, including, but not limited to, those related to the Litigation Claims, and the Receiver's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Receiver may continue to pursue such Causes of Action, as appropriate, in accordance with the Receivership Order and the best interests of the Receivership Entities, including without limitation the action captioned as *Musiala, Jr. v. Hallak*, No. 1:25-cv-06424 (S.D.N.Y.).

## Article 4.    DISTRIBUTION METHOD & PROCESS

4.1.    Distribution Method

The Receiver will make distributions to Claimants holding Allowed Claims utilizing a "Rising Tide" methodology.

4.1.1    Rising Tide

The Rising Tide methodology treats any monies withdrawn or received by a Claimant prior to the Plan's Distribution as a distribution to be deducted from any Distribution to be paid by the Receiver under the Plan. A Rising Tide methodology is widely recognized by courts as appropriate in the context of Ponzi schemes.

4.1.1.1    For Investor Claimants

Under a Rising Tide method, Distributions to Allowed Investor Claimants are calculated using the following formula: (a) Verified Investor Deposits; (b) **multiplied by** the Rising Tide Percentage; (c) **minus the sum of** any Verified Investor Withdrawals and any Receivership Distributions. The Rising Tide Percentage represents (and is calculated as) the percentage at which Allowed Investor Claimants who received little or no Verified Investor Withdrawals will be brought to the same overall Investment Return Percentage as Allowed Investor Claimants who received substantial Verified Investor Withdrawals, based on the total amount of Receivership Assets available to be distributed by the Receiver. Any Allowed Investor Claimant who at the time of a Distribution has an IRP that is equal to or greater than then-applicable

9

Rising Tide Percentage would not receive any Distribution from the Receiver until such time as the Rising Tide Percentage exceeds their Investment Return Percentage.

### 4.1.1.2    For Non-Investor Claimants

Under a Rising Tide method, as Non-Investor Claimants have no Verified Investor Withdrawals to consider, Distributions to Allowed Non-Investor Claimants are calculated using the following formula: (a) Allowed Amount; (b) *multiplied by* the Rising Tide Percentage; (c) *minus* any Receivership Distributions.

### 4.1.2    Rising Tide Percentage

The Receiver intends to set the Rising Tide Percentage for the Initial Distribution at 61.56507314%. The schedule outlining the proposed Initial Distribution to and the information used in the calculation for each Allowed Claimant is attached hereto as **Schedule 2**. For Subsequent Distributions, the Receiver will follow a similar procedure.

### 4.2.    Form of Distribution

On behalf of all Receivership Entities, and in satisfaction of all Claims against all Receivership Entities on a collective and consolidated basis, the Receiver shall make, or cause to be made, the Distributions required under the Plan to Allowed Claimants by either (i) wiring the Cash payment according to wiring instructions provided by the Claimant via the Distribution Form, or (ii), for Allowed Claimants domiciled in the United States, issuing the Cash payment via automated clearing house ("ACH") payment according to instructions provided by the Claimant on the Distribution Form. Notwithstanding the foregoing, the Receiver reserves the right, in his sole discretion, to choose an alternate method of payment, if, in his judgment, the Claimant's preferred method is not feasible or practicable. All Distribution payments shall be made in U.S. Dollars.

If a Claimant is unable to receive a Distribution in U.S. Dollars, the Receiver may, in his sole discretion, determine whether to permit payment of a Distribution in a foreign currency instead of the U.S. Dollar.

All wire, ACH, conversion, transfer fees, returned payment fees, and/or any other fees or expenses that may arise or be assessed by operation of this clause shall be borne exclusively by the Claimant and not by the Receiver or the Receivership Estate.

To the extent that none of the above payment methods authorized by the Receiver is practical for an Allowed Claimant, the Receiver may, in his sole discretion, decide to use a different payment method for such Allowed Claimant; however, the Receiver is not required to make any such exception.

### 4.3.    Procedure for Distributions

Plan Distributions shall be made by the Receiver as provided in this Article 4.3.

4.3.1    Distributions

4.3.1.1    Initial Distribution

The Receiver shall commence the Initial Distribution on the Initial Distribution Date. The Initial Distribution shall consist of Available Cash to be paid to Classes 1, 2, and 3, as provided in Articles 2 and 3 of the Plan.

4.3.1.2    Subsequent Distributions

Unless otherwise provided in this Plan, to the extent there is Available Cash remaining following the Initial Distribution, the Receiver shall file one or more Distribution Motions (i) seeking a Distribution Order establishing a Subsequent Distribution Date, a Rising Tide Percentage, a schedule of proposed Distributions, and other amounts to be allocated to the Reserve (if any); and (ii) upon the Court's issuance of a Distribution Order, furnishing a Distribution Notice to Claimants to include a statement of the Rising Tide Percentage and proposed Distribution to be made on account of each Allowed Claim, further including a statement of payments made to each Claimant in prior Distributions. On each Subsequent Distribution Date, the Receiver shall commence Distributions of Available Cash to Allowed Claimants in Classes 1-3 as provided in Articles 2 and 3 of the Plan.

4.3.1.3    Final Distribution

To the extent there is Available Cash remaining following the Initial Distribution and any Subsequent Distribution, the Receiver shall file a Distribution Motion (i) seeking a Distribution Order establishing a Final Distribution Date, a Rising Tide Percentage, and a schedule of proposed Distributions; and (ii) upon the Court's issuance of a Distribution Order, furnishing a Distribution Notice to include a statement of the Rising Tide Percentage and proposed Final Distribution to be made on account of each Allowed Claim, further including a statement of payments made to each Claimant in prior Distributions. On the Final Distribution Date, the Receiver shall commence Distribution of all remaining Available Cash as provided in Article 2 and Article 3 of the Plan to Allowed Claimants in Classes 1-3 whose Claims were Allowed before and as of the Final Distribution Date.

4.3.2    Objections to the Plan

Claimants may object to this Plan and the Motion to approve this Plan by filing a written opposition or objection on the docket of the SEC Action in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules for the Southern District of New York within 21 days of the Receiver's filing of the Motion.

4.3.3    Objections to Subsequent Distribution Motions

Claimants may object to a subsequent Distribution Motion on the grounds that the proposed Distribution violates the Plan or the Claims Procedure Order, but may not object to the classification of Claims under the Plan, the Claims Procedure Order, or the methodology for calculating the Allowed Amount of the Claim. Any objection to a subsequent Distribution Motion shall be in writing and must be filed on the docket of the SEC Action in accordance with

11

the Federal Rules of Civil Procedure and the Local Civil Rules for the Southern District of New York within 21 days of the Receiver's filing of the applicable Distribution Motion.

### 4.3.4    Distribution Form

Prior to the Initial Distribution Date, each Allowed Claimant will be required to complete, certify, and return within thirty (30) days' of transmittal via the Claims Portal the Distribution Form (substantially in the form attached hereto as **Schedule 3**), which will provide to the Receiver information related to the Claimant, including bank account transfer information and jurisdiction. Failure of a Claimant to timely complete and return the Distribution Form may result in a Forfeited Distribution.

### 4.3.5    Conditions of Distribution

No Distribution shall be made to any Claimant until such Claimant satisfies all applicable distribution conditions as set forth in the Plan, including timely completion and submission of a valid Distribution Form and any other information reasonably required to effectuate the Distribution. No Distribution shall be made to any Claimant who has challenged or appealed the Court's order approving the Plan until such appeal has been finally resolved. If a Claim, or any portion of a Claim, is Disputed, no Distribution or other payment will be made on account of such Claim unless and until such Disputed Claim becomes a Resolved and Allowed Claim.

### 4.3.6    Distributions Made Exclusively to Original Claimant

Distributions under the Plan shall be made exclusively to the original verified Claimant, and the Receiver shall not be responsible for ensuring that Distributions are paid to any Claimant's assignee or designee; *provided, however*, the Receiver may permit an exception for good cause shown and upon provision of adequate documentation by the Claimant, as determined by the Receiver in his sole discretion.

### 4.3.7    Delivery of Distributions

A Distribution to any Claimant returned as undeliverable shall be held by the Receiver subject to Articles 4.4.1 and 4.4.2. In the event that any Distribution is made in the form of a check, such Distribution shall be null and void if the check is not negotiated within 180 days of the date of issuance thereof. Surplus funds resulting from the operation of this Article shall be subject to Articles 4.4.1 and 4.4.2.

### 4.3.8    Withholding Taxes

Responsibility for compliance with any tax withholding, reporting, certification, and/or information requirements imposed by any domestic or foreign governmental authority related to any Distribution hereunder shall be borne solely by the recipient of such Distribution and not by the Receiver. The Receiver cannot give any tax advice to any Claimant, and Claimants are advised to consult their own tax advisors.

### 4.3.9    No De Minimis Distributions Required

The Receiver shall not be required to make a Distribution to any Claimant holding an Allowed Claim if the amount of any one Distribution on such Allowed Claim is less than $50.00.

### 4.3.10    No Interest on Claims

No interest or profit shall accrue or be paid on or in connection with any Claim, and no Claimant shall be entitled to interest or profit during the period following the Receivership Date in connection with any such Claim or Distribution.

## 4.4.    Disposition of Unclaimed Assets / Property

### 4.4.1    Unclaimed Distribution

In the event that (a) any Distribution to any Claimant holding an Allowed Claim is unclaimed or returned as undeliverable; (b) the Claimant holding an Allowed Claim does not timely respond to any request by the Receiver for information necessary to facilitate a particular Distribution; or (c) a Claimant holding an Allowed Claim fails to claim a Distribution by the Forfeiture Date, such Claimant shall forfeit all rights to payment on account of such Claimant's Claim, and all forfeited funds shall revert to the Receivership Estate. For the avoidance of doubt, failure to negotiate a check or other negotiable instrument sent in satisfaction of the Receiver's obligation to make a Distribution prior to the Forfeiture Date shall invoke the operation of this Article.

### 4.4.2    Forfeited Distribution

Upon the forfeiture of Cash or the right to any Distribution pursuant to Article 4.4.1, such Cash, right, or obligation shall be treated as a Forfeited Distribution and any Cash shall be returned to the Receivership Estate as if the related Claim(s) have been disallowed or denied. Nothing herein shall require further efforts to attempt to locate or notify any Person with respect to any Forfeited Distribution.

### 4.4.3    Remnant Assets

Except as the Court may otherwise subsequently allow on motion by the Receiver, to the extent Receivership Assets remain after (i) making all required Distributions under the Plan; and (ii) paying all professional fees, taxes, and administrative expenses owed pursuant to the Receiver Order, such Assets shall be assigned to or (if feasible) converted to Cash and deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of the Court pursuant to 28 U.S.C.A. § 2041.

## 4.5.    Compliance With Applicable Law

Notwithstanding anything to the contrary contained herein, the Receiver shall be authorized to take any action he deems reasonably necessary to ensure compliance with applicable law in connection with making any Distribution as required hereunder. By way of example, and without limitation, the Receiver shall be permitted to (i) withhold Distributions

13

otherwise payable to Claimants holding Resolved Claims based on restrictions under applicable law or regulations including as promulgated by the Office of Foreign Assets Control of the U.S. Department of the Treasury, and (ii) establish any other mechanisms the Receiver believes are reasonable and appropriate consistent with the foregoing.

## Article 5.    EFFECT OF PLAN APPROVAL

### 5.1.    Satisfaction of Claims Against the Receivership Estate

The Court's approval of the Plan shall, as of the date of an entry of an order approving the Plan: (i) discharge the Receivership Entities from all Claims, demands, liabilities, other debts, interests, and other obligations that arose on or before the Effective Date, whether or not (a) a Proof of Claim based on any such obligation is filed or deemed filed; (b) a Claim based on any such obligation is Allowed; or (c) a Claimant has objected to the Plan; and (ii) preclude all Persons from asserting against the Receivership Entities any other or further Claims or interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the date of an entry of an order approving the Plan.

### 5.2.    Releases

The Released Parties shall not be liable to anyone for his, her, or their own good faith compliance with: (i) any order, rule, law, judgment or decree; (ii) the duties and responsibilities of the Receiver or as professional to the Receiver; and/or (iii) any actions taken or omitted by them, except on a finding by the Court that he, she, or they acted or failed to act as a result of intentional misconduct, bad faith, or in reckless disregard of his, her, its, or their duties. As of the date of an entry of an order approving the Plan, all Claimants, Persons, creditors, investors, defendants, and other parties in interest shall be permanently and forever barred, restrained and enjoined from taking any action or imposing any liability on the Released Parties without first obtaining relief to do so from the Court and limited solely to the extent provided by the exception in (iii) above.

### 5.3.    Binding Effect

The Plan shall be binding upon, and inure to the benefit of, all Receivership Entities, Claimants, Persons, parties in interest, and governmental units, and each of their respective successors heirs, legal representatives, and assigns, whether or not such Persons are entitled to receive any Distribution thereunder.

### 5.4.    Receivership Order Not Superseded

To the extent there is any conflict between the Plan and the Receivership Order or the Plan and the Distribution Motion, the Plan shall control only to the extent necessary to effectuate the Distribution scheme set forth herein. To the extent that it is not expressly superseded by, or clearly contrary to, the provisions of this Plan, the Receivership Order shall remain in full force and effect through entry of an order closing the SEC Action, unless otherwise superseded by an Order of the Court.

14

5.5.   <u>SEC Actions Unaffected by Plan</u>

Notwithstanding anything in this Article 5 or any other provision of the Plan, nothing in the Plan shall discharge, waive, settle, release or preclude any current or future legal action or claim that has been or may be brought by the SEC.

## Article 6.   MISCELLANEOUS PROVISIONS

6.1.   <u>Effective Date</u>

This Plan shall become effective on the Effective Date.

6.2.   <u>Jurisdiction of Court</u>

This Court shall have sole and exclusive jurisdiction to interpret and enforce this Plan and to adjudicate all matters arising out of, and related to the Receivership and the Plan, including jurisdiction, power and authority to: (a) consider any amendments or modifications of the Plan requested by the Receiver; (b) cure any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Court; (c) issue such orders in aid of execution of, or to enforce, the Plan as may be necessary and appropriate; (d) hear and determine all litigation, Causes of Action and all controversies, suits and disputes that may arise in connection with the interpretation, implementation, or enforcement of this Plan and any settlements or compromises reflected herein; (e) ensure that distributions to Claimants holding Allowed Resolved Claims are accomplished pursuant to the provisions of this Plan; (f) protect the Receivership Assets from adverse claims or actions inconsistent with the Plan, including the issuance of injunctions or other such action as may be necessary or appropriate to restrain interference with the implementation or enforcement of the Plan; (g) enter a final order closing the SEC Action and discharging the Receiver and the Released Parties; and (h) hear and determine all other issues or matters necessary to carry out the purpose of this Plan.

6.3.   <u>Governing Law</u>

Except to the extent that federal law is applicable or the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to its conflict of law principles.

6.4.   <u>Notices</u>

In general, the Receiver will provide notice to Claimants via the Claims Portal, which is the preferred method of communication. All notices, requests, and demands to or upon the Receiver shall be made in writing and delivered (i) through the Claims Portal; (ii) via email to qin-receivership@bakerlaw.com; or (iii) by mail addressed to Robert A. Musiala, Jr. c/o Baker & Hostetler, LLP, 45 Rockefeller Plaza, New York, NY 10111 Attn: Jimmy Fokas. Notwithstanding the foregoing, any notice required or permitted to be provided under the Plan shall be in writing and served (i) through the Claims Portal; (ii) by email; and/or (iii) by docketing on the Court's Electronic Case Files (ECF) system, where appropriate and as may be necessary/required.

15

6.5.    Severability

If any term or provision of this Plan is determined by the Court to be invalid, void, or unenforceable, the Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

6.6.    Amendments or Modifications

The Receiver expressly reserves the right to alter, amend, or modify this Plan, one or more times, after this Court's approval, if such alteration, amendment or modification does not, in the Receiver's judgment, materially alter the Plan, and, to the extent necessary, seek this Court's approval to so alter, amend, or modify this Plan, remedy any defect or omission, or reconcile any inconsistencies in this Plan, in such manner as may be necessary to carry out the purposes and intent of this Plan. The Receiver shall post any amendments to the Plan with a redline on the Receivership Website and shall inform the Court in his regularly filed status report.

6.7.    No Admissions

As to causes of action or threatened causes of action, nothing in the Plan shall constitute or be construed as an admission of any fact or liability, stipulation, or waiver, but rather as a statement made in settlement negotiations. The Plan shall not be construed to constitute advice on the tax, securities, and other legal effects of the Plan as to any Claimant holding a Claim against, or interest in, the Receivership Entities or any of their subsidiaries or affiliates.

6.8.    Exhibits; Schedules

Subject to the procedures for determining the Allowed Amount and classification of Claims delineated in the Claims Procedure Order, all Exhibits or Schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

6.9.    Dissolution of Receivership Entities

As part of this Plan, at or near the conclusion of the Receiver's administration of the Receivership Assets, the Receiver will take such actions as are necessary to dissolve the Receivership Entities. Such dissolution will include the filing of articles of dissolution if necessary, compliance with applicable state and local laws and procedures related to entity dissolution, and the filing of final tax returns.

6.10.    Reports to the Court and Claimants

The Receiver shall continue to file quarterly status reports with this Court as provided in the Receivership Order. Such reports shall include information regarding the status of efforts to

implement this Plan. The Receiver shall post a copy of the quarterly status reports on the Receivership Website in order to provide notice to Claimants.

6.11.    Application for Order Terminating the Receivership

When the Receiver has fully administered the Receivership Assets, the Receiver may, in consultation with the SEC, apply to this Court for an order terminating his appointment as Receiver, closing the SEC Action, and ending the Receivership. Any such application shall be accompanied by (a) a final accounting identifying (i) all Receivership Assets, their source and value; (ii) all liabilities, the nature and amount of such claims; and (iii) all Distributions made by the Receiver pursuant to the Plan; and (b) a proposal for a final disposition of remaining Receivership Assets (if any).

6.12.    Preservation of Records

The Receiver shall preserve all material records and documents relating to his appointment as Receiver until a date that is three (3) years following entry of an order closing the SEC Action.

Dated: March 31, 2026,
New York, New York

                                            /s/ Robert A. Musiala, Jr.

                                            Robert A. Musiala, Jr., in his capacity as the
                                            court-appointed Receiver for the Receivership
                                            Entities
                                            c/o BAKER & HOSTETLER LLP
                                            45 Rockefeller Plaza
                                            New York, NY 10111-0100
                                            Tel.: (212) 589-4200
                                            *Receiver*

Jimmy Fokas
Keith R. Murphy
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111-0100
Tel.: (212) 589-4200
*Attorneys for Receiver Robert A. Musiala, Jr.*

17

# Schedule 1

**Resolved Claims**

Resolved Investor Class Claims

| Claimant No. | Class | Allowed Amount[1] |
|---|---|---|
| 10003 | Investor | $899,955.65 |
| 10005 | Investor | $86,272.99 |
| 10006 | Investor | $717,485.05 |
| 10007 | Investor | $264,229.31 |
| 10009 | Investor | $673,691.77 |
| 10012 | Investor | $250,000.00 |
| 10013 | Investor | $1,300,000.00 |
| 10016 | Investor | $250,000.00 |
| 10018 | Investor | $269,055.89 |
| 10020 | Investor | $1,851,433.05 |
| 10021 | Investor | $150,000.00 |
| 10022 | Investor / Employee | $122,000.00[2] |
| 10023 | Investor | $712,176.13 |
| 10024 | Investor | $218,136.23 |
| 10025 | Investor | $425,137.37 |
| 10026 | Investor | $520,125.16 |
| 10027 | Investor | $107,676.94 |
| 10029 | Investor | $3,700,000.00 |
| 10030 | Investor | $8494,900.95 |
| 10031 | Investor | $269,045.69 |
| 10033 | Investor | $250,000.00 |
| 10035 | Investor | $268,296.52 |
| 10036 | Investor | $2,268,307.98 |
| 10037 | Investor | $4,798,881.58 |
| 10038 | Investor | $400,000.00 |
| 10040 | Investor | $174,199.09 |
| 10041 | Investor | $250,025.00 |
| 10042 | Investor | $161,910.60 |
| 10043 | Investor | $1,854,257.19 |
| 10044 | Investor | $250,000.00 |
| 10045 | Investor | $250,000.00 |
| 10046 | Investor | $100,000.00 |
| 10047 | Investor | $88,056.44 |
| 10048 | Investor | $3,000,000.00 |
| 10049 | Investor | $47,828.62 |
| 10050 | Investor | $1,202,782.67 |
| 10051 | Investor | $100,000.00 |
| 10052 | Investor | $200,000.00 |
| 10055 | Investor | $614,915.64 |
| 10056 | Investor | $479,162.74 |
| 10059 | Investor | $895,341.00 |
| 10060 | Investor | $30,268.38 |
| 10061 | Investor | $1,019,557.50 |
| 10062 | Investor | $360,261.32 |
| 10065 | Investor | $87,630.83 |

---

[1] The Allowed Amount is not indicative of the amount a Claimant will or should expect to receive through any distribution(s) of Recoverable Assets. Instead, it may permit a Claimant holding an Allowed Claim with a positive Allowed Amount to be eligible for distribution(s) from the Receivership Estate depending upon the terms of the Distribution Plan approved by the Court.

[2] This represents the Allowed Amount of the Investor portion of the Claim.

1

| Claimant No. | Class | Allowed Amount[1] |
|---|---|---|
| 10067 | Investor | $699,975.00 |
| 10068 | Investor | $3,511,149.32 |
| 10069 | Investor | $263,775.11 |
| 10070 | Investor | $1,000,000.00 |
| 10073 | Investor | $2,350,891.77 |
| 10074 | Investor | $2,892,093.59 |
| 10075 | Investor | $3,655,722.60 |
| 10077 | Investor | $500,000.00 |
| 10078 | Investor | $490,823.48 |
| 10079 | Investor | $616,535.05 |
| 10080 | Investor | $250,000.00 |
| 10082 | Investor | $100,000.00 |
| 10084 | Investor | $300,000.00 |
| 10085 | Investor | $282,751.34 |
| 10086 | Investor | $306,685.84 |
| 10087 | Investor | $485,040.00 |
| 10089 | Investor | $298,350.91 |
| 10090 | Investor | $4,215,833.40 |
| 10091 | Investor | $103,371.31 |
| 10092 | Investor | $20,293.72 |
| 10093 | Investor | $2,075,471.71 |
| 10095 | Investor | $104,732.85 |
| 10098 | Investor | $163,503.27 |
| 10106 | Investor | $200,000.00 |
| 10107 | Investor | $1,199,712.80 |
| 10108 | Investor | $258,038.36 |
| 10109 | Investor | $3,407,928.27 |
| 10114 | Investor | $20,183.55 |
| | **Total** | **$62,605,868.53** |

Resolved Employee Class Claims

| Claimant No. | Class | Allowed Amount |
|---|---|---|
| 10011 | Employee | $3,375.00 |
| 10015 | Employee | $22,687.52 |
| 10022 | Investor / Employee | $8,521.33[3] |
| 10028 | Employee | $1,082.50 |
| 10071 | Employee | $11,846.15 |
| 10076 | Employee | $6,250.00 |
| 10083 | Employee | $7,750.00 |
| 10099 | Employee | $7,468.75 |
| 10115 | Employee | $4,000.00 |
| | **Total** | **$72,981.25** |

Resolved Unsecured Creditor Class Claims

| Claimant No. | Class | Allowed Amount |
|---|---|---|
| 10014 | General Unsecured | $10,000.00 |
| 10058 | General Unsecured | $18,000.00 |
| 10102 | General Unsecured | $7,900.00 |
| | **Total** | **$35,900.00** |

---

[3] This represents the Allowed Amount of the Employee portion of the Claim.

2

Resolved Denied Claims

| Claimant No. | Class | Allowed Amount |
|---|---|---|
| 10004 | Denied | $0.00 |
| 10008 | Denied | $0.00 |
| 10010 | Denied | $0.00 |
| 10017 | Denied | $0.00 |
| 10019 | Denied | $0.00 |
| 10032 | Denied | $0.00 |
| 10034 | Denied | $0.00 |
| 10039 | Denied | $0.00 |
| 10057 | Denied | $0.00 |
| 10063 | Denied | $0.00 |
| 10064 | Denied | $0.00 |
| 10066 | Denied | $0.00 |
| 10081 | Denied | $0.00 |
| 10088 | Denied | $0.00 |
| 10096 | Denied | $0.00 |
| 10097 | Denied | $0.00 |
| 10100 | Denied | $0.00 |
| 10101 | Denied | $0.00 |
| 10104 | Denied | $0.00 |
| 10110 | Denied | $0.00 |
| 10111 | Denied | $0.00 |
| 10112 | Denied | $0.00 |
| 10113 | Denied | $0.00 |
| | **Total** | **$0.00** |

## Withdrawn Claims

| Claimant No. | Class | Allowed Amount |
|---|---|---|
| 10002 | Withdrawn | -- |
| 10053 | Withdrawn | -- |
| 10054 | Withdrawn | -- |
| 10103 | Withdrawn | -- |
| 10105 | Withdrawn | -- |
| | **Total** | **--** |

## Unresolved Objections

| Claimant No. | Class | Allowed Amount | Disputed Amount |
|---|---|---|---|
| 10072 | Denied | $0.00 | $1,316,193.89 |
| 10094 | Denied | $0.00 | $0.00 |
| | **Total** | **$0.00** | **$1,316,193.89** |

3

# Schedule 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>           Plaintiff,<br><br>    v.<br><br>STEFAN QIN, VIRGIL TECHNOLOGIES LLC, MONTGOMERY TECHNOLOGIES LLC, VIRGIL QUANTITATIVE RESEARCH, LLC, VIRGIL CAPITAL LLC, and VQR PARTNERS LLC,<br><br>           Defendants. | Case No.: 20-cv-10849 (JGLC) |

## [PROPOSED] NOTICE OF INITIAL DISTRIBUTION

**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Receiver Robert A. Musiala, Jr.*

Dated: _____, 2026

Robert A. Musiala, Jr., as Court-appointed receiver ("Receiver") in the above-captioned action, by and through his undersigned counsel and on behalf of the Receivership Entities, files this Notice of Initial Distribution ("Notice") in accordance with the Opinion and Order (ECF No. X) ("Order") approving the Receiver's distribution plan ("Plan") (ECF No. X).[1] By this Notice, the Receiver is announcing an Initial Distribution of $30.3 million and a Rising Tide Percentage of 61.56507314%.

In accordance with this Court's Order and the Plan, the Receiver shall reserve $3.14 million to address resolution of Unresolved Objections, professional fees and administrative and tax expenses. A schedule setting forth the Distributions to be made in this Initial Distribution is attached as Exhibit 1.

---

[1] Capitalized terms not otherwise defined herein are accorded the meaning afforded them in the Plan (ECF No. X); Order Appointing Receiver (ECF No. 31); Memorandum of Law in Support of Receiver's Motion to Establish Claims Administration & Determination Procedures (ECF No. 303); and Claims Schedule (ECF No. 360).

**Proposed Distribution Schedule**

| | Claimant No. | Class | IRP (Prior to the Initial Distribution) | Rising Tide % | Allowed Amount | Verified Investor Deposit | Verified Investor Withdrawal | Distribution Amount |
|---|---|---|---|---|---|---|---|---|
| Allowed Investor Claimants Receiving Initial Distribution | 10003 | Class 1 | 10.00443500% | 61.56507314% | $ 899,955.65 | $ 1,000,000.00 | $ 100,044.35 | $ 515,606.38 |
| | 10005 | Class 1 | 13.72701000% | 61.56507314% | $ 86,272.99 | $ 100,000.00 | $ 13,727.01 | $ 47,838.06 |
| | 10006 | Class 1 | 4.33178694% | 61.56507314% | $ 717,485.05 | $ 749,972.25 | $ 32,487.20 | $ 429,233.76 |
| | 10007 | Class 1 | 11.92356333% | 61.56507314% | $ 264,229.31 | $ 300,000.00 | $ 35,770.69 | $ 148,924.53 |
| | 10009 | Class 1 | 5.60478869% | 61.56507314% | $ 673,691.77 | $ 713,692.74 | $ 40,000.97 | $ 399,384.49 |
| | 10012 | Class 1 | 0.00% | 61.56507314% | $ 250,000.00 | $ 250,000.00 | $ - | $ 153,912.68 |
| | 10013 | Class 1 | 0.00% | 61.56507314% | $ 1,300,000.00 | $ 1,300,000.00 | $ - | $ 800,345.95 |
| | 10016 | Class 1 | 0.00% | 61.56507314% | $ 250,000.00 | $ 250,000.00 | $ - | $ 153,912.68 |
| | 10018 | Class 1 | 59.20614207% | 61.56507314% | $ 269,055.89 | $ 659,550.00 | $ 390,494.11 | $ 15,558.33 |
| | 10021 | Class 1 | 0.00% | 61.56507314% | $ 150,000.00 | $ 150,000.00 | $ - | $ 92,347.61 |
| | 10022 | Class 1 | 0.00% | 61.56507314% | $ 122,000.00 | $ 122,000.00 | $ - | $ 75,109.39 |
| | 10023 | Class 1 | 3.87688892% | 61.56507314% | $ 712,176.13 | $ 740,900.00 | $ 28,723.87 | $ 427,411.76 |
| | 10024 | Class 1 | 11.58466415% | 61.56507314% | $ 218,136.23 | $ 246,717.64 | $ 28,581.41 | $ 123,310.49 |
| | 10025 | Class 1 | 14.12412907% | 61.56507314% | $ 425,137.37 | $ 495,060.33 | $ 69,922.96 | $ 234,861.29 |
| | 10026 | Class 1 | 0.00% | 61.56507314% | $ 520,125.16 | $ 520,125.16 | $ - | $ 320,215.44 |
| | 10027 | Class 1 | 0.00% | 61.56507314% | $ 107,676.94 | $ 107,676.94 | $ - | $ 66,291.39 |
| | 10029 | Class 1 | 0.00% | 61.56507314% | $ 3,700,000.00 | $ 3,700,000.00 | $ - | $ 2,277,907.71 |
| | 10030 | Class 1 | 25.35445108% | 61.56507314% | $ 894,900.95 | $ 1,198,867.13 | $ 303,966.18 | $ 434,117.25 |
| | 10031 | Class 1 | 35.93387546% | 61.56507314% | $ 269,045.69 | $ 419,950.00 | $ 150,904.31 | $ 107,638.21 |
| | 10033 | Class 1 | 0.00% | 61.56507314% | $ 250,000.00 | $ 250,000.00 | $ - | $ 153,912.68 |
| | 10035 | Class 1 | 43.07267111% | 61.56507314% | $ 268,296.52 | $ 471,296.52 | $ 203,000.00 | $ 87,154.05 |
| | 10036 | Class 1 | 43.29219006% | 61.56507314% | $ 2,268,307.98 | $ 3,999,992.21 | $ 1,731,684.23 | $ 730,913.90 |
| | 10037 | Class 1 | 40.01398025% | 61.56507314% | $ 4,798,881.58 | $ 8,000,000.00 | $ 3,201,118.42 | $ 1,724,087.43 |
| | 10038 | Class 1 | 0.00% | 61.56507314% | $ 400,000.00 | $ 400,000.00 | $ - | $ 246,260.29 |
| | 10041 | Class 1 | 0.00% | 61.56507314% | $ 250,025.00 | $ 250,025.00 | $ - | $ 153,928.07 |
| | 10042 | Class 1 | 55.02333411% | 61.56507314% | $ 161,910.60 | $ 359,988.00 | $ 198,077.40 | $ 23,549.48 |
| | 10043 | Class 1 | 2.40687169% | 61.56507314% | $ 1,854,257.19 | $ 1,899,987.45 | $ 45,730.26 | $ 1,123,998.40 |
| | 10044 | Class 1 | 0.00% | 61.56507314% | $ 250,000.00 | $ 250,000.00 | $ - | $ 153,912.68 |
| | 10045 | Class 1 | 0.00% | 61.56507314% | $ 250,000.00 | $ 250,000.00 | $ - | $ 153,912.68 |
| | 10046 | Class 1 | 0.00% | 61.56507314% | $ 100,000.00 | $ 100,000.00 | $ - | $ 61,565.07 |
| | 10047 | Class 1 | 11.92594519% | 61.56507314% | $ 88,056.44 | $ 99,980.00 | $ 11,923.56 | $ 49,629.20 |
| | 10048 | Class 1 | 0.00% | 61.56507314% | $ 3,000,000.00 | $ 3,000,000.00 | $ - | $ 1,846,952.19 |
| | 10050 | Class 1 | 7.23492480% | 61.56507314% | $ 1,202,782.67 | $ 1,296,589.98 | $ 93,807.31 | $ 704,439.26 |
| | 10051 | Class 1 | 0.00% | 61.56507314% | $ 100,000.00 | $ 100,000.00 | $ - | $ 61,565.07 |
| | 10052 | Class 1 | 0.00% | 61.56507314% | $ 200,000.00 | $ 200,000.00 | $ - | $ 123,130.15 |
| | 10055 | Class 1 | 57.70283640% | 61.56507314% | $ 614,915.64 | $ 1,453,798.76 | $ 838,883.12 | $ 56,149.15 |
| | 10056 | Class 1 | 12.86390921% | 61.56507314% | $ 479,162.74 | $ 549,901.58 | $ 70,738.84 | $ 267,808.47 |
| | 10059 | Class 1 | 41.30577699% | 61.56507314% | $ 895,341.00 | $ 1,525,432.92 | $ 630,091.92 | $ 309,041.97 |
| | 10061 | Class 1 | 0.00% | 61.56507314% | $ 1,019,557.50 | $ 1,019,557.50 | $ - | $ 627,691.32 |
| | 10062 | Class 1 | 13.94516522% | 61.56507314% | $ 360,261.32 | $ 418,641.58 | $ 58,380.26 | $ 199,356.73 |
| | 10065 | Class 1 | 12.36917000% | 61.56507314% | $ 87,630.83 | $ 100,000.00 | $ 12,369.17 | $ 49,195.90 |
| | 10067 | Class 1 | 0.00% | 61.56507314% | $ 699,975.00 | $ 699,975.00 | $ - | $ 430,940.12 |
| | 10068 | Class 1 | 5.34320747% | 61.56507314% | $ 3,511,149.32 | $ 3,709,347.45 | $ 198,198.13 | $ 2,085,464.34 |
| | 10070 | Class 1 | 0.00% | 61.56507314% | $ 1,000,000.00 | $ 1,000,000.00 | $ - | $ 615,650.73 |
| | 10073 | Class 1 | 2.97798138% | 61.56507314% | $ 2,350,891.77 | $ 2,423,049.74 | $ 72,157.97 | $ 1,419,594.37 |
| | 10074 | Class 1 | 47.41594488% | 61.56507314% | $ 2,892,093.59 | $ 5,499,944.01 | $ 2,607,850.42 | $ 778,194.13 |
| | 10075 | Class 1 | 5.73483083% | 61.56507314% | $ 3,655,722.60 | $ 3,878,126.60 | $ 222,404.00 | $ 2,165,167.48 |
| | 10077 | Class 1 | 0.00% | 61.56507314% | $ 500,000.00 | $ 500,000.00 | $ - | $ 307,825.37 |
| | 10078 | Class 1 | 18.19608667% | 61.56507314% | $ 490,823.48 | $ 600,000.00 | $ 109,176.52 | $ 260,213.92 |
| | 10079 | Class 1 | 11.92356429% | 61.56507314% | $ 616,535.05 | $ 700,000.00 | $ 83,464.95 | $ 347,490.56 |
| | 10080 | Class 1 | 41.17647059% | 61.56507314% | $ 250,000.00 | $ 425,000.00 | $ 175,000.00 | $ 86,651.56 |
| | 10082 | Class 1 | 0.00% | 61.56507314% | $ 100,000.00 | $ 100,000.00 | $ - | $ 61,565.07 |
| | 10084 | Class 1 | 0.00% | 61.56507314% | $ 300,000.00 | $ 300,000.00 | $ - | $ 184,695.22 |
| | 10085 | Class 1 | 0.00% | 61.56507314% | $ 282,751.34 | $ 282,751.34 | $ - | $ 174,076.07 |
| | 10086 | Class 1 | 31.84759111% | 61.56507314% | $ 306,685.84 | $ 450,000.00 | $ 143,314.16 | $ 133,728.67 |
| | 10087 | Class 1 | 0.00% | 61.56507314% | $ 485,040.00 | $ 485,040.00 | $ - | $ 298,615.23 |
| | 10089 | Class 1 | 40.13236376% | 61.56507314% | $ 298,350.91 | $ 498,350.91 | $ 200,000.00 | $ 106,810.10 |
| | 10090 | Class 1 | 19.00425600% | 61.56507314% | $ 4,215,833.40 | $ 5,205,006.08 | $ 989,172.68 | $ 2,215,293.12 |
| | 10091 | Class 1 | 0.00% | 61.56507314% | $ 103,371.31 | $ 103,371.31 | $ - | $ 63,640.62 |
| | 10093 | Class 1 | 33.67569339% | 61.56507314% | $ 2,075,471.71 | $ 3,129,277.66 | $ 1,053,805.95 | $ 872,736.13 |
| | 10095 | Class 1 | 56.84767161% | 61.56507314% | $ 104,732.85 | $ 242,704.98 | $ 137,972.13 | $ 11,449.37 |
| | 10098 | Class 1 | 59.07342126% | 61.56507314% | $ 163,503.27 | $ 399,503.88 | $ 236,000.61 | $ 9,954.25 |
| | 10106 | Class 1 | 0.00% | 61.56507314% | $ 200,000.00 | $ 200,000.00 | $ - | $ 123,130.15 |
| | 10107 | Class 1 | 40.01413235% | 61.56507314% | $ 1,199,712.80 | $ 1,999,992.41 | $ 800,279.61 | $ 431,017.18 |
| | 10108 | Class 1 | 13.98495974% | 61.56507314% | $ 258,038.36 | $ 299,992.14 | $ 41,953.78 | $ 142,736.60 |
| | 10109 | Class 1 | 42.18133643% | 61.56507314% | $ 3,407,928.27 | $ 5,894,166.45 | $ 2,486,238.18 | $ 1,142,509.71 |
| Allowed Investor Claimants Not Receiving Initial Distribution | 10020 | Class 1 | 71.20623489% | 61.56507314% | $ 1,851,433.05 | $ 6,429,979.00 | $ 4,578,545.95 | $ - |
| | 10040 | Class 1 | 65.16018200% | 61.56507314% | $ 174,199.09 | $ 500,000.00 | $ 325,800.91 | $ - |
| | 10049 | Class 1 | 78.73875340% | 61.56507314% | $ 47,828.62 | $ 224,956.80 | $ 177,128.18 | $ - |
| | 10060 | Class 1 | 68.94833874% | 61.56507314% | $ 30,268.38 | $ 97,477.49 | $ 67,209.11 | $ - |
| | 10069 | Class 1 | 76.76443999% | 61.56507314% | $ 263,775.11 | $ 1,135,221.66 | $ 871,446.55 | $ - |
| | 10092 | Class 1 | 83.47736089% | 61.56507314% | $ 20,293.72 | $ 122,823.72 | $ 102,530.00 | $ - |
| | 10114 | Class 1 | 91.92633650% | 61.56507314% | $ 20,183.55 | $ 249,992.46 | $ 229,808.91 | $ - |
| Allowed Employee Claimants Receiving Initial Distribution | 10011 | Class 2 | 0.00% | 61.56507314% | $ 3,375.00 | $ - | $ - | $ 2,077.82 |
| | 10015 | Class 2 | 0.00% | 61.56507314% | $ 22,687.52 | $ - | $ - | $ 13,967.59 |
| | 10022 | Class 2 | 0.00% | 61.56507314% | $ 8,521.33 | $ - | $ - | $ 5,246.16 |
| | 10028 | Class 2 | 0.00% | 61.56507314% | $ 1,082.50 | $ - | $ - | $ 666.44 |
| | 10071 | Class 2 | 0.00% | 61.56507314% | $ 11,846.15 | $ - | $ - | $ 7,293.09 |
| | 10076 | Class 2 | 0.00% | 61.56507314% | $ 6,250.00 | $ - | $ - | $ 3,847.82 |
| | 10083 | Class 2 | 0.00% | 61.56507314% | $ 7,750.00 | $ - | $ - | $ 4,771.29 |
| | 10099 | Class 2 | 0.00% | 61.56507314% | $ 7,468.75 | $ - | $ - | $ 4,598.14 |
| | 10115 | Class 2 | 0.00% | 61.56507314% | $ 4,000.00 | $ - | $ - | $ 2,462.60 |
| Allowed Unsecured Creditor Claimants Receiving Initial Distribution | 10014 | Class 3 | 0.00% | 61.56507314% | $ 10,000.00 | $ - | $ - | $ 6,156.51 |
| | 10058 | Class 3 | 0.00% | 61.56507314% | $ 18,000.00 | $ - | $ - | $ 11,081.71 |
| | 10102 | Class 3 | 0.00% | 61.56507314% | $ 7,900.00 | $ - | $ - | $ 4,863.64 |

# Schedule 3

**DISTRIBUTION NOTICE & FORM**

Date:

Claim Number:

Dear CLAIMANT:

**Please read this notice and follow the instructions carefully.** In connection with the Claim you submitted in *SEC v. Qin* et al. 20 CV 10849 (SDNY)(JGLC) and pursuant to the Distribution Plan, as approved by the Court on INSERT (a copy of which is available here), you are eligible to receive an Initial Distribution in the amount of INSERT AMOUNT.

To receive your funds, you **must** follow the instructions below to complete this Distribution Form with the requested information and submit it within **30 days** of the date written above. **Failure to complete this Distribution Form and timely respond may result in the forfeiture of any Distribution owed to you**.

1. Complete the Initial Distribution Form below in its entirety
2. Upload requested documentation
3. Review Additional Information
4. Read and consent to the Releases and Certification
5. Click "Submit" at the bottom of the page

If you need technical assistance completing the Distribution Form or uploading any documentation through the Claims Portal, please contact support@qinreceivershipclaims.com.

Initial Distribution Form

**Please fill out all information requested.**

**1. Payee Name\***  _____
*\*Payee Name must match Claimant Name.*

**2. Payee Date of Birth\***  _____
*\*only required if Payee is an individual AND Payee's bank is located in The People's Republic of China*

**3. Payee Email**  _____

**4. Payee Phone Number\***  _____
*\*This number will be used for verification purposes. Please provide a number where you can be reached during business hours.*

**5. Payment Jurisdiction**  _____

**6. Payee Address**

Street: _____    Street 2: _____
City: _____    State: _____
Zip: _____    Country: _____

**7. Payment Type (check one):**    __Wire    __ACH\*
(*\*The option to receive a Distribution via ACH is only available for accounts domiciled in the U.S.; accounts domiciled outside of the U.S. will receive Distributions via Wire only*)

| | | | |
|---|---|---|---|
| **8. Acct # / IBAN** | _____ | **9. Acct # / IBAN Conf.** | _____ |
| **10. Routing #** | _____ | **11. Routing # Conf.** | _____ |
| **12. SWIFT / BIC #** | _____ | **13. SWIFT / BIC # Conf.** | _____ |

**13. Upload Copy of wiring or ACH instructions for Payee's Bank\***

*\*Please provide official wiring or ACH  instructions **from the bank**. This document must include all necessary information for a domestic ACH or domestic or international wire transfer, such as (i) full name on the account; (ii) account number; (iii) routing number;  (iv) SWIFT/BIC Code; and (v) IBAN (if applicable). This information is necessary to ensure payment is delivered accurately and securely.*

Additional Information

**Currency**: All Distributions will be made in United States Dollars (USD). It is your responsibility to ensure that the account you provide to the Receiver for receipt of a Distribution can receive USD.

**Fees**: By providing consent below, you acknowledge and understand that any fees charged by a receiving bank, or any intermediary bank (if applicable), for any purpose, including without limitation for the receipt and process of a wire transfer, for any currency conversion, or for any returned payment shall be your responsibility and will be deducted from any Distribution received. The Receiver is not, and shall not be, responsible for the cost of any fees associated with a Distribution.

**Test Wires**: For certain payments, a test wire may be initiated to verify the banking information provided. The purpose of this test is to ensure that funds are successfully received by the intended recipient, and that all banking details are accurate. Once a test wire is confirmed, the remainder of the Distribution will be initiated.

**Verbal Confirmation of Wire Instructions**: You must provide a valid daytime phone number where you can be reached. The Receiver will not initiate any wire transfer of a Distribution unless you have verbally confirmed to the Receiver, or his designee, the wire transfer instructions provided in this Distribution Form, and, if applicable, that you have received the test wire.

**Wire Transfer / ACH Confirmation**: Once the Receiver receives confirmation that the outgoing wire transfer or ACH payment has been completed, a confirmation notice will be sent via the Claims Portal.

**Additional Information:** A receiving bank, or any intermediary bank, may request additional information or documentation as part of their standard Anti Money Laundering and/or fraud prevention protocols. The Receiver may also request additional information and/or documentation, as necessary, to facilitate the transfer of any Distribution. Your failure to timely provide all requested information may result in forfeiture of such Distribution.

Releases:

☐ By agreeing to accept a Distribution, I hereby discharge the Receivership Entities from all Claims, demands, liabilities, other debts, interests, and other obligations that arose on or before the Effective Date of the Plan and understand that I shall be precluded from asserting against the Receivership Entities any other or further Claims or interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the date of an entry of an order approving the Plan.

☐ By agreeing to accept a Distribution, I acknowledge and agree that the Released Parties[1] shall not be liable to me (or the entity I represent, if on behalf of an entity Claimant) for his, her, or their own good faith compliance with: (i) any order, rule, law, judgment or decree; (ii) the duties and responsibilities of the Receiver or as professional to the Receiver; and/or (iii) any actions taken or omitted by them, except on a finding by the Court that he, she, or they acted or failed to act as a result of intentional misconduct,  bad faith, or in reckless disregard of his, her, its, or their duties. As of the date of an entry of an order approving the Plan, I and any parties in interest shall be permanently and forever barred, restrained and enjoined from taking any action or imposing any liability on the Released Parties without first obtaining relief to do so from the Court and limited solely to  the extent provided by the exception in (iii) above.

☐ I understand that in the event that any Distribution is returned to the Receiver as undeliverable, such Distribution may be deemed Forfeited, and my failure to timely provide additional information as may be

---

[1] Receiver, Baker & Hostetler LLP, Ankura Consulting Group LLC, and other advisors and professionals retained by the Receiver after the Receivership Date in accordance with the Receivership Order. All capitalized terms take the meaning as defined in the Receiver's Distribution Plan (ECF No. X).

requested by the Receiver or a financial institution necessary to facilitate a Distribution may lead to forfeiture of any Distribution due to me.

☐ I understand that the timing for receipt of any Distribution hereunder is subject to banking processes and regulations and contingent on my providing accurate and complete information. I hereby release the Receiver and the Released Parties from any liability related to any delays caused by banking processes or any issues or losses that arise as a result of my provision of inaccurate banking information.

☐ I understand that I (or the Payee, if I am making representations on behalf of an entity Payee) shall be solely responsible for any taxes assessed on this Distribution, and I hereby release the Receiver from any and all claims related thereto.


Certification:

☐ By checking this box, I certify that all information provided in this Distribution Form is true, accurate, and complete, and I understand that providing false or misleading information in this Distribution Form may result in Forfeiture of any Distribution hereunder.


_____

Digital Signature